1  Thomas M. Klein (010954)
   Paul R. Lee (018464)
2  **BOWMAN AND BROOKE LLP**
   Suite 1600, Phoenix Plaza
3  2901 North Central Avenue
   Phoenix, Arizona  85012-2761
4  (602) 643-2300
   (602) 248-0947 – Fax
5
   tom.klein@bowmanandbrooke.com
6  paul.lee@bowmanandbrooke.com

7  Attorneys for Defendants Nissan North America, Inc. and Midway Holdings, Inc., d/b/a
   Midway Nissan
8

9             **IN THE UNITED STATES DISTRICT COURT**

10              **FOR THE DISTRICT OF ARIZONA**

11  Helferich Patent Licensing, LLC, an          )   No. 2:11-CV-02304 PHX ROS
    Illinois limited liability company,          )
12                                               )
              Plaintiff,                         )   **NISSAN NORTH AMERICA, INC.'S**
13                                               )   **ANSWER, AFFIRMATIVE DEFENSES,**
    v.                                           )   **AND JURY DEMAND**
14                                               )
    Nissan Motor Co., Ltd., a Japanese           )
15  Corporation; Nissan North America, Inc.,     )
    a California Corporation; and Midway         )
16  Holdings, Inc., d/b/a Midway Nissan, an      )
    Arizona Corporation,                         )
17                                               )
              Defendants.                        )
18  _____          )

19        Defendant Nissan North America, Inc. ("NNA") hereby requests trial by jury

20  pursuant to Rules 38 and 81(c) of the Federal Rules of Civil Procedure.

21        NNA, by and through its undersigned counsel, answers the complaint of Plaintiff

22  Helferich Patent Licensing, LLC ("HPL") as follows:

23                  <u>**NATURE OF THE ACTION**</u>

24        1.    This is an action for patent infringement arising under the United States

25  Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject

26  matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action

27  arising out of the patent laws of the United States of America.

28  / / /

**ANSWER:**  NNA admits that the complaint purports to be an action for patent infringement and that this Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).  NNA denies the remaining allegations of this paragraph and denies that HPL possess any cognizable claim.

### JURISDICTION AND VENUE

2.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial and continuous business in the State of Arizona and in this District, and purposefully direct their infringing activities to residents of this State and District by causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

**ANSWER:**   NNA admits that it conducts business in the State of Arizona and  in this district.   NNA denies that it has caused infringing messages to be sent to anyone, including the residents of this State or District.   NNA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph directed to the other Defendants and, therefore, denies them. NNA denies the remaining allegations of this paragraph.

3.     Venue is appropriate pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this District, and have caused infringing messages to be sent to residents of this State and District.

**ANSWER:**  NNA admits that this District meets the requirements of 28 U.S.C. §§ 1391(c) and 1400(b) with respect to NNA.  NNA denies that it has caused infringing messages to be sent to anyone, including the residents of this State or District.   NNA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph directed to the other Defendants and, therefore, denies them. NNA denies the remaining allegations of this paragraph and denies that this District is an appropriate or convenient venue to resolve the parties' claims.

**PLAINTIFF**

4.      HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of twenty-five (25) U.S. patents, eleven (11) pending U.S. applications, and over a dozen related foreign patents and patent applications relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio).  The HPL Portfolio includes the patents and applications listed in Exhibit A.

**ANSWER:**  NNA is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

5.      On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent").  HPL is the exclusive licensee of all right, title, and interest in the `757 patent.

**ANSWER:**  NNA admits that U.S. Patent No. 7,835,757 is entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent") and indicates on its face an issue date of November 16, 2010.  NNA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

6.      On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent").  HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

**ANSWER:**  NNA admits that U.S. Patent No. 7,499,716 is entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent") and indicates on its face an issue date of March 3, 2009.  NNA is without knowledge or

1  information sufficient to form a belief as to the truth of the remaining allegations of this

2  paragraph and, therefore, denies them.

3

4       7.    On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled

5  "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838

6  patent"). HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

7  **ANSWER:**   NNA admits that U.S. Patent No. 7,280,838 is entitled "Paging Transceivers

8  and Methods for Selectively Retrieving Messages" (the "'838 patent") and indicates on its

9  face an issue date of October 9, 2007.  NNA is without knowledge or information sufficient

10  to form a belief as to the truth of the remaining allegations of this paragraph and,

11  therefore, denies them.

12

13       8.    The '757, '716, and '838 patents variously and in general relate to systems

14  and methods used by content providers to create, store, and cause delivery of electronic

15  messages and related content to mobile phones.  The content provider stores its content

16  (such as news, coupons, specials, media, etc) on an internet accessible website and

17  creates a short description of the content (of the type intended for placement into an SMS

18  or MMS message).  The content provider also selects and inserts a unique identifier of the

19  content, such as a URL "link," in the message.  The content provider uses an interface

20  with a notification system (such as various social media sites or messaging services) to

21  disseminate its messages to its customers', followers' and fans' mobile phones via SMS or

22  MMS.  Thereafter, the content provider receives a request for the content identified by the

23  link and delivers the requested content to the user's mobile phone.  The patents also

24  variously relate to providing or using: (1) shortened URLs received from a link shortening

25  service; (2) URLs that identify dynamic content such as changing product prices,

26  promotions, events, reviews, or comments; (3) information to inform the recipient of the

27  identifier of the time that the content is available, such as "24 hour sale"; (4) a request for

28  a delivery confirmation of an MMS message; and/or (5) MMS messages from which users

1   can request -- and content providers receive --commands regarding the content such as to

2   delete, reply to, or forward the content.

3   **ANSWER:**   NNA is without knowledge or information sufficient to form a belief as to the

4   truth of the allegations of this paragraph and, therefore, denies them.  NNA further states

5   that the '757, '716, and '838 patents speak for themselves.

6

7        9.     On July 14, 2010, HPL filed suit against the New York Times Company

8   asserting infringement of the '757, '716, and '838 patents asserted herein.  Approximately

9   six months later (in late February 2011). the New York Times Company filed three ex parte

10  reexaminations in the Patent Office, one for each of the '757, '716, and '838 patents.

11  Shortly thereafter, and after consideration of all of the art and arguments presented in the

12  *ex parte* reexaminations as well as three later-filed *inter partes* reexamination requests

13  (discussed below), the Patent Office **confirmed as patentable** a total of 203 claims as a

14  result of the *ex parte* reexaminations of the '716 and '757 patents.

15       (a)    With respect to the '716 patent, on December 13, 2011, the Patent Office

16  issued a "Reexamination Certificate" **concluding the reexamination** and **confirming as**

17  **patentable** 16 original claims, including claims 2, 16, 19, 20, 22, 23, 31, 34, 35, 38, 39,

18  43, 48, 49, 52, and 58; 53 claims with minor clarifying amendments, including claims 1, 3-

19  15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and 65 new

20  claims, including claims 70-134.

21       (b)    With respect to the '757 patent, on December 9, 2011, the Patent Office

22  issued a "Notice of Intent to Issue Reexamination Certificate" and **confirmed as**

23  **patentable** 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14 claims with

24  minor clarifying amendments (as agreed by the Examiner), including claims 2-5, 7-10, and

25  12-17; and 49 new claims, including claims 21-69.

26       (c)    With respect to the '838 patent, the Patent Office has issued a Non-Final

27  Office Action to which HPL recently responded. HPL likewise expects additional claims to

28  be confirmed in the '838 reexamination.

1   **ANSWER:**  NNA is without knowledge or information sufficient to form a belief as to the

2   truth of the allegations of this paragraph and, therefore, denies them.

3

4   10.   On September 6, 2011, *after* the Patent Office confirmed as patentable

5   numerous infringed claims of HPL's patents and applications over the New York Times

6   Company's *ex parte* reexamination requests, the New York Times Company joined with

7   several other companies and filed a second round of reexamination requests--this time the

8   New York Times Company along with several other companies filed *inter partes*

9   reexamination requests for each of the '757, '716, and '838 patents.

10   (a)   On October 28, 2011, the Patent Office issued a non-appealable order

11   denying the request for *inter partes* reexamination of the '838 patent in its entirety, stating

12   repeatedly that "None of the above cited art [referring to the references newly asserted in

13   the *inter partes* requests] provides any new technological teachings that were not present

14   in the art cited in the previous reexamination.

15   (b)   On November 4, 2011, the Patent Office issued non-appealable orders fully

16   denying the requests for *inter partes* reexaminations of the '757 and '716 patents for

17   similar reasons.

18   (c)   Prior to the Patent Office issuing a "Reexamination Certificate" for each of

19   the '716 and '757 patents, HPL filed IDSs in the above referenced *ex parte*

20   reexaminations citing the art and arguments presented in the *inter partes* reexamination

21   requests.  Consequently, in confirming the claims in the *ex parte* reexamination requests,

22   the Patent Office also considered the art and arguments presented in the *inter partes*

23   reexamination requests.

24   Thus, in less than nine months, the Patent Office disposed of 5 of 6 reexamination

25   requests (including denying outright all three *inter partes* reexaminations) filed by the New

26   York Times Company and its defense group against HPL's patents.

27   **ANSWER:**  To the extent the allegations in this paragraph state legal conclusions, an

28   answer is neither appropriate nor required.  NNA is without knowledge or information

1    sufficient to form a belief as to the truth of the remaining allegations of this paragraph and,

2    therefore, denies them.

3

4         11.     Additionally, during the same period, the Patent Office allowed and re-

5    allowed three related pending patent applications (Application Nos. 11/598,202;

6    12/167,971; and 12/367,358) after express consideration of the New York Times

7    Company's *ex parte* and *inter partes* reexamination requests, art, and arguments.  These

8    allowed applications include at least 51 additional claims that HPL believes are infringed

9    by content providers, such as Defendants.

10   **ANSWER:**  NNA is without knowledge or information sufficient to form a belief as to the

11   truth of the allegations of this paragraph and, therefore, denies them.

12

13        12.     To date, ninety-five (95) of the world's most sophisticated companies have

14   acquired licenses to the HPL Portfolio.  Licensees include:  ABInBev (Anheuser Busch),

15   Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank,

16   Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines,

17   Coinstar, Dairy Queen, Dell, DIRECTV, Disney, eBay, Epitaph Records, Genesco, Glu

18   Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Hewlett-Packard (and Palm), H&R

19   Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility,

20   the National Football League, the National Hockey League, Newegg.com, PGA Tour,

21   Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext,

22   Starbucks, Steve Madden, Taco Bell, Walgreens, Zuffa/UFC and numerous other

23   companies including those whose identities HPL has agreed to keep confidential.

24   **ANSWER:**  NNA is without knowledge or information sufficient to form a belief as to the

25   truth of the allegations of this paragraph and, therefore, denies them.

26

27   / / /

28   / / /

1620970-WE  1                                    7

## HPL LICENSEES INCLUDE MOTOR VEHICLE COMPANIES

13.    During the past two years, multiple motor vehicle companies have addressed HPL's infringement allegations and accepted licenses with HPL, including at least Toyota, Harley-Davidson, Yamaha, and another Major Automobile Manufacturer whose name must remain confidential per the terms of its agreement with HPL (hereafter "Licensed Motor Vehicle Companies").  Nissan Motor Co. Ltd of Japan and Nissan North America, Inc. are not Licensed Motor Vehicle Companies.

**ANSWER:**  NNA is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

14.    The license agreements between HPL and the Licensed Motor Vehicle Companies are confidential.  However, in general, the Licensed Motor Vehicle Companies specifically negotiated to extend their patent licenses from HPL to cover activities of their respective dealers related to the authorized sale of products of the Licensed Motor Vehicle Companies.  Thus, for example, an authorized Toyota dealer would be covered under the HPL license with Toyota to engage in otherwise infringing activities relating to the authorized sale of Toyota vehicles.

**ANSWER:**  NNA is without knowledge or information sufficient to form a belief as to the truth of the allegations of this paragraph and, therefore, denies them.

15.    Accordingly, no allegations of infringement are made in this complaint to the extent defendant Midway Holdings, Inc. conducts otherwise infringing activities by or on behalf of, and pursuant to an authorized agreement with, a Licensed Motor Vehicle Company.

**ANSWER:**  No answer is required of NNA.

/ / /

/ / /

**NISSAN MOTORS IS NOT A LICENSED MOTOR VEHICLE COMPANY**

16.     More than two (2) years ago, on or about December 2, 2009, HPL gave written notice to both Nissan Motor Co. Ltd of Japan and Nissan North America, Inc. of their infringement of both the '716 and '838 patents.  The notice letter provided Nissan Motors with a description of the patent claims as well as infringement charts demonstrating infringement of the claims.  Thereafter, on or about May 24, 2011, HPL advised Nissan Motors of its infringement of the '757 patent (which issued after HPL's initial notice letter).

**ANSWER:** NNA admits that Steven G. Lisa sent letters dated December 2, 2009 and May 24, 2011 addressed to NNA.  NNA states that the letters speak for themselves.  NNA denies the remaining allegations of this paragraph to which an answer is required.

17.     HPL has also periodically advised Nissan Motors of HPL's progress in licensing, litigation, patent prosecution, and reexaminations filed at the Patent Office, 8 including but not limited to its letters to Nissan Motors dated:  January 6, 2010; February 2, 2010; March 24, 2010; April 13, 2010; May 21, 2010; February 7, 2011; May 24, 2011; and November 9, 2011. HPL repeatedly requested in those letters that Nissan Motors initiate good faith discussions of HPL's infringement allegations, and at one point even provided to Nissan Motors a draft complaint for patent infringement.  However, Nissan Motors refused to acknowledge or respond to any of HPL's numerous update letters. More specifically:

(a)     Nissan Motors Refused a License and Continued to Infringe the Patents After New York Times Filed its Ex Parte Reexaminations:  As discussed above, in late February 2011, the New York Times Company filed its three *ex parte* reexaminations on the '757, '716, and '838 patents.  HPL's May 24, 2011 letter advised Nissan Motors of the reexaminations and provided Nissan Motors with analysis explaining why HPL believed a large number of claims were likely to be confirmed.  The same letter also advised Nissan Motors that the reexaminations did not cover all of the patents that Nissan Motors was

accused of infringing. Notwithstanding, Nissan Motors ignored HPL's correspondence and continued to infringe the patents.

(b)   <u>Nissan Motors Refused a License and Continued to Infringe the Patents After the Patent Office Confirmed Claims</u>:   As previously mentioned, the Patent Office confirmed as patentable numerous infringed claims in two of the pending *ex parte* reexamination proceedings over express consideration of the New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint.   Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, Nissan Motors ignored HPL's correspondence and continued to infringe the patents.

(c)   <u>Nissan Motors Refused a License and Continued to Infringe the Patents After the Patent Office Denied Outright All Three Inter Parts Reexaminations</u>:   The Patent Office issued non-appealable orders fully denying all three of the New York Times Company's (and the defense group's) requests for *inter partes* reexamination on October 28, 2011 and November 4, 2011, respectively.   Thereafter, on November 9, 2011, HPL promptly sent a letter to Nissan Motors advising it of HPL's ongoing licensing, litigation, and patent prosecution efforts, and again offering a license to Nissan Motors on HPL's well-established and highly favorable settlement licensing terms.   Notwithstanding the outright denial of all three *inter partes* reexamination requests, Nissan Motors continues to ignore HPL's correspondence, infringe HPL's patents and refuse a license.

(d)   <u>Nissan Motors Refused a License and Continued to Infringe the Patents after the Patent Office Allowed Three Applications Over the Art and Arguments presented in the *Inter Partes* Reexamination Requests</u>:   As noted above, HPL has three additional pending patent applications (Application Nos. 11/598,202; 12/167,971; and 12/367,358) that were first allowed by the Patent Office after express consideration of the New York Times Company's *ex parte* reexamination requests, and then allowed again after express consideration of the *inter partes* reexamination requests.   As a result, at least 51 additional claims will issue that HPL believes are infringed by the Defendants.   Notwithstanding the

recent allowance of the '358, '971, and '202 applications, Nissan Motors continues to ignore HPL's correspondence, infringe HPL's patents, and decline a license.

**ANSWER:**  NNA admits that Steven G. Lisa sent letters dated January 6, 2010, February 2, 2010, March 24, 2010, April 13, 2010, May 21, 2010, May 24, 2011, and November 9, 2011 addressed to NNA.  NNA states that the letters speak for themselves.  NNA denies the remaining allegations of this paragraph to which an answer is required.


18.    In sum, for the past two (2) years, Nissan Motors has refused to respond to or acknowledge HPL's correspondence, while at the same time continuing to infringe HPL's patents.  Nissan Motors also repeatedly refused to accept a license on HPL's well-established and reasonable licensing terms.  As a result, the activities of **_not only_** Nissan Motors, **_but also_** its authorized motor vehicle dealers, including Defendant Midway Holdings, Inc., remain unlicensed.

**ANSWER:**  Denied.


## DEFENDANTS

19.    Defendant Nissan Motor Company, Ltd., is a Japanese corporation with its principal place of business in Yokohama, Japan.  Defendant Nissan North America, Inc., is a California corporation with its principal place of business in Franklin, Tennessee.  Defendant Midway Holdings, Inc. is an Arizona corporation with its principal place of business in Phoenix, Arizona.  Nissan Motors sells vehicles throughout the United States through hundreds, if not thousands, of authorized dealerships, including several dealerships in Arizona.  Midway Nissan is a very large motor vehicle dealership, and on information and belief, is authorized by Nissan Motors to sell in Arizona new and used Nissan cars and related Nissan merchandise.

**ANSWER:**  NNA admits that Nissan Motor Co., Ltd. is a Japanese corporation with a principal place of business in Yokohama, Japan.  NNA admits that Nissan North America, Inc., is a California corporation with a principal place of business in Franklin, Tennessee.

NNA admits that Midway Nissan is authorized by NNA to sell certain Nissan cars and related merchandise.  NNA is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations of this paragraph and, therefore, denies them.

20.     Nissan Motors and Midway Nissan collectively carry out their infringing activities (described below) with the goal of furthering the Nissan and Infiniti brands, driving customers to local dealerships like Midway Nissan, and selling Nissan and Infiniti cars and merchandise as part of a single transaction that ultimately takes place at the dealer.  These sales activities of dealerships, like Midway Nissan, in Arizona result in significant benefit to not only the Nissan dealerships, but also to Nissan Motors.  These activities arise out of the same transaction, occurrence, or series of transactions or occurrences:   namely, Nissan Motors (including by and through its subsidiaries and authorized dealerships) promotes its products and services by creating, initiating, and causing a series of messages and identified content to be sent to fans, followers, and customers.  Such messages are used to increase sales of Nissan and Infiniti branded cars and merchandise to customers who come to the dealerships and make purchases as a result of the Defendants' collective infringing activities.  Midway Nissan and Nissan Motors purposefully direct these infringing activities (described below) to residents of this State and District.

**ANSWER:** Denied.

21.     Within the last six (6) years, Defendants Nissan Motors and Midway Nissan have created, initiated, and caused numerous infringing messages and identified content to be sent to their customers' mobile phones via SMS messaging, including through various short-code and social media-based marketing efforts.  For example, Defendants collectively operate dozens of social media sites, pages, and feeds (such as those maintained with Twitter, Facebook, and Google+) that are branded by Nissan Motors and Midway Nissan and promoted by the Defendants on their various websites, such as

1   www.nissanusa.com, www.infinitiusa.com, and www.midwaynissan.com/twitter.   A few of

2   Defendants' Nissan and Infiniti-branded social media sites, pages, and feeds include:

3   @NissanNews,       @NissanLEAF,       @Nissan,       @nissanquest,       @NissanWarranty,

4   @inifinitinews, @InfinitiGlobal, @MidwayNissanPhx, and @midwaynissanNissan (as

5   maintained with Twitter), facebook.com/nissan (as maintained with Facebook), and

6   youtube.com/nissanusa (as maintained with YouTube).   Nissan Motors and Midway

7   Nissan draft messages with links and submit them to these sites, pages, and feeds for

8   dissemination to their customers, followers, and fans.   Nissan Motors and Midway Nissan

9   intentionally use their various social media sites, pages, and feeds to create, post, and

10  store messages and/or content intended for delivery to Nissan and Infiniti customers,

11  followers, and fans, with the ultimate goal of driving customers to purchase cars and other

12  merchandise at Nissan and Infiniti dealers for the benefit of all three Defendants.

13  **ANSWER:** NNA admits that it has sites, pages or feeds with Twitter, Facebook and

14  Google+,     including     @NissanNews,     @NissanLEAF,     @Nissan,     @nissanquest,

15  @inifinitinews, @InfinitiGlobal, facebook.com/nissan, and youtube.com/nissanusa.  NNA

16  denies the remaining allegations of this paragraph direct to NNA.   NNA is without

17  knowledge or information sufficient to form a belief as to the truth of the remaining

18  allegations of this paragraph directed to the other defendants and, therefore, denies them.

19

20       22.     By their own choice, Nissan Motors and Midway Nissan specifically ensure

21  that the aforementioned messages include specific identifiers as described and covered

22  by HPL's claims (such as a URL or shortened link).   Additionally, in many cases, the

23  identified content is changed between the time of the identification message and the time

24  the content is requested, and/or is available for a limited time as indicated in the text of

25  Defendants' messages.  As a result of the above, Defendants -- and not the social media

26  services used by them perform each and every element of the asserted claims.  Moreover,

27  Nissan Motors and Midway Nissan obtain the benefit from the infringing messages by

28  increasing their sales and services, brand awareness, and good will, with resulting

1    financial gain to all three Defendants.

2    **ANSWER:** NNA is without knowledge or information sufficient to form a belief as to the

3    truth of the allegations of this paragraph and, therefore, denies them.

4

5    <u>**COUNT I**</u>

6    <u>**(Infringement of United States Patent No. 7,835,757)**</u>

7    23.    HPL incorporates by reference Paragraphs 1 through 22 of this Complaint

8    and realleges them as though fully set forth herein.

9    **ANSWER:** NNA's responses to the allegations of paragraphs 1 through 22 are herein

10    incorporated by reference.

11

12    24.    HPL is informed and believes, and thereon alleges, that Defendants have

13    been and are currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by,

14    among other things, using and practicing methods that embody one or more of claims 1-

15    13, and 15-20 of the '757 patent. Additionally, upon the Patent Office's issuance of the

16    forthcoming Reexamination Certificate regarding the '757 patent, Defendant likewise will

17    be infringing one or more of claims 21-39, 41-62, and 64-69. As mentioned previously, all

18    of these claims have been confirmed patentable by the Patent Office over the New York

19    Times Company's *ex parte* and *inter partes* reexamination requests.

20    **ANSWER:** Denied.

21

22    25.    HPL is informed and believes, and thereon alleges, that Defendants infringe

23    the '757 patent in connection with at least the specific product offerings and services

24    described in Paragraphs 20-22, above.

25    **ANSWER:** Denied.

26

27    26.    In the alternative, HPL is informed and believes, and thereon alleges, that

28    Defendants have actively induced and are currently inducing the infringement of the '757

1    patent in violation of 35 U.S.C § 271(b) or have contributed to and are currently

2    contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c)

3    because numerous messages of the type described in Paragraphs 20-22 have been, and

4    continue to be, sent to their subscribers' mobile devices.

5    **ANSWER:** Denied.

6

7          27.     More specifically, Nissan Motors has been on notice of its infringement of the

8    '757 patent since at least May of 2011, and since that time Defendants have offered at

9    least some of the product offerings and services described in Paragraphs 20-22, above.

10   HPL is informed and believes, and thereon alleges, that if it is not Defendants that create

11   and cause the infringing messages and content to be delivered as alleged in Paragraphs

12   20-22, then Defendants have actively induced or contributed to, and are currently actively

13   inducing or contributing to the actions of third parties to create and cause such messages

14   and content to be sent on their behalf, and knew or should have known that their actions

15   would cause actual infringement of the '757 patent.

16   **ANSWER:** Denied.

17

18         28.     In addition, with Nissan Motors being on notice of infringement of the '757

19   patent since May of 2011, HPL is informed and believes, and thereon alleges, that

20   Defendants' infringement of the '757 patent has been and continues to be willful.

21   **ANSWER:** Denied.

22

23         29.     As a direct and proximate result of Defendants' conduct, HPL has suffered

24   and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

25   HPL has also been damaged and, until an injunction issues, will continue to be damaged

26   in an amount yet to be determined.

27   **ANSWER:** Denied.

28

## COUNT II

### (Infringement of United States Patent No 7,499,716)

30.    HPL incorporates by reference Paragraphs 1 through 22 of this Complaint and realleges them as though fully set forth herein.

**ANSWER:**  NNA's responses to the allegations of paragraphs 1 through 22 are herein incorporated by reference.


31.    HPL is informed and believes, and thereon alleges, that Defendants have been and are currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40. 41. 83. 85. 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the '716 patent.  As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming all of these claims in connection with the New York Times Company's *ex parte* and *inter partes* reexamination requests.

**ANSWER:**  Denied.


32.    HPL is informed and believes, and thereon alleges, that Defendants infringe the '716 patent in connection with at least the specific product offerings and services described in Paragraphs 20-22, above.

**ANSWER:**  Denied.


33.    In the alternative, HPL is informed and believes, and thereon alleges, that Defendants have actively induced and are currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or have contributed to and are currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 20-22 have been, and continue to be, sent to their subscribers' mobile devices.

**ANSWER:** Denied.

34.     More specifically, Nissan Motors has been on notice of its infringement of the '716 patent since December of 2009, and since that time Defendants have offered at least some of the product offerings and services described in Paragraphs 20-22, above.  HPL is informed and believes, and thereon alleges, that if it is not Defendants that create and cause the infringing messages and content to be sent as alleged in Paragraphs 20-22, then Defendants have actively induced or contributed to, and are currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on their behalf, and knew or should have known that their actions would cause actual infringement of the '716 patent.

**ANSWER:** Denied.

35.     In addition, with Nissan Motors being on notice of infringement of the '716 patent since at least December of 2009, HPL is informed and believes, and thereon alleges, that Defendants' infringement of the '716 patent has been and continues to be willful.

**ANSWER:** Denied.

36.     As a direct and proximate result of Defendants' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER:** Denied.

/ / /

/ / /

/ / /

## COUNT III

### (Infringement of United States Patent No. 7,280,838)

37.     HPL incorporates by reference Paragraphs 1 through 22 of this Complaint and realleges them as though fully set forth herein.

**ANSWER:**  NNA's responses to the allegations of paragraphs 1 through 22 are herein incorporated by reference.


38.     HPL is informed and believes, and thereon alleges, that Defendants have been and are currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, 19, and 20 of the '838 patent.  HPL expects that additional claims will be asserted upon completion of the pending *ex parte* reexamination.

**ANSWER:**  Denied.


39.     HPL is informed and believes, and thereon alleges, that Defendants infringe the '838 patent in connection with at least the product offerings and services described in Paragraphs 20-22, above.

**ANSWER:**  Denied.


40.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendants have actively induced and are currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or have contributed to and are currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 20-22 have been, and continue to be, sent to their subscribers' mobile devices.

**ANSWER:**  Denied.


/ / /

41.     More specifically, Nissan Motors has been on notice of its infringement of the '838 patent since at least December of 2009, and since that time Defendants have offered at least some of the product offerings and services described in Paragraphs 20-22, above. HPL is informed and believes, and thereon alleges, that if it is not Defendants that create and cause the infringing messages to be sent as alleged in Paragraphs 20-22, then Defendants have actively induced or contributed to, and are currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on their behalf, and knew or should have known that their actions would cause actual infringement of the '838 patent.

**ANSWER:**  Denied.

42.     In addition, with Nissan Motors being on notice of infringement of the '838 patent since at least December of 2009, HPL is informed and believes, and thereon alleges that Defendants' infringement of the '838 patent has been and continues to be willful.

**ANSWER:**  Denied.

43.     As a direct and proximate result of Defendants' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**ANSWER:**  Denied.

## AFFIRMATIVE DEFENSES

NNA alleges and asserts the following affirmative defenses.  In addition to the affirmative defenses outlined below and subject to the responses above, NNA reserves all rights to allege additional affirmative defenses available under Rule 8(c) of the Federal Rules of Civil Procedure, affirmative defenses asserted by other defendants in this action,

and any other defenses, at law or in equity, that become known through the course of discovery.

**First Affirmative Defense**

**(Non-Infringement)**

NNA has not and does not infringe any valid, enforceable claim of the '757, '716, or '838 patent, either literally or under the doctrine of equivalents.

**Second Affirmative Defense**

**(Invalidity)**

The claims of the '757, '716, and '838 patents are invalid for failure to comply with one or more of the requirements of 35 U.S.C. § 100 *et seq.*, including, but not limited to, §§ 101, 102, 103, and/or 112.

**Third Affirmative Defense**

**(Lack of Standing)**

On information and belief, HPL lacks standing to bring suit against NNA on the '757, '716, and '838 patents.

**Fourth Affirmative Defense**

**(Estoppel and Laches)**

Plaintiffs' claims against NNA regarding the '757, '716, and '838 patents are barred, in whole or in part, by 35 U.S.C. § 286, the doctrine of laches (including, but not limited to, prosecution laches), the doctrine of estoppel (including, but not limited to, prosecution history estoppel) and other equitable defenses, including waiver.

**Fifth Affirmative Defense**

**(Patent Exhaustion)**

HPL's claims of patent infringement against NNA relating to the transmission of messages to mobile devices are barred by the doctrine of patent exhaustion and/or by the first sale doctrine based on the licenses between HPL and mobile device or mobile device software companies and others, including but not limited to those as alleged in paragraph 12 of the complaint.

1620970-WE  1

1

**Sixth Affirmative Defense**

2

**(Reservation of Defenses)**

3     NNA reserves all affirmative defenses available under Rule 8(c) of the Federal

4     Rules of Civil Procedure, and any other defenses, at law or in equity, that may be available

5     now or may become available in the future based on discovery or any other factual

6     investigation in this case, including inequitable conduct.

7

**PRAYER FOR RELIEF**

8     WHEREFORE, NNA prays for entry of judgment:

9     A.     Denying all relief sought by HPL in the Complaint;

10    B.     Dismissing the Complaint with prejudice;

11    C.     Awarding NNA the cost of this suit; and

12    D.     Declaring this suit to be exceptional, and awarding NNA its attorneys' fees

13    and such other and further relief as the Court deems just and appropriate.

14    Dated this *16th* day of *February*, 2012.

15                    BOWMAN AND BROOKE LLP

16

17                    By: */s/ Thomas M. Klein*
                          Thomas M. Klein
18                        Paul R. Lee
                          Attorneys for Defendants Nissan North
19                        America, Inc. and Midway Holdings, Inc.,
                          d/b/a Midway Nissan

20

21

22

23

24

25

26

27

28

1620970-WE   1                              21

| 1 | <u>**CERTIFICATE OF SERVICE**</u> |

2       I hereby certify that on the *16th* day of *February,* 2012, I caused the attached

3   **NISSAN NORTH AMERICA, INC.'S ANSWER, AFFIRMATIVE DEFENSES, AND JURY**

4   **DEMAND** to be electronically transmitted to the Clerk's Office using the CM/ECF System

5   for filing and service to the following:

6       Steven G. Lisa
        stevelisa@patentit.com
7       Jon E. Kappes
        jonkappes@patentit.com
8       LAW OFFICES OF STEVEN G. LISA, LTD.
        55 West Monroe Street, Suite 3200
9       Chicago, IL  60603

10      Victoria Curtin
        victoria @vcurtin.com
11      VICTORIA GRUVER CURTIN, P.L.C.
        14555 North Scottsdale Road, Suite 160
12      Scottsdale, AZ  85254

13      Attorneys for Plaintiff

14      Donna H. Catalfio
        catalfiod@ballardspahr.com
15      BALLARD SPAHR, LLP
        1 East Washington Street, Suite 2300
16      Phoenix, AZ  85004-2555

17      Syed K. Fareed
        sfareed@velaw.com
18      David B. Weaver
        dweaver@velaw.com
19      VINSON &ELKINS, LLP
        2801 Via Fortuna, Suite 100
20      Austin, TX  78746

21      Laura E. Muschamp
        lmuschamp@cov.com
22      COVINGTON & BURLING LLP
        9191 Town Centre Drive, 6th Floor
23      San Diego, CA  92122-1225

24      Robert J. Williams
        rwilliams@cov.com
25      COVINGTON & BURLING LLP
        One Front Street
26      San Francisco, CA  94111

27                                              /s/    D. Schwartz

28

1620970-WE  1                                    22