# Exhibit A

Steven G. Lisa (Illinois Bar No. 6187348)
Jon E. Kappes (Ariz. State Bar # 024714)
LAW OFFICES OF STEVEN G. LISA, LTD.
55 West Monroe Street, Suite 3200
Chicago, IL 60603
stevelisa@patentit.com
jonkappes@patentit.com__
55 West Monroe Street, Suite 3200
Chicago, IL 60603
Tel & Fax: (312) 752-4357

Victoria Curtin (Ariz. State Bar #010897)
VICTORIA GRUVER CURTIN, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona  85254
Victoria@vcurtin.com
Tel.:  (480) 998-3547
Fax:  (480) 596-7956
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## ~~FOR THE~~ DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Helferich Patent Licensing, L.L.C., | ) | |
|     an Illinois Limited Liability Company, | ) | |
| | ) | Consolidated Case |
| Plaintiff, | ) | No. 2:11-cv-02304 NVW |
| | ) | |
| vs. | ) | |
| | ) | |
| Suns Legacy Partners, LLC, dba | ) | |
| Phoenix Suns, a Delaware Limited | ) | **AMENDED COMPLAINT** |
| Liability Company, | ) | **AGAINST SUNS LEGACY** |
| Defendant. | ) | **PARTNERS** *dba* |
| | ) | **THE PHOENIX SUNS** |
| Helferich Patent Licensing, L.L.C., | ) | |
|     an Illinois Limited Liability Company, | ) | |
| | ) | (Jury Trial Demanded) |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Phoenix Newspapers, Inc., dba The Arizona | ) | |
| Republic, an Arizona Corporation, | ) | |

)
Defendant.                        )

Helferich Patent Licensing, L.L.C.,                )
          an Illinois Limited Liability Company,   )
                                                   )
                    Plaintiff,                     )
                                                   )
          vs.                                      )
                                                   )
Nissan Motor Co., Ltd.,a Japanese Corporation;     )
Nissan North America, Inc., a California           )
Corporation; and Midway Holdings, Inc., dba        )
Midway Nissan, an Arizona Corporation,             )
                                                   )
                    Defendants.                    )
Helferich Patent Licensing, L.L.C.,                )
          an Illinois Limited Liability Company,   )
                                                   )
                    Plaintiff,                     )
                                                   )
          vs.                                      )
                                                   )
NBA Properties, Inc., a New York Corporation;      )
and National Basketball Association,               )
a New York Joint Venture,                          )
                    Defendants.                     )

HELFERICH PATENT LICENSING, LLC,                   )
an Illinois limited liability company,             )
                                                   )
                    Plaintiff,                     )        No.
                                                   )
          vs.                                      )
                                                   )        **COMPLAINT FOR**
SUNS LEGACY PARTNERS, LLC, dba PHOENIX             )        **PATENT INFRINGEMENT**
SUNS, a Delaware Limited Liability Company,        )
                                                   )        (Jury Trial Demanded)
                    Defendant.                     )

3

Plaintiff Helferich Patent Licensing, LLC ("HPL"), by and through its undersigned counsel, complains against Defendant Suns Legacy Partners, LLC (d/b/a The Phoenix Suns) (hereinafter "Suns") as follows:

## NATURE OF THE ACTION

1.     This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

**JURISDICTION AND VENUE**

2.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in the State of Arizona and in this District, and purposefully directs its infringing activities to residents of this State and District by causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

3.      Venue is appropriate pursuant to 28 U.S.C. § 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this District, and has caused infringing messages to be sent to residents of this State and District.

**PLAINTIFF**

4.      HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of thirty (30twenty five (25) U.S. patents, six (6eleven (11) pending U.S. applications, and over a dozen related foreign patents and patent applications all relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio").  The HPL Portfolio includes the patents and applications listed in Exhibit A.

5.      On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent").  HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

66.    The '757 patent describes methods and systems relating to wireless messaging to mobile devices.  More particularly, the patent includes claims that relate to, among other things, the transmission of notification messages to mobile devices that include identifiers (such as a URL) that identify content available for download, including for example, identifiers that are received from an identification service such as a link shortening service.  Other claims relate to notifications that identify content that is updated or changed prior to the content being sent to the mobile user in response to a request for such content and notifications that indicate the time the identified content is available.  Examples of such notifications include SMS messages that include an identifier of content (such as a URL) in the message, and where the identified content is updated and/or changed by the content provider between the time the notification is sent and the time the content is requested, and MMS notifications or SMS messages that include an identifier of content (such as a URL) as well as an indication of the time the content is to be available (such as text indicating a "24 hour sale").

7.    On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent").  HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

78.    The '716 patent describes methods and systems that relate to wireless messaging to mobile devices.  More particularly, the patent includes claims that relate to, among other things, the transmission of notification messages to mobile devices that

~~include identifiers (such as a URL) that identify content available for download.  Other claims relate to notifications that indicate the time the identified content is to be available.  An example of such a notification is an MMS notification or SMS message that includes an identifier of content (such as a URL) as well as an indication of the time the content is to be available (such as text indicating a "24 hour sale") and where the identified content is either removed or changed after the expiration of the time period specified in the notification.  The '716 patent also includes claims relating to the transmission of notification messages to mobile devices from which content providers can receive commands to perform on the content.  Examples of such notifications include MMS notifications in response to which various commands to perform on content, such as a "reply" command, "forward" command, or "delete" command, are received.~~

~~9.~~    On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent").  HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

~~810.   The '838 patent describes methods and systems relating to wireless messaging to mobile devices.  More particularly, the '838 patent includes claims that relate to, among other things, the transmission of notification messages to mobile devices that include identifiers (such as a URL) that identify content available for download.  Examples of such notifications include SMS messages or MMS notifications that include an identifier of content (such as a URL) in the message.~~

7

~~11~~.     On December 26, 2006, the Patent Office issued Patent No. 7,155,241 entitled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information" (the "'241 patent").  HPL is the exclusive licensee of all right, title, and interest in the '241 patent.

9.     On January 31, 2012, the Patent Office issued Patent No. 8,107,601 entitled "Wireless Messaging System" (the '601 patent).  HPL is the exclusive licensee of all right, title, and interest in the '601 patent.

10.     On February 14, 2012, Patent Office issued Patent No. 8,116,741 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the '741 patent).  HPL is the exclusive licensee of all right, title, and interest in the '741 patent.

11.  On March 13, 2012, the Patent Office issued Patent No. 8,134,450 entitled "Content Provision to Subscribers via Wireless Transmission" (the "'450 patent").  HPL is the exclusive licensee of all right, title, and interest in the '450 patent.

12.     The '757, '716, '838, '601, '741, and '450 patents variously and in general relate to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones.  The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of the content (of the type intended for placement into an SMS or MMS message).  The content provider also selects and inserts a unique identifier of the content, such as a URL "link" in the message.  The content

provider uses an interface with a notification system (such as various social media sites or messaging services) to disseminate its messages to its customers', followers' and fans' mobile phones via SMS or MMS.  Thereafter, the content provider receives a request for the content identified by the link and causes the requested content to be delivered to the user's mobile phone.  The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs that identify dynamic content such as changing product prices, promotions, events, reviews, or comments; (3) information to inform the recipient of the identifier of the time that the content is available such "24 hour sale" information; (4) a request for a delivery confirmation of an MMS message; (5) error status information when retrieving content, and/or (6) MMS messages from which users can request—and content providers receive—commands regarding the content such as to delete, reply to, or forward the content.

12.    The '241 patent describes methods and systems relating to wireless messaging to mobile devices.  More particularly, the '241 patent includes claims that relate to the transmission of notification messages to mobile devices that include acknowledgement requests.  Examples of such notifications include MMS notifications which include requests for delivery reports.

13.    On July 14, 2010, HPL filed suit against New York Times Company asserting infringement by the New York Times Company of the three (3) patents asserted herein.  Approximately six (6) months later (in late February 2011), New York Times Company filed three (3) *ex parte* reexaminations in the Patent Office, one for each of the

three (3) asserted patents.      As of the filing of this Complaint, the Patent Office has **confirmed as patentable** a total of 313140 claims as a result of the *ex parte* reexaminations of the '716, '757 and '838757 patents. With respect to the '716 patent, on December 13October 25, 2011, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" concluding." Therein, the reexamination and confirming as patentable 16Patent Office **confirmed the patentability** of original claims, including claims 2, 16, 19, 20, 22, 23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; 53 claims with minor clarifying amendments, includingrevised claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and 65 new claims, including claims 70-134.  With respect to the '757 patent, on December 9, 2011, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" andhas also confirmed as patentable 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14, which are asserted herein.  HPL believes that the PTO will shortly confirm claims 2-5, 7-10, 12-17 of the '757 patent with minormerely clarifying amendments (changes, as wellas agreed by the Examiner), including claims 2-5, 7-10, and 12-17; and 49 new claims, including (claims 21-69.).  With respect to the '838 patent, on March 27, 2012, the Patent Office issued a "Reexamination Certificate" and confirmed as patentable 76 original claims, including claims 1-44 and 48-84; 20 claims with minor clarifying amendments, including claims 45-47 and 85-96; and 14 new claims including claims 97-110the Patent Office has issued a Non Final Office Action to which HPL will respond shortly.  HPL likewise expects additional claims to be confirmed in the '838 reexamination.

10

~~1414. In addition, HPL recently received Notices of Allowance for pending applications Serial Nos. 11/598,202, 12/167,971, and 12/367,358, all of which were allowed by the Patent Office over express consideration of art and arguments present by New York Times Company in the aforementioned *ex parte* reexamination requests. HPL anticipates amending this Complaint to add allegations of infringement of the allowed claims once issued.~~

~~15~~. On September 6, 2011, after the Patent Office confirmed and allowed numerous infringed claims of HPL's patents and applications over New York Times Company's invalidity arguments, New York Times Company joined with several other companies in filing yet another round of reexamination requests for the '757, '716, and '838 patents. The *inter partes* reexamination requests did not seek reexamination of all claims asserted herein, including ***at least*** asserted claim 1 of the '757 patent and claims 38 and 39 of the '716 patent.

15~~16~~. On October 28, 2011, the Patent Office issued a non-appealable order denying the request for *inter partes* reexamination of the '838 patent in its entirety, stating ~~repeatedly~~ that "The references set forth~~None of the above cited art [referring to the art cited~~ in the request have been considered both alone and in combination. They fail to raise a [substantial~~*inter partes* requests] provides any~~ new question] of patentability as to 9-20 of the '838 patent claims. Accordingly, the request for~~technological teachings that were not present in the art cited in the previous~~ reexamination is denied."~~(90/009883)."~~ Shortly thereafter, on November 4, 2011, the

Patent Office issued non-appealable orders similarly~~fully~~ denying the requests for *inter partes* reexaminations of the '716 and '757 ~~for similar reasons~~.  Thus, the Patent Office denied all three *inter partes* reexaminations filed by the New York Times and its defense group.

16.    During the same period, the Patent Office issued the '741, '601, and '450 patents after express consideration of the New York Times Company's six *ex parte* and *inter partes* reexamination requests, art, and arguments.  As discussed below, the '741, '601 and '450 patents include more than fifty additional claims that HPL believes are infringed by content providers, such as Defendant.

17.    On December 25, 2011 and January 6, 2012, the New York Times Company and its defense group began filing a third round of reexamination requests (in this case *inter partes* requests) against HPL Patent Nos. 7,155,241 (not previously the subject of a reexamination request) and 7,499,716 (the subject of two prior reexamination requests as discussed above).  On January 19, 2012, HPL filed an Information Disclosure Statement including copies of these newest reexamination requests (and the art and arguments discussed therein) with the *ex parte* reexamination Examiner of the '838 patent.

a) Shortly thereafter, the '838 patent reexamination Examiner reviewed the Information Disclosure Statement and issued the Notice of Intent to Issue a Reexamination Certification thereby confirming as patentable the claims of the '838 patent over the New York Times defense group's third round

reexamination art and arguments. HPL believes the New York Times defense group intends to continue filing intentionally staggered requests for reexamination to hamper this litigation indefinitely.

b) On March 20, 2012, one of HPL's related pending applications, Application No. 12/580,189 received an official Notice of Allowance. In that Notice of Allowance, the Examiner allowed all of the claims of the '189 application over the NYT Defense Group's first, second, and third round reexamination requests, art and arguments. Upon issuance, the patent corresponding to the '189 application will be infringed by Defendant.

18.    To date, more than one hundred17.    To date, more than ninety (90) of the world's most sophisticated companies have agreed to a license to the HPL Portfolio. Licensees include: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, DexOne, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Harley-Davidson, Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, PGA Tour, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden, Taco Bell, Toyota, Walgreens, Wal-Mart. Yamaha, Zuffa/UFC

13

and numerous other companies including those whose identities HPL has agreed to keep confidential.

### THE DEFENDANT

19The Defendant

18.  Defendant Suns Legacy Partners is a Delaware limited liability company with its principal place of business in Phoenix, Arizona.  Suns Legacy Partners owns and operates the Phoenix Suns, a professional basketball team within the National Basketball Association.  The Phoenix Suns are based in Phoenix, Arizona, and accordingly conduct the majority of their business in Phoenix, Arizona, including conducting the majority of their games in Phoenix, Arizona, and selling significant amounts of merchandise to fans in Phoenix, Arizona.  Moreover, Defendant purposefully directs its infringing activities (described below) to residents of this State and District by causing infringing messages to be sent to residents of the State of Arizona and this District.

2019.  Within the last six (6) years, the Suns have initiated and caused numerous infringing messages to be sent in connection with at least the following product and service offerings:

a)      The Suns provide alerts to its subscribers' mobile devices via SMS messaging, whereby the Suns causescause infringing messages to be sent to its subscribers' mobile devices alerting its subscribers of programming and other offerings that often include an identifier of content (such as a URL) within the notification. Moreover, such notifications often link to dynamic content (e.g., content that is changed

14

between the time of the original notification and the time such content is requested), ~~as well as~~ indicate the time the identified content is to be available, or include shortened URLs which rely on error status information to be used when requesting the content.

> SUNS PROMO: Buy 2 Millionaire Raffle tickets @ the Fry's on Baseline/McClintock from 4-6 pm today & get two Suns tix!
> http://on.suns.com/4f Txt STOP 2 quit



**Figures 1 and 2.**

Figure 1 is an example of an SMS message created and caused to be delivered by Suns containing a specific URL identifying the Suns content shown in Figure 2, which Suns delivered to a mobile phone upon a request (using the provided URL) to do so.

    (b)   The Suns also provides~~provide~~ alerts to its subscribers' mobile devices via MMS messaging, whereby the Suns causes~~cause~~ infringing messages to be sent to its subscribers' mobile devices alerting its subscribers of programming and other offerings that often include an identifier of content (such as a URL) within the notification. Further, these MMS messages include acknowledgement requests, include an indication of the time the MMS content is available, and enable the Suns to receive commands to perform on the content. For example, the Suns causes messages to be sent in connection with the MySuns Mobile service in which subscribers sign up to receive video clips from the Phoenix Suns via MMS. The subscription page for this service is shown below.

15



**Figure 3.** The sign-up page for MySuns Mobile, indicating that subscribers can sign up to recieve MMS messages.

(c)     The Suns also cause infringing messages to be sent through its various social media websites.  For example, in conjunction with its @PhoenixSuns Twitter feed, the Suns ~~cause~~causes thousands of infringing messages to be sent via SMS to its "followers" daily, as shown below in Figures 4 and 5.  The Suns' messages include identifiers (e.g., URLs) that the Suns received from an identification service such as a link shortening service (see, for example, "http://on.suns.com/4u" as shown below).  Still further, many of the messages indicate the time the content is available, ~~and others~~ contain identifiers to dynamic content where the content is changed between the time of the notification and the time the content is requested by the Suns' subscribers, or include

16

shortened URLs which rely on error status information to be used when requesting the content.  For example, in March, 2011, the Suns ~~caused~~sent a message to be sent to its mobile alert subscribers via SMS pertaining to fan artwork.  Figure 4, below, shows the message and Figure 5 shows the dynamic content.



**Figures 4 and 5.**  Content pushed to mobile phones through the @PhoenixSuns Twitter feed.  The content is dynamic because it includes updated fan artwork.

21~~20~~.  On or about March 28, 2011, HPL gave written notice to the Suns of its infringement of the '757, '716, '838, and '241 patents, and notice that U.S. Patent Application No.'s 11/598,202,  12/167,971, and 12/367,358 (now the '601, '741, and '450 patents, respectively) would be infringed once issued as patents.  The notice letter provided the Suns with a detailed description of the claims, and in addition, provided detailed information including infringement charts demonstrating infringement of the claims.  On May 12, 2011, NBA Properties, Inc. wrote a letter to HPL expressing its

desire to handle licensing negotiations on behalf of the Suns and all other NBA teams, including two other NBA teams placed on notice of infringement of HPL's claims, the Chicago Bulls and the Detroit Pistons.  Thereafter, HPL directed all communications relating to the Suns to NBA Properties, Inc.  NBA Properties has repeatedly refused to accept a license under HPL's patents on terms consistent with HPL's established license rates.

22~~21~~.  For the past eleven (11~~eight (8~~) months, the Suns have continued to infringe HPL's patents while ~~repeatedly~~ refusing to accept a license on HPL's well-established and reasonable licensing terms.  Even worse, the Suns and the NBA have continued to refuse a license on terms consistent with HPL's established license rates even after HPL successfully licensed a large number of the other major sports leagues (including the NHL, NFL, Zuffa (the UFC), PGATour, and other major sports leagues whose names are confidential), and the Patent Office confirmed as patentable a large number of claims and allowed numerous additional claims over express consideration of the prior art and arguments proffered by New York Times Company and others now cooperating with New York Times Company.  More specifically:

(a)  <u>Suns (and the NBA) Refused a License After New York Times Filed its *Ex Parte* Reexaminations</u>:  As discussed above, in late February 2011, New York Times filed its three (3) *ex parte* reexaminations on the '757, '716, '828 patents.  HPL's March~~March8~~ 28, 2011 notice letter advised the Suns of the reexaminations and provided the Suns with a detailed analysis explaining why HPL believed a large number of claims

18

were likely to be confirmed.   The same letter also advised the Suns that the reexaminations did not cover all of the patents that the Suns was accused of infringing (including, the '241 patent).  Notwithstanding, the Suns (and the NBA) refused a license on terms consistent with HPL's many licensees (including the many licensed sports leagues) and continued to infringe HPL's patents.

(b)     Suns (and the NBA) Continued to Refuse a License After the Patent Office Confirmed Claims in the *Ex Parte* Reexaminations:  As previously mentioned, in the third quarter of 2011 the Patent Office confirmed as patentable numerous infringed claims in two (2) of the threepending *ex parte* reexamination proceedings over express consideration of New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint.  Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, the Suns (and the NBA) refused a license on terms consistent with HPL's many licensees (including the many licensed sports leagues) and continued to infringe HPL's patents.

 (c(c)  Suns  (and  the  NBA)  Continued  to  Refuse  a  License  After  *Inter  Partes* Reexaminations were Filed on Less than All Asserted Claims:  On September 6, 2011, after  the  Patent  Office  confirmed  and  allowed  numerous  infringed  claims  of  HPL's patents and applications over New York Times Company's invalidity arguments, several other  companies  joined  New  York  Times  Company  in  filing  yet  another  round  of reexamination requests for the '757, '716, and '838 patents.  These new reexamination requests failed to seek reexamination of all claims asserted to be infringed by the Suns,

19

~~including *at least* asserted claim 1 of the '757 patent, claims 38 and 39 of the '716 patent, and claims 1, 2, 10, 13, 14, 38, 39, 40, 41, 42, 53, 54, 71, 72, 80, 84, and 85 of the '241 patent.   Notwithstanding the *inter partes* reexamination requests failing to seek reexamination of all claims asserted herein, the Suns (and the NBA) refused a license on terms consistent with HPL's many licensees (including the many licensed sports leagues) and continued to infringe HPL's patents.~~

~~(d)~~   Suns (and the NBA) Continued to Refuse a License After the Patent Office Denied Outright All Three *Inter Partes* Reexaminations:   As previously stated, on October 28, 2011 and November 4, 2011, respectively, the Patent Office issued non-appealable orders fully denying all three of the New York Times defense group's requests for *inter partes* reexaminations.   Thereafter, on November 9, 2011, HPL promptly sent a letter to the Suns (and the NBA) advising it of HPL's ongoing licensing, litigation, and patent prosecution efforts, and again offered a license to the Suns (and the NBA) on HPL's well-established terms.   Notwithstanding the outright denial of all three *inter partes* reexamination requests, the Suns (and the NBA) refused a license on terms consistent with HPL's many licensees (including the many licensed sports leagues) and continued to infringe HPL's patents.

(d)   The Suns (and the NBA) Refused a License and Continued to Infringe the Patents After the Patent Office Issued Helferich New Patents: As discussed above, the Patent Office has allowed and issued Helferich three new patents over express consideration of the *ex parte* and first *inter partes* reexamination requests (including all

20

of the art and arguments proffered by New York Times and its defense group members in those requests).  Notwithstanding, the Suns continued to refuse a license and to infringe Helferich's patents.

### COUNT I
### (Infringement of United States Patent No. 7,835,757 via SMS)

23~~22~~.  HPL incorporates by reference Paragraphs 1 through 22~~21~~ of this Complaint and realleges them as though fully set forth herein.

24~~23~~.  HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 1-13, and 15-20 of the '757 patent (and likely others as determined through discovery)~~within the United States~~ without authority or license from HPL.  Additionally, upon the Patent Office's issuance of the forthcoming Reexamination Certificate regarding the '757 patent, Defendant likewise will be infringing one or more of new claims presently numbered 21-39, 41-62, and 64-69.  As mentioned previously, ~~claims 1, 6, 11, and 18-20 of the '757 patent have been confirmed by~~ the Patent Office has issued a Notice of Intent to Issue a Reexamination Certificate confirming the patentability of all of these claims after consideration of the~~in connection with~~ New York Times Company's (and its Defense Group's) first and second round _ex parte_ and _inter partes_ reexamination requests~~request~~.

25~~24~~.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '757 patent because it causes SMS notifications of the type described in Paragraph

21

126 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '757 patent in connection with at least the product offerings and services described in Paragraph 2019, above.

2625.  In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 2024 have been, and continue to be, sent to its subscribers' mobile devices.

2726.  More specifically, Defendant has been on notice of its infringement of the '757 patent since March of 2011, and since that time numerous infringing SMS messages as described in Paragraph 2024 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 2024, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 Patent.

2827.  In addition, with Defendant being on notice of infringement of the '757 patent since March of 2011, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

2928.  As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II
### (Infringement of United States Patent No. 7,499,716 via SMS)

3029.  HPL incorporates by reference Paragraphs 1 through 2221 of this Complaint and realleges them as though fully set forth herein.

3130.  HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, 41, 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106 and 10727, 30, 38, and 39 of the '716 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming the patentability of all of these claims after consideration ofhave been confirmed by the Patent Office in connection with New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requestsrequest.

3231.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent because it causes SMS notifications of the type described in Paragraph 128 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and

thereon alleges, that Defendant infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 20~~19~~, above.

33~~32~~.  In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20~~31~~ have been, and continue to be, sent to its subscribers' mobile devices.

34~~33~~.  More specifically, Defendant has been on notice of its infringement of the '716 patent since March of 2011, and since that time numerous infringing messages as described in Paragraph 20~~31~~ have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 22~~31~~, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 Patent.

35~~34~~.  In addition, with Defendant being on notice of infringement of the '716 patent since March of 2011, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

36~~35~~.  As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT III
### (Infringement of United States Patent No. 7,280,838 via SMS)

37~~36~~.  HPL incorporates by reference Paragraphs 1 through 22~~21~~ of this Complaint and realleges them as though fully set forth herein.

38~~37~~.   HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, 19, 20, and 97-101 and 105-110~~20~~ of the '838 patent (and likely others) within the United States without authority or license from HPL.   As mentioned previously, ~~all claims of the '838 patent are presently under review by~~ the Patent Office has issued a Reexamination Certificate confirming the patentability of all of these claims after consideration of the~~in connection with~~ New York Times~~Time~~ Company's (and its Defense Group's) first, second, and third round *ex parte* and *inter partes* reexamination requests. ~~request.~~

39~~38~~.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent because it causes SMS notifications of the type described in Paragraph 12~~10~~ to be sent to its subscribers' mobile devices.  HPL is informed and believes, and

thereon alleges, that Defendant infringes the '838 patent in connection with at least the product offerings and services described in Paragraph 20~~19~~, above.

40~~39~~.  In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20~~38~~ have been, and continue to be, sent to its subscribers' mobile devices.

41~~40~~.  More specifically, Defendant has been on notice of its infringement of the '838 patent since March of 2011, and since that time numerous infringing messages as described in Paragraph 20~~38~~ have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20~~38~~, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 Patent.

42~~41~~.  In addition, with Defendant being on notice of infringement of the '838 patent since March of 2011, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

4342.  As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**COUNT IV**
**(Infringement of United States Patent No. 7,835,757 via MMS)**

4443. HPL incorporates by reference Paragraphs 1 through 2221 of this Complaint and realleges them as though fully set forth herein.

4544.  HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 2, 4, 5, 7-10, 12-16, and 18 of the '757 patent within the United States without authority or license from HPL.  Additionally, upon the Patent Office's issuance of the forthcoming Reexamination Certificate regarding the '757 patent, Defendant likewise will be infringing one or more of claims 21, 25, 27, 28, 30-32, 35, 36, 38-42, 44. 48, 50, 51, 53-55, 58, 59, and 61-67. As mentioned previously, claim 18 of the '757 patent has been confirmed by the Patent Office has issued a Notice of Intent to Issue a Reexamination Certificate confirming the patentability of all of these claims after consideration of in connection with New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requestsrequest.

4645.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '757 patent because it causes MMS notifications of the type described in Paragraph

126 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '757 patent in connection with at least the product offerings and services described in Paragraph 2019, above.

4746. In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because MMS notifications of the type described in Paragraph 2044 have been, and continue to be, sent to its subscribers' mobile devices.

4847. More specifically, Defendant has been on notice of its infringement of the '757 patent since March of 2011, and since that time HPL is informed and believes that infringing messages as described above in Paragraph 2045 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 2045, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 Patent.

4948. In addition, with Defendant being on notice of infringement of the '757 patent since March of 2011, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

28

50~~49~~.  As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

### COUNT V
### (Infringement of United States Patent No. 7,499,716 via MMS)

51~~50~~.  HPL incorporates by reference Paragraphs 1 through 22~~21~~ of this Complaint and realleges them as though fully set forth herein.

52~~51~~.  HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15-18, 21-26, 28-33, 37-43, 83-86, 89-93, 97-100, 103-107, and 109~~and  37  43~~ of the '716 patent (and likely others) within the United States without authority or license from HPL. As mentioned previously, ~~all of these claims have been confirmed by~~ the Patent Office has issued a Reexamination Certificate confirming the patentability of all these claims after consideration of~~in connection with~~ New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests~~request~~.

53~~52~~.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent because it causes MMS notifications of the type described in Paragraph 12~~8~~ to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 20~~19~~, above.

29

5453. In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous MMS notifications of the type described in Paragraph 2052 have been, and continue to be, sent to its subscribers' mobile devices.

5554. More specifically, Defendant has been on notice of its infringement of the '716 patent since March of 2011, and since that time HPL is informed and believes that infringing messages as described in Paragraph 2052 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 2052, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 Patent.

5655. In addition, with Defendant being on notice of infringement of the '716 patent since March of 2011, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

5756. As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT VI
### (Infringement of United States Patent No. 7,280,838 via MMS)

58~~57~~. HPL incorporates by reference Paragraphs 1 through 22~~21~~ of this Complaint and realleges them as though fully set forth herein.

59~~58~~.  HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9-12, and 15-20 of the '838 patent (and likely others) within the United States without authority or license from HPL.  As mentioned previously, ~~all claims of~~ the ~~'838 patent are currently under review by the~~ Patent Office has issued a Reexamination Certificate confirming the patentability of all of these claims after consideration of~~in connection with~~ New York Time's (and its Defense Group's) first, second and third round *ex parte* and *inter partes* reexamination requests~~request~~.

60~~59~~.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent because it causes MMS notifications of the type described in Paragraph 12~~10~~ to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '838 patent in connection with at least the product offerings and services described in Paragraph 20~~19~~, above.

61~~60~~.  In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '838

patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous MMS notifications of the type described in Paragraph 20~~59~~ have been, and continue to be, sent to its subscribers' mobile devices.

62~~61~~. More specifically, Defendant has been on notice of its infringement of the '838 patent since March of 2011, and since that time HPL is informed and believes that infringing messages as described in Paragraph 20~~59~~ have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20~~59~~, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 Patent.

63~~62~~. In addition, with Defendant being on notice of infringement of the '838 patent since March of 2011, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

64~~63~~. As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT VII

**(Infringement of United States Patent No. 7,155,241 via MMS)**

6564. HPL incorporates by reference Paragraphs 1 through 2221 of this Complaint and realleges them as though fully set forth herein.

6665. HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '241 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 1, 2, 10, 13, 14, 38, 39, 40, 41, 42, 53, 54, 71, 72, 80, 84, and 85 of the '241 patent (and likely others) within the United States without authority or license from HPL.

6766. HPL is informed and believes, and thereon alleges, that Defendant infringes the '241 patent because it causes MMS notifications of the type described in Paragraph 12 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '241 patent in connection with at least the product offerings and services described in Paragraph 2019, above.

6867. In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '241 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '241 patent in violation of 35 U.S.C. § 271(c) because numerous MMS notifications of the type described in Paragraph 2066 have been, and continue to be, sent to its subscribers' mobile devices.

6968. More specifically, Defendant has been on notice of its infringement of the '241 patent since March of 2011, and since that time HPL is informed and believes that

infringing messages as described in Paragraph 20~~66~~ have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20~~66~~, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '241 Patent.

70~~69~~.  In addition, with Defendant being on notice of infringement of the '241 patent since March of 2011, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '241 patent has been and continues to be willful.

71.    As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

### COUNT VIII
### (Infringement of United States Patent No. 8,107,601 via SMS)

72.    HPL incorporates by reference Paragraphs 1 through 22 of this Complaint and realleges them as though fully set forth herein.

73.    HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '601 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3, 4, 9-11, 16, and 17 of the '601 patent. As mentioned previously, the Patent Office issued the

‘601 patent after consideration of the New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

74.     HPL is informed and believes, and thereon alleges, that Defendant infringes the ‘601 patent because it causes SMS notifications of the type described in Paragraph 12 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the ‘601 patent in connection with at least the product offerings and services described in Paragraph 20, above.

75.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and are currently inducing the infringement of the ‘601 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the ‘601 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20 have been, and continue to be, sent to its subscribers' mobile devices.

76.     More specifically, Defendant has been on notice of its infringement of the ‘601 patent since at least January 31, 2012, the issue date of the ‘601 patent, and since that time numerous infringing SMS messages as described in Paragraph 20 have been, and continue to be, sent to Defendant' subscribers along with links to Defendant' content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and

knew or should have known that its actions would cause actual infringement of the '601 Patent.

77.     In addition, with Defendant being on notice of infringement of the '601 patent since at least January 31, 2012, HPL is informed and believes, and thereon alleges, that Defendant' infringement of the '601 patent has been and continues to be willful.

78.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

### COUNT IX
### (Infringement of United States Patent No. 8,116,741 via SMS)

79.     HPL incorporates by reference Paragraphs 1 through 22 of this Complaint and realleges them as though fully set forth herein.

80.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '741 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-9, 11-18, 20, 21, 23, 24, 26,  and 27 of the '741 patent. As mentioned previously, the Patent Office issued the '741 patent after consideration of the New York Times Company's (and its Defense Group's) first and second round *ex parte*  and *inter partes* reexamination requests.

81.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '741 patent because it causes SMS notifications of the type described in Paragraph 12

to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '741 patent in connection with at least the product offerings and services described in Paragraph 20, above.

82.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and are currently inducing the infringement of the '741 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '741 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20 have been, and continue to be, sent to its subscribers' mobile devices.

83.     More specifically, Defendant has been on notice of its infringement of the '741 patent since at least February 14, 2012, the issue date of the '741 patent, and since that time numerous infringing SMS messages as described in Paragraph 20 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '741 Patent.

84.     In addition, with Defendant being on notice of infringement of the '741 patent since at least February 14, 2012, HPL is informed and believes, and thereon

alleges, that Defendant' infringement of the '741 patent has been and continues to be willful.

85.     As a direct and proximate result of Defendant' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT X
### (Infringement of United States Patent No. 8,134,450 via SMS)

86.     HPL incorporates by reference Paragraphs 1 through 22 of this Complaint and realleges them as though fully set forth herein.

87.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '450 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3-8, 10, 13-15, 17-23, and 27-28 of the '450 patent. As mentioned previously, the Patent Office issued the '450 patent after consideration of the New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

88.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '450 patent because it causes SMS notifications of the type described in Paragraph 12 to be sent to its subscribers' mobile devices. HPL is informed and believes, and thereon alleges that Defendant infringes the '450 patent in connection with at least the product offerings and services described in Paragraph 20, above.

89.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '450 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '450 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20 have been, and continue to be, sent to its subscribers' mobile devices.

90.     More specifically, Defendant has been on notice of its infringement of the '450 patent since at least March 13, 2012, the issue date of the '450 patent, and since that time numerous infringing SMS messages as described in Paragraph 20 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '450 Patent.

91.     In addition, with Defendant being on notice of infringement of the '450 patent since at least March 13, 2012, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '450 patent has been and continues to be willful.

9270.  As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law.

39

HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

### COUNT XI
### (Infringement of United States Patent No. 8,134,450 via MMS)

93.   HPL incorporates by reference Paragraphs 1 through 22 of this Complaint and realleges them as though fully set forth herein.

94.   HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '450 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3-7, 10-12, 15, and 17-25 of the '450 patent.

95.   HPL is informed and believes, and thereon alleges, that Defendant infringes the '450 patent because it causes MMS notifications of the type described in Paragraph 12 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '450 patent in connection with at least the product offerings and services described in Paragraph 20, above.

96.   In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '450 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '450 patent in violation of 35 U.S.C. § 271(c) because numerous MMS notifications of the type described in Paragraph 20 have been, and continue to be, sent to its subscribers' mobile devices.

40

97.   More specifically, Defendant has been on notice of its infringement of the '450 patent since at least March 13, 2012, the issue date of the '450 patent, and since that time numerous infringing MMS messages as described in Paragraph 20 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '450 Patent.

98.   In addition, with Defendant being on notice of infringement of the '450 patent since at least March 13, 2012, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '450 patent has been and continues to be willful.

99.   As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)   Judgment that Defendant has infringed, actively induced others to infringe, or contributed to the infringement by others of one or more of the claims of the '757

41

patent, '716 patent, '838 patent, '241 patent, '601 patent, '741 patent, and '450and '241 patent;

(b)     A permanent injunction to be issued enjoining and restraining Defendant and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more of the claims of the '757 patent, '716 patent, '838 patent, '241 patent, '601 patent, '741 patent, and '450and the '241 patent and from inducing or contributing to infringement of any such claims by others;

(c)     An award of damages against Defendant adequate to compensate HPL for past infringement of one or more of the claims of the '757 patent, '716 patent, '838 patent, '241 patent, '601 patent, '741 patent, and '450and '241 patent, together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)     Judgment that this case is "exceptional" under 35 U.S.C. § 285, and that HPL is entitled to an award of its reasonable attorneys' fees in the prosecution of this action; and

(e)     Such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby makes a demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

RESPECTFULLY SUBMITTED this  18th22nd day of  April, 2012November, 2011.

VICTORIA GRUVER CURTIN, P.L.C.

By: */s/ Victoria Curtin*
           Victoria Curtin
           14555 North Scottsdale Rd., Ste. 160
           Scottsdale, Arizona 85254
           Tel.:  (480) 948-3295
           Fax:  (480) 948-3387
           Attorney for Plaintiff

## Exhibit A

1.  U.S. Patent No. 8,134,450, titled "Content Provision to Subscribers via Wireless Transmission," issued March 13, 2012.

2.  U.S. Patent No. 8,116,743, titled "Systems and Methods for Downloading Information to a Mobile Device," issued February 14, 2012.

3.  U.S. Patent No. 8,116,741, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued February 14, 2012.

4.  U.S. Patent No. 8,107,601, titled "Wireless Messaging System," issued January 31, 2012.

5.  U.S. Patent No. 8,099,046, titled "Method for Integrating Audio and Visual Messaging," issued January 17, 2012.

1.6.   U.S. Patent No. 7,957,695, entitled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

2.7.   U.S. Patent No. 7,843,314, entitled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010;

3.8.   U.S. Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device,"  issued November 16, 2010;

4.9.   U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

5.10.   U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

6.11.   U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

7.12.   U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

8.13.   U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

9.14.   U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

10.15.  U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

11.16.  U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

12.17. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

13.18. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

14.19. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

15.20. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

16.21. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

17.22. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

18.23. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

19.24. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

20.25. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

21.26. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

22.27. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

23.28. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

24.29. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

25.30. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

26.31. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

27.32. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

45

~~28.~~33. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

~~29.~~34. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

~~30.~~35. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

~~31.~~36. U.S. Patent Application No. 12/~~267,436~~367,358, titled "Wireless Messaging System~~Content provision to subscribers via wireless transmission~~."

~~32. U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."~~

~~33. U.S. Patent Application No. 12/167,971, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."~~

~~34. U.S. Patent Application No. 11/598,832, titled "Systems and Methods for Downloading Information to a Mobile Device."~~

~~35. U.S. Patent Application No. 11/598,202, titled "Wireless Messaging System."~~

~~36. U.S. Patent Application No. 10/958,731, titled "System and Method for Integrating Audio and Visual Messaging."~~

46