# Exhibit C

Steven G. Lisa (Illinois Bar No. 6187348)
Jon E. Kappes (Ariz. State Bar # 024714)
LAW OFFICES OF STEVEN G. LISA, LTD.
stevelisa@patentit.com
jonkappes@patentit.com
55 West Monroe Street, Suite 3200~~3210~~
Chicago, IL 60603
~~stevelisa@patentit.com~~
~~jonkappes@patentit.com~~
Tel & Fax: (312) 752-4357

Victoria Curtin (Ariz. State Bar #010897)
VICTORIA GRUVER CURTIN, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona  85254
Victoria@vcurtin.com
Tel.:  (480) 998-3547
Fax:  (480) 596-7956
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## ~~FOR THE~~ DISTRICT OF ARIZONA

| | | |
|---|---|---|
| Helferich Patent Licensing, L.L.C., an Illinois Limited Liability Company, | ) ) ) | Consolidated Case |
| Plaintiff, | ) | No. 2:11-cv-02304 NVW |
| | ) | |
| vs. | ) | |
| | ) | **AMENDED COMPLAINT** |
| Suns Legacy Partners, LLC, dba | ) | **AGAINST NISSAN** |
| Phoenix Suns, a Delaware Limited | ) | **DEFENDANTS** |
| Liability Company, | ) | |
| Defendant. | ) | |
| | ) | |
| Helferich Patent Licensing, L.L.C., an Illinois Limited Liability Company, | ) ) ) | (Jury Trial Demanded) |
| Plaintiff, | ) | |
| vs. | ) | |
| | ) | |
| Phoenix Newspapers, Inc., dba The Arizona Republic, an Arizona Corporation, | ) ) | |

)
Defendant. )
Helferich Patent Licensing, L.L.C., )
    an Illinois Limited Liability Company, )
)
Plaintiff, )
)
    vs. )
)
Nissan Motor Co.,Ltd., a Japanese Corporation; )
Nissan North America, Inc., a California )
Corporation; and Midway Holdings, Inc., dba )
Midway Nissan, an Arizona Corporation, )
)
Defendants. )
Helferich Patent Licensing, L.L.C., )
    an Illinois Limited Liability Company, )
)
Plaintiff, )
)
    vs. )
)
NBA Properties, Inc., a New York Corporation; )
and National Basketball Association, )
a New York Joint Venture, )
Defendants. )

~~Helferich Patent Licensing, LLC,~~ )
~~an Illinois limited liability company,~~ )
)
    ~~Plaintiff,~~ )    ~~No.~~
)
    ~~vs.~~ )
)
)    **~~COMPLAINT FOR~~**
~~Nissan Motor Co., Ltd., a Japanese~~ )  **~~PATENT INFRINGEMENT~~**
~~Corporation; Nissan North America, Inc., a~~ )
~~California Corporation; and Midway Holdings,~~ )    ~~(Jury Trial Demanded)~~
~~Inc., dba Midway Nissan, an Arizona~~ )
~~Corporation,~~ )
)
    ~~Defendants.~~ )

——Plaintiff Helferich Patent Licensing, LLC ("HPL"), by and through its undersigned counsel, complains against Defendants Nissan Motor Co. Ltd., Nissan North America, Inc. (jointly, "Nissan Motors"), and Midway Holdings, Inc. (d/b/a Midway Nissan) ("Midway Nissan") as follows:

## NATURE OF THE ACTION

1.    This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

## JURISDICTION AND VENUE

2.    This Court has personal jurisdiction over Defendants because Defendants conduct substantial and continuous business in the State of Arizona and in this District, and purposefully direct their infringing activities to residents of this State and District by causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

3.    Venue is appropriate pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) because, among other reasons, Defendants are subject to personal jurisdiction in this District, and have caused infringing messages to be sent to residents of this State and District.

## PLAINTIFF

4.     HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of thirty (30twenty-five (25) U.S. patents, six (6eleven (11) pending U.S. applications, and over a dozen related foreign patents and patent applications relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio").  The HPL Portfolio includes the patents and applications listed in Exhibit A.

5.      On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent"). HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

6.     On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'716 patent").  HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

7.     On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent").  HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

8.     On January 31, 2012, the Patent Office issued Patent No. 8,107,601 entitled "Wireless Messaging System" (the "'601 patent").  HPL is the exclusive licensee of all right, title, and interest in the '601 patent.

9.    On February 14, 2012, Patent Office issued Patent No. 8,116,741 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'741 patent").  HPL is the exclusive licensee of all right, title, and interest in the '741 patent.

10.    On March 13, 2012, the Patent Office issued Patent No. 8,134,450 entitled "Content Provision to Subscribers via Wireless Transmission" (the "'450 patent").  HPL is the exclusive licensee of all right, title, and interest in the '450 patent.

11.    The '757, '716, '838, '601, '741, and '450. The '757, '716, and '838 patents variously and in general relate to systems and methods used by content providers to create, store, and cause delivery of electronic messages and related content to mobile phones.  The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of the content (of the type intended for placement into an SMS or MMS message).  The content provider also selects and inserts a unique identifier of the content, such as a URL "link," in the message.  The content provider uses an interface with a notification system (such as various social media sites or messaging services) to disseminate its messages to its customers', followers' and fans' mobile phones via SMS or MMS.  Thereafter, the content provider receives a request for the content identified by the link and causesdelivers the requested content to be delivered to the user's mobile phone.  The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs that identify dynamic content such as changing product prices, promotions, events, reviews, or comments; (3) information to inform the recipient

5

of the identifier of the time that the content is available, such as "24 hour sale"
information;"; (4) a request for a delivery confirmation of an MMS message; and/or (5)
MMS messages from which users can request—and content providers receive—
commands regarding the content such as commands to delete, reply to, or forward the
content.

129. On July 14, 2010, HPL filed suit against the New York Times Company
asserting infringement of the '757, '716, and '838 patents asserted herein.
Approximately six months later (in late February 2011), the New York Times Company
filed three *ex parte* reexaminations in the Patent Office, one for each of the '757, '716,
and '838 patents. Shortly thereafter, and after consideration of all of the art and
arguments presented in the *ex parte* reexaminations as well as three later-filed *inter
partes* reexamination requests (discussed below), the Patent Office **confirmed as
patentable** a total of 313203 claims as a result of the *ex parte* reexaminations of the '716,
'757 and '838757 patents.

(a) With respect to the '716 patent, on December 13, 2011, the Patent
Office issued a "Reexamination Certificate" **concluding the reexamination** and
**confirming as patentable** 16 original claims, including claims 2, 16, 19, 20, 22,
23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; 53 claims with minor clarifying
amendments, including claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42,
44-47, 50, 51, 53-57, and 59-69; and 65 new claims, including claims 70-134.

(b) With respect to the '757 patent, on December 9, 2011, the Patent Office
issued a "Notice of Intent to Issue Reexamination Certificate" and **confirmed as**

*patentable* 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14 claims with minor clarifying amendments (as agreed by the Examiner), including claims 2-5, 7-10, and 12-17; and 49 new claims, including claims 21-69.

(c)  With respect to the '838 patent,  on March 27, 2012, the Patent Office ~~has~~ issued a "Reexamination Certificate" and ~~Non Final Office Action to which HPL recently responded.  HPL likewise expects additional claims to be~~ confirmed as patentable 76 original claims, including claims 1-44 and 48-84; 20 claims with minor clarifying amendments, including claims 45-47 and 85-96; and 14 new claims including claims 97-110 ~~in the '838 reexamination~~.

13~~10~~.  On September 6, 2011, *after* the Patent Office confirmed as patentable numerous infringed claims of HPL's patents and applications over the New York Times Company's *ex parte* reexamination requests, the New York Times Company joined with several other companies and filed a second round of reexamination requests—this time filing ~~the New York Times Company along with several other companies filed~~ *inter partes* reexamination requests for each of the '757, '716, and '838 patents.

(a)  On October 28, 2011, the Patent Office issued a non-appealable order denying the request for *inter partes* reexamination of the '838 patent in its entirety, stating  that  "The references set forth in the request have been considered both alone and in combination.  They fail to raise a [substantial new question] of patentability as to 9-20 of the '838 patent claims.  Accordingly, the request for reexamination is denied."(b)  On November 4, 2011, the Patent Office issued non-appealable orders similarly denying the requests for *inter partes* reexaminations of

the '757 and '716 patents. ~~repeatedly that "None of the above cited art [referring to the references newly asserted in the *inter partes* requests] provides any new technological teachings that were not present in the art cited in the previous reexamination."~~

~~(b)  On November 4, 2011, the Patent Office issued non-appealable orders fully denying the requests for *inter partes* reexaminations of the '757 and '716 patents for similar reasons.~~

(c) Prior to the Patent Office issuing a "Reexamination Certificate" <u>or "Notice of Intent to Issue Reexamination Certificate" for</u> ~~for~~ each of the '716<u>,</u> <u>'757</u> and '<u>838</u>~~757~~ patents, HPL filed IDSs in the above referenced *ex parte* reexaminations citing the art and arguments presented in the *inter partes* reexamination requests.  Consequently, in confirming the claims in the *ex parte* reexamination requests, the Patent Office also considered the art and arguments presented in the *inter partes* reexamination requests.

<u>In sum</u>~~Thus, in less than nine months~~, the Patent Office disposed ~~of 5~~ of 6 reexamination requests (including denying outright all three *inter partes* reexaminations) filed by the New York Times Company and its defense group against HPL's patents.

<u>14.    During</u>~~11.    Additionally, during~~ the same period, the Patent Office <u>issued the '601, '741</u> ~~allowed~~ and <u>'450 patents</u>~~re-allowed three related pending patent applications (Application Nos. 11/598,202; 12/167,971; and 12/367,358)~~ after express consideration of the New York Times Company's <u>six</u> *ex parte* and *inter partes* reexamination requests, art, and arguments.  <u>As discussed below, the '741, '601 an '450</u>

8

patents~~These allowed applications~~ include more than fifty~~at least 51~~ additional claims that HPL believes are infringed by content providers, such as the Defendants.

15.    On December 25, 2011 and January 6, 2012, the New York Times Company and its defense group began filing a third round of reexamination requests (in this case *inter partes* requests) against HPL Patent Nos. 7,155,241 (not asserted herein and not previously the subject of a reexamination request) and 7,499,716 (asserted herein and subject to two prior requests as discussed above).  On January 19, 2012, HPL filed an Information Disclosure Statement including copies of these newest reexamination requests (and the art and arguments discussed therein) with the *ex parte* reexamination Examiner of the '838 patent.

a)    Shortly thereafter, the '838 patent reexamination Examiner reviewed the Information Disclosure Statement and issued the Notice of Intent to Issue a Reexamination Certification thereby confirming as patentable the claims of the '838 patent over the New York Times defense group's third round reexamination art and arguments.  HPL believes the New York Times defense group intends to continue filing intentionally staggered requests for reexamination to hamper this litigation indefinitely.

b)    On March 20, 2012, one of HPL's related pending applications, Application No. 12/580,189 received an official Notice of Allowance.  In that Notice of Allowance, the Examiner allowed all of the claims of the '189 application over the NYT Defense Group's first, second and third round

reexamination requests, art and arguments.   Upon issuance, the patent corresponding to the '189 application will be infringed by Defendants.

16<del>12</del>.   To date, <u>over one hundred</u><del>ninety-five (95)</del> of the world's most sophisticated companies have acquired licenses to the HPL Portfolio.   Licensees include: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, <u>DexOne,</u> DIRECTV, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, PGA Tour, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden, Taco Bell, Walgreens, <u>Wal-Mart,</u> Zuffa/UFC and numerous other companies including those whose identities HPL has agreed to keep confidential.

## HPL LICENSEES INCLUDE MOTOR VEHICLE COMPANIES

<u>17.</u>   <del>13.</del> During the past two years, multiple motor vehicle companies have addressed HPL's infringement allegations and accepted licenses with HPL, including at least   Toyota,   <del>Harley-Davidson,</del> Yamaha, and <u>other</u><del>another</del> Major Automobile <u>Manufacturers</u><del>Manufacturer</del> whose <u>names</u><del>name</del> must remain confidential per the terms of <u>their agreements</u><del>its agreement</del> with HPL (hereafter "Licensed Motor Vehicle

Companies"). Nissan Motor Co. Ltd of Japan and Nissan North America, Inc. are not Licensed Motor Vehicle Companies.

18~~14~~. The license agreements between HPL and the Licensed Motor Vehicle Companies are confidential. However, in general, the Licensed Motor Vehicle Companies specifically negotiated to extend their patent licenses from HPL to cover activities of their respective dealers related to the authorized sale of products of the Licensed Motor Vehicle Companies. Thus, for example, an authorized Toyota dealer would be covered under the HPL license with Toyota to engage in otherwise infringing activities relating to the authorized sale of Toyota vehicles.

19~~15~~. Accordingly, no allegations of infringement are made in this complaint to the extent defendant Midway Holdings, Inc. conducts otherwise infringing activities by or on behalf of, and pursuant to an authorized agreement with, a Licensed Motor Vehicle Company.

### NISSAN MOTORS IS NOT A LICENSED MOTOR VEHICLE COMPANY

20~~16~~. More than two (2) years ago, on or about December 2, 2009, HPL gave written notice to both Nissan Motor Co. Ltd of Japan and Nissan North America, Inc. of their infringement of both the '716 and '838 patents, and notice that U.S. Patent Application Nos. 11/598,202, 12/167,971, and 12/367,358 (now the '601, '741, and '450 patents, respectively) would be infringed once issued as patents. The notice letter provided Nissan Motors with a description of the patent claims as well as infringement charts demonstrating infringement of the claims. Thereafter, on or about May 24, 2011,

HPL advised Nissan Motors of its infringement of the '757 patent (which issued after HPL's initial notice letter).

21~~17~~. HPL has also periodically advised Nissan Motors of HPL's progress in licensing, litigation, patent prosecution, and reexaminations filed at the Patent Office, including but not limited to its letters to Nissan Motors dated: January 6, 2010; February 2, 2010; March 24, 2010; April 13, 2010; May 21, 2010; February 7, 2011; May 24, 2011; and November 9, 2011. HPL repeatedly requested in those letters that Nissan Motors initiate good faith discussions of HPL's infringement allegations, and at one point even provided to Nissan Motors a draft complaint for patent infringement. However, Nissan Motors *refused to acknowledge or respond to any of HPL's numerous update letters*. More specifically:

(a) <u>Nissan Motors Refused a License and Continued to Infringe the Patents After New York Times Filed its *Ex Parte* Reexaminations</u>: As discussed above, in late February 2011, the New York Times Company filed its three *ex parte* reexaminations on the '757, '716, '838 patents. HPL's May 24, 2011 letter advised Nissan Motors of the reexaminations and provided Nissan Motors with analysis explaining why HPL believed a large number of claims were likely to be confirmed. The same letter also advised Nissan Motors that the reexaminations did not cover all of the patents that Nissan Motors was accused of infringing. Notwithstanding, Nissan Motors ignored HPL's correspondence and continued to infringe the patents.

(b)    Nissan Motors Refused a License and Continued to Infringe the Patents After the Patent Office Confirmed Claims in the *Ex Parte* Reexaminations:    As previously mentioned, the Patent Office confirmed as patentable numerous infringed claims in ~~two of~~ the three~~pending~~ *ex parte* reexamination proceedings over express consideration of the New York Times Company's invalidity arguments, including many of the claims asserted to be infringed in this Complaint.   Notwithstanding the Patent Office confirming ~~many of~~ the claims asserted in this Complaint, Nissan Motors ignored HPL's correspondence and continued to infringe the patents.

(c)    Nissan Motors Refused a License and Continued to Infringe the Patents After the Patent Office Denied Outright All Three *Inter Partes* Reexaminations:   The Patent Office issued non-appealable orders fully denying all three of the New York Times Company's (and the defense group's) requests for *inter partes* reexamination on October 28, 2011 and November 4, 2011, respectively.   Thereafter, on November 9, 2011, HPL promptly sent a letter to Nissan Motors advising it of HPL's ongoing licensing, litigation, and patent prosecution efforts, and again offering a license to Nissan Motors on HPL's well-established and highly favorable settlement licensing terms. Notwithstanding the outright denial of all three *inter partes* reexamination requests, Nissan Motors continues to ignore HPL's correspondence, infringe HPL's patents and refuse a license.

(d)    Nissan Motors Refused a License and Continued to Infringe the Patents after the Patent Office Issued HPL New Patents: As noted above, the Patent Office has

allowed and issued HPL three new patents~~Allowed Three Applications Over the Art and Arguments presented in the *Inter Partes* Reexamination Requests: As noted above, HPL has three additional pending patent applications (Application Nos. 11/598,202; 12/167,971; and 12/367,358) that were first allowed by the Patent Office~~ after express consideration of the New York Times Company's *ex parte* reexamination requests, and then allowed again after express consideration of the *inter partes* reexamination requests. Notwithstanding ~~As a result, at least 51 additional claims will issue that HPL believes are infringed by the Defendants.  Notwithstanding the recent allowance of the '358, '971, and '202 applications~~, Nissan Motors continues to ignore HPL's correspondence, infringe HPL's patents, and decline a license.

22~~18~~.  In sum, for the past two (2) years, Nissan Motors has refused to respond to or acknowledge HPL's correspondence, while at the same time continuing to infringe HPL's patents.  Nissan Motors also repeatedly refused to accept a license on HPL's well-established and reasonable licensing terms.  As a result, the activities of ***not only*** Nissan Motors, ***but also*** its authorized motor vehicle dealers, including Defendant Midway Holdings, Inc., remain unlicensed.

## DEFENDANTS

23~~19~~.  Defendant Nissan Motor Company, Ltd., is a Japanese corporation with its principal place of business in Yokohama, Japan.  Defendant Nissan North America, Inc., is a California corporation with its principal place of business in Franklin, Tennessee.  Defendant Midway Holdings, Inc. is an Arizona corporation with its principal place of business in Phoenix, Arizona.  Nissan Motors sells vehicles throughout the United States

through hundreds, if not thousands, of authorized dealerships, including several dealerships in Arizona. Midway Nissan is a very large motor vehicle dealership, and on information and belief, is authorized by Nissan Motors to sell in Arizona new and used Nissan cars and related Nissan merchandise.

2420. Nissan Motors and Midway Nissan collectively carry out their infringing activities (described below) with the goal of furthering the Nissan and Infiniti brands, driving customers to local dealerships like Midway Nissan, and selling Nissan and Infiniti cars and merchandise as part of a single transaction that ultimately takes place at the dealer. These sales activities of dealerships, like Midway Nissan, in Arizona result in significant benefit to not only the Nissan dealerships, but also to Nissan Motors. These activities arise out of the same transaction, occurrence, or series of transactions or occurrences: namely, Nissan Motors (including by and through its subsidiaries and authorized dealerships) promotes its products and services by creating, initiating, and causing a series of messages and identified content to be sent to fans, followers, and customers. Such messages are used to increase sales of Nissan and Infiniti branded cars and merchandise to customers who come to the dealerships and make purchases as a result of the Defendants' collective infringing activities. Midway Nissan and Nissan Motors purposefully direct these infringing activities (described below) to residents of this State and District.

2521. Within the last six (6) years, Defendants Nissan Motors and Midway Nissan have created, initiated, and caused numerous infringing messages and identified content to be sent to their customers' mobile phones via SMS messaging, including

through various short-code and social media-based marketing efforts. For example, Defendants collectively operate dozens of social media sites, pages, and feeds (such as those maintained with Twitter, Facebook, and Google+) that are branded by Nissan Motors and Midway Nissan and promoted by the Defendants on their various websites, such as www.nissanusa.com, www.infinitiusa.com, and www.midwaynissan.com/twitter. A few of Defendants' Nissan and Infiniti-branded social media sites, pages, and feeds include: @NissanNews, @NissanLEAF, @Nissan, @nissanquest, @NissanWarranty, @inifinitinews, @InfinitiGlobal, @MidwayNissanPhx, and @midwaynissanNissan (as maintained with Twitter), facebook.com/nissan (as maintained with Facebook), and youtube.com/nissanusa (as maintained with YouTube). Nissan Motors and Midway Nissan draft messages with links and submit them to these sites, pages, and feeds for dissemination to their customers, followers, and fans. Nissan Motors and Midway Nissan intentionally use their various social media sites, pages, and feeds to create, post, and store messages and/or content intended for delivery to Nissan and Infiniti customers, followers, and fans, with the ultimate goal of driving customers to purchase cars and other merchandise at Nissan and Infiniti dealers for the benefit of all three Defendants.

2622. By their own choice, Nissan Motors and Midway Nissan specifically ensure that the aforementioned messages include specific identifiers as described and covered by HPL's claims (such as a URL or shortened link). Additionally, in many cases, the identified content is changed between the time of the identification message and the time the content is requested, and/or is available for a limited time as indicated in the text of Defendants' messages. As a result of the above, Defendants—and not the social media

services used by them—perform each and every element of the asserted claims. Moreover, Nissan Motors and Midway Nissan obtain the benefit from the infringing messages by increasing their sales and services, brand awareness, and good will, with resulting financial gain to all three Defendants.

### COUNT I
### (Infringement of United States Patent No. 7,835,757)

2723. HPL incorporates by reference Paragraphs 1 through 2622 of this Complaint and realleges them as though fully set forth herein.

2824. HPL is informed and believes, and thereon alleges, that Defendants have been and are currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-13, and 15-20 of the '757 patent (and likely others as determined through discovery) without authority or license from HPL. Additionally, upon the Patent Office's issuance of the forthcoming Reexamination Certificate regarding the '757 patent, DefendantsDefendant likewise will be infringing one or more of new claims presently numbered 21-39, 41-62, and 64-69. As mentioned previously, the Patent Office has issued a Notice of Intent to Issue a Reexamination Certificate confirming the patentability of all of these claims after consideration ofhave been confirmed patentable by the Patent Office over the New York Times Company's *ex parte* and *inter partes* reexamination requests.

29~~25~~.  HPL is informed and believes, and thereon alleges, that Defendants infringe the '757 patent in connection with at least the specific product offerings and services described in Paragraphs 24-26~~20-22~~, above.

30~~26~~.  In the alternative, HPL is informed and believes, and thereon alleges, that Defendants have actively induced and are currently inducing the infringement of the '757 patent in violation of 35 U.S.C. § 271(b) or have contributed to and are currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 24-26~~20-22~~ have been, and continue to be, sent to their subscribers' mobile devices.

31~~27~~.  More specifically, Nissan Motors has been on notice of its infringement of the '757 patent since at least May of 2011, and since that time Defendants have offered at least some of the product offerings and services described in Paragraphs 24-26~~20-22~~, above.   HPL is informed and believes, and thereon alleges, that if it is not Defendants that create and cause the infringing messages and content to be delivered as alleged in Paragraphs 24-26~~20-22~~, then Defendants have actively induced or contributed to, and are currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on their behalf, and knew or should have known that their actions would cause actual infringement of the '757 patent.

32~~28~~.  In addition, with Nissan Motors being on notice of infringement of the '757 patent since May of 2011, HPL is informed and believes, and thereon alleges, that Defendants' infringement of the '757 patent has been and continues to be willful.

33~~29~~. As a direct and proximate result of Defendants' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II
### (Infringement of United States Patent No. 7,499,716)

34~~30~~. HPL incorporates by reference Paragraphs 1 through 26~~22~~ of this Complaint and realleges them as though fully set forth herein.

35~~31~~. HPL is informed and believes, and thereon alleges, that Defendants have been and are currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, 41, 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the '716 patent. As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming the patentability of all of these claims after consideration of~~in connection with~~ the New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

36~~32~~. HPL is informed and believes, and thereon alleges, that Defendants infringe the '716 patent in connection with at least the specific product offerings and services described in Paragraphs 24-26~~20–22~~, above.

37~~33~~. In the alternative, HPL is informed and believes, and thereon alleges, that Defendants have actively induced and are currently inducing the infringement of the '716

patent in violation of 35 U.S.C. § 271(b) or have contributed to and are currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous messages of the type described in Paragraphs 24-26~~20-22~~ have been, and continue to be, sent to their subscribers' mobile devices.

38~~34~~.  More specifically, Nissan Motors has been on notice of its infringement of the '716 patent since December  of 2009, and since that time Defendants have offered at least some of the product offerings and services described in Paragraphs 24-26~~20-22~~, above.  HPL is informed and believes, and thereon alleges, that if it is not Defendants that create and cause the infringing messages and content to be sent as alleged in Paragraphs 24-26~~20-22~~, then Defendants have actively induced or contributed to, and are currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on their behalf, and knew or should have known that their actions would cause actual infringement of the '716 patent.

39~~35~~.  In addition, with Nissan Motors being on notice of infringement of the '716 patent since at least December of 2009, HPL is informed and believes, and thereon alleges, that Defendants' infringement of the '716 patent has been and continues to be willful.

40~~36~~.  As a direct and proximate result of Defendants' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT III
### (Infringement of United States Patent No. 7,280,838)

41~~37~~. HPL incorporates by reference Paragraphs 1 through 26~~22~~ of this Complaint and realleges them as though fully set forth herein.

42~~38~~.  HPL is informed and believes, and thereon alleges, that Defendants have been and are currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of at least claims 9, 10, 12, 13, 15, 16, 18, 19, 20, and 97-101 and 105-110 of the '838 patent (and likely others) within the United States without authority or license from HPL.   As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming the patentability of all of these claims after consideration of the New York Times Company's (and its Defense Group's) first, second and third round *ex parte* and *inter partes* reexamination requests. ~~and 20 of the '838 patent.   HPL expects that additional claims will be asserted upon completion of the pending *ex parte* reexamination.~~

43~~39~~.  HPL is informed and believes, and thereon alleges, that Defendants infringe the '838 patent in connection with at least the product offerings and services described in Paragraphs 24-26~~20-22~~, above.

44~~40~~.  In the alternative, HPL is informed and believes, and thereon alleges, that Defendants have actively induced and are currently inducing the infringement of the '838 patent in violation of 35 U.S.C. § 271(b) or have contributed to and are currently contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c)

because numerous messages of the type described in Paragraphs 24-26~~20-22~~ have been, and continue to be, sent to their subscribers' mobile devices.

45~~41~~.   More specifically, Nissan Motors has been on notice of its infringement of the '838 patent since at least December of 2009, and since that time Defendants have offered at least some of the product offerings and services described in Paragraphs 24-26~~20-22~~, above.   HPL is informed and believes, and thereon alleges, that if it is not Defendants that create and cause the infringing messages to be sent as alleged in Paragraphs 24-26~~20-22~~, then Defendants have actively induced or contributed to, and are currently actively inducing or contributing to the actions of third parties to create and cause such messages and content to be sent on their behalf, and knew or should have known that their actions would cause actual infringement of the '838 patent.

46~~42~~.   In addition, with Nissan Motors being on notice of infringement of the '838 patent since at least December of 2009, HPL is informed and believes, and thereon alleges that Defendants' infringement of the '838 patent has been and continues to be willful.

47.     As a direct and proximate result of Defendants' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT IV
## (Infringement of United States Patent No. 8,107,601)

48.     HPL incorporates by reference Paragraphs 1 through 26 of this Complaint and realleges them as though fully set forth herein.

49.     HPL is informed and believes, and thereon alleges, that Defendants have been and are currently infringing the '601 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3, 4, 9-11, 16, and 17 of the '601 patent.  As mentioned previously, the Patent Office issued the '601 patent after consideration of the New Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

50.     HPL is informed and believes, and thereon alleges, that Defendants infringe the '601 patent because it causes SMS notifications of the type described in Paragraph 11 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '601 patent in connection with at least the product offerings and services described in Paragraphs 24-26, above.

51.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendants have actively induced and are currently inducing the infringement of the '601 patent in violation of 35 U.S.C. § 271(b) or have contributed to and are currently contributing to the infringement of the '601 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 24-26 have been, and continue to be, sent to its subscribers' mobile devices.

52.     More specifically, Defendants have been on notice of their infringement of the '601 patent since at least January 31, 2012, the issue date of the '601 patent, and since that time numerous infringing SMS messages as described in Paragraphs 24-26 have been, and continue to be, sent to Defendants' subscribers along with links to Defendants' content.  HPL is informed and believes, and thereon alleges, that if it is not Defendants causing the infringing messages to be sent as alleged in Paragraphs 24-26, then Defendants have actively induced or contributed to, and are currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on their behalf, and knew or should have known that their actions would cause actual infringement of the '601 patent.

53.     In addition, with Defendants being on notice of infringement of the '601 patent since at least January 31, 2012, HPL is informed and believes, and thereon alleges, that Defendants' infringement of the '601 patent has been and continues to be willful.

5443.  As a direct and proximate result of Defendants' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**COUNT V**
**(Infringement of United States Patent No. 8,116,741)**

55.     HPL incorporates by reference Paragraphs 1 through 26 of this Complaint and realleges them as though fully set forth herein.

56.   HPL is informed and believes, and thereon alleges, that Defendants have been and are currently infringing the '741 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-9, 11-18, 20, 21, 23, 24, 26, and 27 of the '741 patent.  As mentioned previously, the Patent Office issued the '741 patent after consideration of the New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

57.   HPL is informed and believes, and thereon alleges, that Defendants infringe the '741 patent because they cause SMS notifications of the type described in Paragraph 11 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendants infringe the '741 patent in connection with at least the product offerings and services described in Paragraphs 24-26, above.

58.   In the alternative, HPL is informed and believes, and thereon alleges, that Defendants have actively induced and are currently inducing the infringement of the '741 patent in violation of 35 U.S.C. § 271(b) or have contributed to and are currently contributing to the infringement of the '741 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 24-26 have been, and continue to be, sent to their subscribers' mobile devices.

59.   More specifically, Defendants have been on notice of their infringement of the '741 patent since at least February 14, 2012, the issue date of the '741 patent, and since that time numerous infringing SMS messages as described in Paragraphs 24-26 have been, and continue to be, sent to Defendants' subscribers along with links to

Defendants' content.  HPL is informed and believes, and thereon alleges, that if it is not Defendants causing the infringing messages to be sent as alleged in Paragraphs 24-26, then Defendants have actively induced or contributed to, and are currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on their behalf, and knew or should have known that their actions would cause actual infringement of the '741 patent.

60.    In addition, with Defendants being on notice of infringement of the '741 patent since at least February 14, 2012, HPL is informed and believes, and thereon alleges, that Defendants' infringement of the '741 patent has been and continues to be willful.

61.    As a direct and proximate result of Defendants' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT VI
### (Infringement of United States Patent No. 8,134,450)

62.    HPL incorporates by reference Paragraphs 1 through 26 of this Complaint and realleges them as though fully set forth herein.

63.    HPL is informed and believes, and thereon alleges, that Defendants have been and are currently infringing the '450 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3-8, 10, 13-15, 17-23, and 27-28 of the '450 patent. As mentioned previously, the Patent

Office issued the '450 patent after consideration of the New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

64.    HPL is informed and believes, and thereon alleges, that Defendants infringe the '450 patent because they causes SMS notifications of the type described in Paragraph 11 to be sent to their subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendants infringe the '450 patent in connection with at least the product offerings and services described in Paragraphs 24-26, above.

65.    In the alternative, HPL is informed and believes, and thereon alleges, that Defendants have actively induced and are currently inducing the infringement of the '450 patent in violation of 35 U.S.C. § 271(b) or have contributed to and are currently contributing to the infringement of the '450 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraphs 24-26 have been, and continue to be, sent to their subscribers' mobile devices.

66.    More specifically, Defendants have been on notice of their infringement of the '450 patent since at least March 13, 2012, the issue date of the '450 patent, and since that time numerous infringing SMS messages as described in Paragraphs 24-26 have been, and continue to be, sent to Defendants' subscribers along with links to Defendants' content.  HPL is informed and believes, and thereon alleges, that if it is not Defendants causing the infringing messages to be sent as alleged in Paragraphs 24-26, then Defendants have actively induced or contributed to, and are currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent

27

on their behalf, and knew or should have known that their actions would cause actual infringement of the '450 patent.

67.    In addition, with Defendants being on notice of infringement of the '450 patent since at least March 13, 2012, HPL is informed and believes, and thereon alleges, that Defendants' infringement of the '450 patent has been and continues to be willful.

68.    As a direct and proximate result of Defendants' conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)    Judgment that Defendants have infringed, actively induced others to infringe, or contributed to the infringement by others of one or more of the claims of the '757 patent, '716 patent,  '838 patent, '601 patent, '741 patent, and '450and '838 patent;

(b)    A permanent injunction to be issued enjoining and restraining Defendants and their respective officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more of the claims of the '757 patent, '716 patent, and the '838 patent, '601 patent, '741 patent, and '450 patent, and from inducing or contributing to infringement of any such claims by others;

(c)    An award of damages against Defendants adequate to compensate HPL for past infringement of one or more of the claims of the '757 patent, '716 patent, '838 patent, '601 patent, '741 patent, and '450and '838 patent, together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)    Judgment that this case is "exceptional" under 35 U.S.C. § 285, and that HPL is entitled to an award of its reasonable attorneys' fees in the prosecution of this action; and

(e)    Such other and further relief as the Court may deem just and proper.

//
//
//
//
//

**DEMAND FOR JURY TRIAL**

Plaintiff hereby makes a demand for a trial by jury pursuant to Rule 38 of the

Federal Rules of Civil Procedure as to all issues in this lawsuit.

Dated:  April____,January 10, 2012

VICTORIA GRUVER CURTIN, P.L.C.

By:*/s/ Victoria Curtin*
                Victoria Gruver Curtin
                14555 North Scottsdale Rd., Ste. 160
                Scottsdale, Arizona 85254
                Tel.:  (480) 948-3295
                Fax:  (480) 948-3387
                Attorney for Plaintiff

30

**Exhibit A**

1.  U.S. Patent No. 8,134,450, titled "Content Provision to Subscribers via Wireless Transmission," issued March 13, 2012.

2.  U.S. Patent No. 8,116,743, titled "Systems and Methods for Downloading Information to a Mobile Device," issued February 14, 2012.

3.  U.S. Patent No. 8,116,741, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued February 14, 2012.

4.  U.S. Patent No. 8,107,601, titled "Wireless Messaging System," issued January 31, 2012.

5.  U.S. Patent No. 8,099,046, titled "Method for Integrating Audio and Visual Messaging," issued January 17, 2012.

~~1.~~6.   U.S. Patent No. 7,957,695, entitled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

~~2.~~7.   U.S. Patent No. 7,843,314, entitled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010;

~~3.~~8.   U.S. Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued November 16, 2010;

~~4.~~9.   U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

~~5.~~10.   U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

~~6.~~11.   U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

~~7.~~12.   U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

~~8.~~13.   U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

~~9.~~14.   U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

~~10.~~15.  U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

~~11.~~16.  U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

~~12.~~17. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

13.18. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

14.19. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

15.20. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

16.21. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

17.22. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

18.23. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

19.24. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

20.25. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

21.26. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

22.27. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

23.28. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

24.29. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

25.30. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

26.31. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

27.32. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

28.33. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

29.34. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

30.35. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

31.36. U.S. Patent Application No. 12/267,436367,358, titled "Wireless Messaging System Content provision to subscribers via wireless transmission."

32. U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."

33. U.S. Patent Application No. 12/167,971, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

34. U.S. Patent Application No. 11/598,832, titled "Systems and Methods for Downloading Information to a Mobile Device."

35. U.S. Patent Application No. 11/598,202, titled "Wireless Messaging System."

36. U.S. Patent Application No. 10/958,731, titled "System and Method for Integrating Audio and Visual Messaging."