# Exhibit D

Steven G. Lisa (Illinois Bar No. 6187348)
Jon E. Kappes (Ariz. State Bar # 024714)
LAW OFFICES OF STEVEN G. LISA, LTD.
stevelisa@patentit.com
jonkappes@patentit.com
55 West Monroe Street, Suite 3200~~3210~~
Chicago, IL 60603
~~stevelisa@patentit.com~~
~~jonkappes@patentit.com~~
Tel & Fax: (312) 752-4357

Victoria Curtin (Ariz. State Bar #010897)
VICTORIA GRUVER CURTIN, P.L.C.
14555 N. Scottsdale Rd., Ste. 160
Scottsdale, Arizona  85254
Victoria@vcurtin.com
Tel.:  (480) 998-3547
Fax:  (480) 596-7956
Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## ~~FOR THE~~ DISTRICT OF ARIZONA

| | |
|---|---|
| Helferich Patent Licensing, L.L.C., an Illinois Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) | Consolidated Case No. 2:11-cv-02304 DGC |
| vs. | ) ) ) | |
| Suns Legacy Partners, LLC, dba Phoenix Suns, a Delaware Limited Liability Company, | ) ) ) ) | **AMENDED COMPLAINT AGAINST PHOENIX NEWSPAPERS** *dba* **ARIZONA REPUBLIC** |
| Defendant. | ) | |
| Helferich Patent Licensing, L.L.C., an Illinois Limited Liability Company, | ) ) ) | |
| Plaintiff, | ) | (Jury Trial Demanded) |
| vs. | ) ) | |
| Phoenix Newspapers, Inc., dba The Arizona Republic, an Arizona Corporation, | ) ) | |

|  |  |
|---|---|
| Defendant. | ) |
| Helferich Patent Licensing, L.L.C., | ) |
| an Illinois Limited Liability Company, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| Nissan Motor Co.,Ltd., a Japanese Corporation; | ) |
| Nissan North America, Inc., a California | ) |
| Corporation; and Midway Holdings, Inc., dba | ) |
| Midway Nissan, an Arizona Corporation, | ) |
|  | ) |
| Defendant. | ) |
| Helferich Patent Licensing, L.L.C., | ) |
| an Illinois Limited Liability Company, | ) |
|  | ) |
| Plaintiff, | ) |
|  | ) |
| vs. | ) |
|  | ) |
| NBA Properties, Inc., a New York Corporation; | ) |
| and National Basketball Association, | ) |
| a New York Joint Venture, | ) |
| Defendant. | ) |

HELFERICH PATENT LICENSING, LLC,        )
an Illinois limited liability company,        )
                                            )
                    Plaintiff,        )        No.
                                            )
        vs.        )
                                            )
                                            )        COMPLAINT FOR
PHOENIX NEWSPAPERS, INC., dba THE        )        PATENT INFRINGEMENT
ARIZONA REPUBLIC, an Arizona Corporation,        )
                                            )        (Jury Trial Demanded)
                    Defendant.        )

2

——Plaintiff Helferich Patent Licensing, LLC ("HPL"), by and through its undersigned counsel, complains against Defendant Phoenix Newspapers, Inc. (d/b/a The Arizona Republic) ("Arizona Republic") as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is an action for patent infringement arising under the United States Patent Act, 35 U.S.C. §§ 101-376, including 35 U.S.C. § 271.  This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a) in that this is a civil action arising out of the patent laws of the United States of America.

<u>**JURISDICTION AND VENUE**</u>

2.      This Court has personal jurisdiction over Defendant because Defendant conducts substantial and continuous business in the State of Arizona and in this District, and purposefully directs its infringing activities to residents of this State and District by causing infringing messages to be sent to residents of this State and District, as described more fully in the paragraphs hereafter.

3.      Venue is appropriate pursuant to 28 U.S.C. §§ 1391(c) and 1400(b) because, among other reasons, Defendant is subject to personal jurisdiction in this

District, and has caused infringing messages to be sent to residents of this State and District.

### **PLAINTIFF**

4.      HPL is an Illinois limited liability company with a principal place of business at 70 W. Madison St., Three First National Plaza, Suite 1400, Chicago, IL 60602.  HPL is the exclusive licensee of thirty (30~~twenty-five (25~~) U.S. patents, six (6~~eleven (11~~) pending U.S. applications, and over a dozen related foreign patents and patent applications relating to mobile wireless communication devices and the provision of media and content to such devices (collectively the "HPL Portfolio").  The HPL Portfolio includes the patents and applications listed in Exhibit A.

## BACKGROUND

### The Patents in Suit

5.       On November 16, 2010, the United States Patent and Trademark Office ("Patent Office") issued Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'757 patent"). HPL is the exclusive licensee of all right, title, and interest in the '757 patent.

~~66.   The '757 patent describes methods and systems relating to wireless messaging to mobile devices.  More particularly, the patent includes claims that relate to, among other things, the transmission of notification messages to mobile devices that include identifiers (such as a URL) that identify content available for download, including for example, identifiers that are received from an identification service such as a link shortening service.  Other claims relate to notifications that identify content that is updated or changed prior to the content being sent to the mobile user in response to a request for such content and notifications that indicate the time the identified content is available.   Examples of such notifications include SMS messages that include an identifier of content (such as a URL) in the message, and where the identified content is updated and/or changed by the content provider between the time the notification is sent and the time the content is requested, and SMS messages that include an identifier of content (such as a URL) as well as an indication of the time the content is to be available (such as a text indicating "24 hour sale).~~

7.       On March 3, 2009, the Patent Office issued Patent No. 7,499,716 entitled "System and Method for Delivering Information to a Transmitting and Receiving

5

Device" (the "'716 patent").  HPL is the exclusive licensee of all right, title, and interest in the '716 patent.

78.    The '716 patent describes methods and systems that relate to wireless messaging to mobile devices.  More particularly, the patent includes claims that relate to, among other things, the transmission of notification messages to mobile devices that include identifiers (such as a URL) that identify content available for download.  Other claims relate to notifications that indicate the time the identified content is to be available.  An example of such a notification is an SMS notification that includes an identifier of content (such as a URL) as well as an indication of the time the content is to be available (such as text indicating a "24 hour sale").

9.    On October 9, 2007, the Patent Office issued Patent No. 7,280,838 entitled "Paging Transceivers and Methods for Selectively Retrieving Messages" (the "'838 patent").  HPL is the exclusive licensee of all right, title, and interest in the '838 patent.

8.    On January 31, 2012, the Patent Office issued Patent No. 8,107,601 entitled "Wireless Messaging System" (the "'601 patent").  HPL is the exclusive licensee of all right, title, and interest in the '601 patent.

9.    On February 14, 2012, Patent Office issued Patent No. 8,116,741 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device" (the "'741 patent").  HPL is the exclusive licensee of all right, title, and interest in the '741 patent.

10.     On March 13, 2012, the Patent Office issued Patent No. 8,134,450 entitled "Content Provision to Subscribers via Wireless Transmission" (the "'450 patent").  HPL is the exclusive licensee of all right, title, and interest in the '450 patent.

11.     The '757, '716, '838, '601, '741 and '450 patents variously and in general relate to systems and ~~patent describes~~ methods used by ~~and systems relating to wireless messaging to mobile devices.  More particularly, the '838 patent includes claims that relate to, among other things, the transmission from~~ content providers to create, store, and cause delivery of electronic messages and related content to mobile phones.  The content provider stores its content (such as news, coupons, specials, media, etc.) on an internet accessible website and creates a short description of the content (of the type intended for placement into an SMS or MMS message).  The content provider also selects and inserts a unique identifier of the content, such as a URL "link" in the message.  The content provider uses an interface with~~utilizing~~ a notification system (such as various social media sites or messaging services) to disseminate its messages to its customers', followers' and fans' ~~of messages to~~ mobile phones via SMS or MMS.  Thereafter, the content provider receives a request for the content identified by the link and causes the requested content to be delivered to the user's mobile phone.  The patents also variously relate to providing or using: (1) shortened URLs received from a link shortening service; (2) URLs~~devices that include identifiers (such a URL)~~ that identify dynamic content such as changing product prices, promotions, events, reviews, or comments; (3) information to inform the recipient of the identifier of the time that the content is ~~content~~ available such as "24 hour sale" information; (4) a request for a delivery confirmation of

an MMS message; (5) error status information when retrieving content, and/or (6) MMS messages from which users can request—and content providers receive—commands regarding the content such as commands to delete, reply to, or forward the content.~~for download.  Examples of such notifications include SMS messages that include an identifier of content (such as a URL) in the message.~~

Reexamination Requests

12~~11~~.  On July 14, 2010, HPL filed suit against New York Times Company ("NYT") asserting infringement of the '757, '716, and '838~~three (3)~~ patents asserted herein.  Approximately six (6) months later (in late February 2011), NYT filed three (3) *ex parte* reexaminations in the Patent Office, one for each of the three (3) asserted patents.   Shortly thereafter, and after consideration of all~~As~~ of the art and arguments presented in the *ex parte* reexaminations as well as three later-filed inter partes reexamination requests (discussed below),~~filing of this Complaint,~~ the Patent Office ~~has~~ confirmed as patentable a total of 313~~140~~ claims as a result of the ex parte reexaminations of the '757,~~and~~ '716, and '838 patents.  With respect to the '757 patent, on December 9, 2011, the Patent Office issued a "Notice of Intent to Issue Reexamination Certificate" and confirmed as patentable 6 original claims, including claims 1, 6, 11, 18, 19, and 20; 14 claims with minor clarifying amendments (as agreed by the Examiner), including~~revised~~ claims 2-5, 7-10, and 12-17; and new claims 21-69. With respect to the '716 patent, on December 13~~October 25~~, 2011, the Patent Office issued a "~~Notice of Intent to Issue~~ Reexamination Certificate" concluding the reexamination and confirming~~*confirmed*~~ as patentable 16 original claims, including claims 2, 16, 19, 20, 22,

23, 31, 34, 35, 38, 39, 43, 48, 49, 52, and 58; 53 claims with minor clarifying amendments, including revised claims 1, 3-15, 17, 18, 21, 24-30, 32, 33, 36, 37, 40-42, 44-47, 50, 51, 53-57, and 59-69; and new claims 70-134.  With respect to the '838 patent, on March 27, 2012, the Patent Office issued a "Reexamination Certificate" and confirmed as patentable 76 original claims, including claims 1-44 and 48-84; 20 claims with minor clarifying amendments, including claims 45-47 and 85-96; and 14 new claims including claims 97-110 the Patent Office has issued a Non-Final Office Action to which HPL recently responded.  HPL likewise expects additional claims to be confirmed in the '838 reexamination.

13 12.  During the reexamination of the '757 and '716 patents Patents, the PTO examiner found that many of HPL's claims read onto the use of certain "identifiers" that "indirectly" identify the content's location in messages pushed to subscribers.   HPL did not dispute that conclusion and noted that URLs, specifically including shortened URLs, are themselves system identifiers that clearly meet the claim requirements.  For example, HPL stated the following to the PTO at footnote 16, page 37 of the Response to Final Office action filed on October 5, 2011 in connection with the reexamination of the '716 patent: "By way of specific example, receipt in a notification message of a URL (e.g., "www.apple.com/videos," "bit.ly/o4oX2E," "es.pn/oMz7R8," and the like) provides the recipient information 'that establishes to the recipient the particular place or site to which to respond to obtain the information.'"  Thus, HPL expressly included the use of URL's (such as short links) as "covered by its claims."

14~~13~~.  On September 6, 2011, after the Patent Office confirmed as patentable numerous infringed claims of HPL's patents and applications over New York Times Company's invalidity arguments, New York Times Company joined with several other companies and filed a second round of three reexamination requests (this time *inter partes* requests) again relating to the '757, '716, and '838 patents.  On October 28, 2011, the Patent Office issued a non-appealable order denying the request for *inter partes* reexamination of the '838 patent in its entirety, stating: "The ~~repeatedly that "None of the above cited art [referring to the~~ references set forth~~newly asserted~~ in the request have been considered both alone and in combination.  They fail to raise a [substantial~~*inter partes* requests] provides any~~ new question] of patentability as to 9-20 of the '838 patent claims.  Accordingly, the request for~~technological teachings that were not present in the art cited in the previous~~ reexamination is denied."  Shortly thereafter, on November 4, 2011, the Patent Office issued non-appealable orders similarly~~fully~~ denying the requests for *inter partes* reexaminations of the '757 and '716 patents. In sum~~for similar reasons.  Thus, in less than nine months time~~, the Patent Office has disposed of ~~5 of the~~ 6 reexamination requests (including denying outright all three *inter partes* reexaminations filed by the New York Times and its industry defense group against HPL's patents.

~~ 14.  As of the filing of this complaint, HPL's '757 Patent has the following claims confirmed valid over all the art and arguments presented in the reexamination requests: 6 original claims that were not amended (or were simply rewritten in independent form), 49 newly presented claims, and 14 original claims that included minor clarifying amendments expressly agreed by the Examiner to be merely clarifying.~~

HPL's '716 Patent has the following claims confirmed valid over all the art and arguments presented in the reexamination requests: 16 original claims that were not amended (or were simply rewritten in independent form), 65 newly presented claims, and 53 original claims that included minor clarifying amendments.  For the

15.     DuringAdditionally, during the same period, the Patent Office issued the '741, '601 and '450 patentsallowed or re-allowed three related pending patent applications after express consideration of the same three New York Times Company's *ex parte* reexamination requests and the same three (Application Nos. 11/598,202; 12/167,971; and 12/367,358).  HPL took the additional steps necessary for the PTO to also substantively consider the *inter partes* reexamination requests over which the '757, '716, and '838 patents were confirmed.  As discussed below, the '741, '601 and '450 patents include more than fiftywithin these applications.  HPL has recently received notice from the PTO that two of these applications (the '358 and '202 applications) are again allowed over all of the *inter partes* art and arguments, including at least 17 additional claims that HPL believes are infringed by content providers, such asthe Defendant.

16.     On December 25, 2011 and January 6, 2012, the New York Times Company and its defense group began filing a third round of reexamination requests (in this case *inter partes* requests) against HPL Patent Nos. 7,155,241 (asserted herein and not previously the subject of a reexamination request) and 7,499,716 (asserted herein and subject to two prior requests as discussed above).  The New York Times Company and its

defense group requested that the reexamination request of the '716 patent be assigned to new examiners that would not have detailed knowledge of the prior two rounds of reexamination requests.

17.     In January 2012, HPL filed Information Disclosure Statements in the still-pending *ex parte* reexamination proceeding of the '838 patent and in related pending applications.  That IDS included copies of the NYT Defense Group's newest *inter partes* reexamination requests of the '241 and '716 patents (and the art and arguments discussed therein).

(a) Shortly thereafter, the '838 patent reexamination Examiner reviewed that IDS and issued~~HPL likewise expects additional claims to be re-allowed in~~ the Notice of Intent to Issue a Reexamination Certification ("NIRC").  In that NIRC, the reexamination Examiner confirmed as patentable the claims of the '838 patent over the NYT Defense Group's third round reexamination art and arguments. In March 2012, the Reexamination Certificate for the '838 patent issued.

(b) On March 20, 2012, one of HPL's related pending applications, Application No. 12/580,189 received an official Notice of Allowance.  In that Notice of Allowance, the Examiner allowed all of the claims of the '189~~'971~~ application over the NYT Defense Group's third round reexamination art and arguments.  Once issued, the patent corresponding to the '189 application will be infringed by Defendant.

HPL believes the NYT Defense Group intends to continue filing intentionally staggered requests for reexamination to hamper this litigation indefinitely.

Licensing Program

18~~16~~.  To date, more than one hundred~~ninety (90)~~ of the world's most sophisticated companies have acquired licenses to the HPL Portfolio.  Licensees include: ABInBev (Anheuser Busch), Adidas/Reebok, ADT Securities, Advanced Publications (Condé Nast), Ally Bank, Amazon, American Eagle Outfitters, American Greetings, Apple, Carnival Cruise Lines, Coinstar, Dairy Queen, Dell, DexOne, Disney, eBay, Epitaph Records, Genesco, Glu Mobile, GSI Commerce (owned by eBay), Hair Cuttery, ~~Harley-Davidson,~~ Hewlett-Packard (and Palm), H&R Block, KGB, Macy's, McDonald's, MGM Resorts International, Microsoft, Motorola Mobility, the National Football League, the National Hockey League, Newegg.com, PGA Tour, Qdoba Restaurants, Redbox, Research in Motion, Sears Holding Corporation, Shoptext, Starbucks, Steve Madden, Taco Bell, Toyota, Walgreens, Wal-Mart, Yamaha, Zuffa/UFC and numerous other companies including those whose identities HPL has agreed to keep confidential.

### THE DEFENDANT

### 19~~The Defendant~~

~~17~~.  Defendant Phoenix Newspapers, Inc. (d/b/a The Arizona Republic)~~-~~ is an Arizona corporation with its principal place of business in Phoenix, Arizona.  Arizona Republic is the largest newspaper in Arizona, reaching approximately 1.5 million readers every week, and it ranks nationally among the top 20 newspapers in daily circulation. Arizona Republic sells most of its newspapers in Arizona, and has been one of Arizona's leading providers of news and information for over 110 years.  Moreover, Arizona Republic purposefully directs its infringing activities (described below) to residents of

this State and District by causing infringing messages and information to be sent to residents of the State of Arizona and this District.

20 18.  Within the last six (6) years, Arizona Republic has created, initiated and caused numerous infringing messages to be sent in connection with at least the following product and service offerings:

a)      Arizona Republic causes infringing messages to be sent to its subscribers' mobile devices via SMS messaging alerting its subscribers of programming and other offerings which include identifiers of content, including the exact type identifiers described by HPL to the Patent Office as covered by its claims (such as a URL or short link).  Moreover, such notifications often link to dynamic content (e.g., content that is changed between the time of the original notification and the time such content is requested), as well as indicate the time the identified content is to be available.  For example, Arizona Republic caused to be sent the messages and content shown in Figures 1, 2, 3, and 4 below to its mobile alert subscribers through the text alert short code 44636.



**Figures 1 and 2.**

Figure 1 is an example of an SMS message from Arizona Republic's text message program.  The SMS message is created and caused to be delivered by Arizona Republic containing a specific URL identifying Arizona Republic content shown in Figure 2, which Arizona Republic delivered to a mobile phone upon a request (using the provided URL) to do so.



**44636**: AZCENTRAL Arpaio, SB 1070 co-sponsor, AG Goddard others react to court ruling. http://4in.fo/MttpFQ *Amazing Psychic Reading! Reply STARS

**44636**: AZCENTRAL Arpaio, SB 1070 co-sponsor, AG Goddard others react to court ruling. http://4in.fo/MttpFQ *Amazing Psychic Reading! Reply STARS



**Figures 3 and 4.**

Figure 3 provides an example of an SMS message from Arizona Republic's text message program. The SMS message is created and caused to be delivered by The Republic containing a specific URL identifying The Republic content shown in Figure 4, which The Republic delivered to a mobile phone upon a request (using the provided URL) to do so. The provided content relates to a news article discussing a recent court decision.





**Figure 5.** The sign-up page for Arizona Republic Mobile, indicating that subscribers can sign up to recieve SMS messages.

(b)      Arizona Republic also causes infringing messages to be sent through its various social media websites.  Specifically, Arizona Republic has at least 19 Twitter feeds, including those for its various reporters and newspaper sections (e.g., @azcentral, @azcsports, @dothingsaz, @azcmoney, @azcdeals, @phxbeat, @azcInsider, @goodyk, @dustingardiner, @smunshi, @amybwang, @DSWoodfill, @LisaHalverstadt, @RebekahLSanders, @CarrieWatters, @JackeeCoe, @RepublicSW, @EddiTrevizo, and @azcwestvalley).  Arizona Republic also has five Facebook pages (azcentral, azcentralsports, arizonarepublic, Bill Goodykoontz on Movies, and Republic Media).  In conjunction with these Twitter feeds and Facebook pages, Arizona Republic causes thousands of infringing messages to be sent via SMS to its "followers" daily, as shown

below in Figures 6 and 7.  These Arizona Republic messages likewise include the same types of identifiers listed by HPL to the Patent Office in the reexamination proceedings (e.g., URLs and short links).  Still further, many of the messages indicate the time the content is available, and others contain identifiers to dynamic content where the content is changed between the time of the notification and the time the content is requested by Arizona Republic subscribers.  For example, on July 28, 2010, Arizona Republic caused~~sent~~ a message to be sent to its mobile alert subscribers via SMS pertaining to an immigration law ruling.  Figure 6, below, shows the message, and Figure 7 shows the dynamic content.



**Figures 6 and 7.**  Content pushed to mobile phones through the @azcentral Twitter feed.  The content is dynamic because it includes updated temperature information.



21~~19~~.  More than one year ago, on or about November 5, 2010, HPL gave written notice to Arizona Republic of its infringement of the '716 and '838 patents, and notice that U.S. Patent Application Nos. 11/598,202, 12/167,971, and 12/367,358 (now the '601, '741, and '450 patents, respectively) would be infringed once issued as patents.  The notice letter provided Arizona Republic with a detailed description of the claims, and in addition, provided detailed information including infringement charts demonstrating infringement of the claims.  Thereafter, on or about May 3, 2011, HPL advised Arizona Republic of its infringement of the '757 patent (which issued after HPL's initial letter to Arizona Republic).

22~~20~~.    For the past year, Arizona Republic has continued to infringe HPL's patents while ~~repeatedly~~ refusing to accept a license on HPL's well-established and

reasonable licensing terms.  Arizona Republic refused a license even in the face of the Patent Office both confirming existing claims and allowing new claims over express consideration of the prior art and arguments proffered by New York Times Company and others now cooperating with New York Times Company.  More specifically:

(a)     Arizona Republic Refused a License After New York Times Filed its *Ex Parte* Reexaminations:  As discussed above, in late February 2011, New York Times filed its three (3) *ex parte* reexaminations on the '757, '716, '838828 patents.  HPL's May 3, 2011 letter advised Arizona Republic of the reexaminations and provided Arizona Republic with analysis explaining why HPL believed a large number of claims were likely to be confirmed.  The same letter also advised Arizona Republic that the reexaminations did not cover all of the patents that Arizona Republic was accused of infringing.  Notwithstanding, Arizona Republic refused a license at HPL's well-established and reasonable terms.

(b)     Arizona Republic Continued to Refuse a License After the Patent Office Confirmed Claims in the *Ex Parte* Reexaminations:  As previously mentioned,  the Patent Office confirmed as patentable numerous infringed claims in two (2) of the threepending *ex parte* reexamination proceedings over express consideration of NYT's invalidity arguments, including many of the claims asserted to be infringed in this Complaint.  Notwithstanding the Patent Office confirming many of the claims asserted in this Complaint, Arizona Republic continued to refuse a license at HPL's well-established and reasonable terms.

|U1|(c)         Arizona Republic Continued to Refuse a License After the Patent Office Denied Outright All Three *Inter Partes* Reexaminations:  The Patent Office issued non-appealable orders fully denying all three of the NYT defense group's requests for *inter partes* reexamination on October 28, 2011 and November 4, 2011, respectively.  Thereafter, on November 9, 2011, HPL promptly sent a letter to Arizona Republic advising it of HPL's ongoing licensing, litigation, and patent prosecution efforts, and again offering a license to Arizona Republic on HPL's well-established terms.  Notwithstanding the outright denial of all three *inter partes* reexamination requests, Arizona Republic continues to refuse a license.

(d)         Arizona Republic Continued to Refuse a License After the Patent Office Issued HPL New Patents: Allowed Two of the Three Previously Allowed Applications Over the Art and Arguments presented in the *Inter Partes* Reexamination Requests: As discussed above, noted above, HPL has three additional pending patent applications that were previously allowed by the Patent Office has allowed and issued HPL three new patents an additional application over after express consideration of theNYT's *ex parte* and first reexamination requests (Application Nos. 11/598,202; 12/167,971; and 12/367,358).  After HPL took the additional steps necessary for the PTO to also substantively consider the *inter partes* reexamination requests (including within these applications.  HPL received notice from the PTO that two of these applications (the '358 and '202

applications) are again allowed over all of the *inter partes* art and arguments proffered by New York Times and its defense group members in those requests)., including at least 17 additional claims that HPL believes are infringed by the defendants. Notwithstanding the recent allowance of the '358 and '202 applications, Arizona Republic continues to refuse a license and to infringe HPL's patents.

Additional Conduct by Defendant Establishing Willful Infringement

23.   Defendant has willfully, intentionally, inequitably, and in bad faith infringed HPL's patents, without reasonable basis to believe it had the right to do so, and engaged in other conduct injurious to HPL as evidenced by the totality of the circumstances, including among other things, the following wrongful actions:

(a)   HPL is informed and believes and thereon alleges that the Arizona Republic is either a member of a defense group organized and established by the New York Times Company and/or its counsel, or is cooperating with such a defense group, for the purpose of opposing HPL's patent licensing program. This defense group includes, on information and belief, at least New York Times, Best Buy, Inc., Bon-Ton, Bravo, CBS, G4 Media, and likely others (hereinafter "NYT Defense Group"). On information and belief, the NYT Defense Group is operating under one or more written "defense group agreements" that set forth the terms and conditions upon which the members hire and pay for their operations and coordinate working together to oppose HPL's licensing and enforcement

efforts, and establish the consequences if one of the defense group members settles with HPL.

(b)      As set forth above in Paragraphs 12-16, the NYT Defense Group approved and agreed to a strategy of filing repeated, staggered and seriatim reexamination requests, including making at least 69 invalidity arguments that were determined by the PTO to be without merit or merely cumulative without requiring any substantive comment from HPL.  On information and belief, the NYT Defense Group has done so in furtherance of a plan to harass HPL, increase HPL's expenses, and stall HPL's licensing program.

(c)      NYT (and if in existence at the time, the NYT Defense Group) made numerous false or misleading statements to the PTO in the first round of reexaminations filed on February 25, 2011 (*ex parte* reexaminations Control Nos. 90/009,880, 90/009,882, and 90/009,883), as set forth in detail in Paragraph 28, below.

(c)      The NYT Defense Group made numerous false or misleading statements to the PTO in the second round of reexaminations filed on September 6, 2011 (*inter partes* reexaminations Control Nos. 95/001,738, 95/001,739, 95/001,740), as set forth in detail in Paragraph 29, below.

(d)      The NYT Defense Group made numerous false or misleading statements in the third round reexamination request of the '716 patent, filed on January 6, 2012 (*inter partes* reexamination Control No. 95/001,867) and the '241

patent, filed December 29, 2011 (*inter partes* reexamination Control No.

95/001,864), as set forth in detail in Paragraph 30, below.

   (f)    The Arizona Republic repeated many of the false or misleading

statements made to the PTO in the first, second and third rounds of reexaminations

in court filings in this action, as set forth in Paragraph 31, below.

   (g)    Defendant and members of the NYT Defense Group declined

reasonable settlement proposals from HPL, and on information and belief, agreed

with other NYT Defense Group members not to conduct individual settlement

negotiations with HPL, or settle with HPL without prior disclosure to or approval

of other NYT Defense Group members.

   (h)    Defendant and the NYT Defense Group has ignored PTO decisions

favorable to HPL in the reexamination proceedings, and instead, continues to

infringe HPL's patents.

   (i)    Defendant's counsel, Covington & Burling, made false or

misleading statements to the District Court for the Northern District of Illinois on

behalf of the NYT Defense Group.  Each statement made by Defendant's counsel

set forth in Exhibit B ¶¶ 55-71 (incorporated by reference herein) is false or

misleading.  The information labeled as "Facts" in Exhibit B ¶¶ 55-71, provided

by HPL is true and correct.

24.    Every attorney and patent agent who practices before the PTO is subject to

the disciplinary rules of the PTO's Office of Enrollment and Discipline (OED).  37

24

C.F.R. §§ 10-11.  The USPTO rules relating to misconduct are set forth in 37 C.F.R. § 10.23.  A practitioner engages in misconduct if he or she "[e]ngages in conduct involving dishonesty, fraud, deceit, or misrepresentation" or "[k]nowingly give[s] false or misleading information or knowingly participating in a material way in giving false or misleading information, to . . . [t]he Office or any employee of the Office." 37 C.F.R. §§ 10.23(4) and (c)(2).

25.     Many of the false or misleading statements made by the NYT Defense Group as detailed below in Paragraphs 28-30 relate to repeated efforts to induce the PTO to believe that certain references relied upon by Defendant and the NYT Defense Group were not cited previously, or were not previously considered or relied upon by the PTO, during prosecution of the various patents in suit.  Defendant and the NYT Defense Group expected the PTO to rely on all the statements made in the reexamination filings, including those that were false or misleading, regarding whether references were previously cited or considered during prosecution of HPL's patents.

26.     During the second round of reexaminations (the *inter partes* reexaminations), the Examiner of the '716 and '757 patents expressly corrected two of the attempts by the NYT Defense Group to induce the PTO to believe that a particular reference had not previously been considered or relied upon during prosecution of the '716 and '757 patents, when in fact that reference had been cited and considered during the original prosecution, and in addition relied upon during the prior *ex parte* reexamination of the '716 and '757 patents.  Specifically, the NYT Defense Group's *inter partes* reexamination requests of the '757 and '716 patents (Control Nos. 95/001,739 and

95/001,738 respectively) were assigned to the same Examiner (Examiner Escalanate) that was reviewing NYT's *ex parte* reexamination requests of the '757 and '716 patents (Control Nos. 90/009,882 and 90/009,880 respectively).  As part of the denial of the '739 and '738 *inter partes* reexaminations, Examiner Escalante corrected erroneous statements made by NYT and the NYT Defense Group.

(a)  First, with respect to the '716 patent, Examiner Escalante responded to NYT's statement that the Bjorndahl reference was "not considered by the examiner during the prosecution of the '716 patent."   Examiner Escalante stated:

> "As per Bjorndahl, *the [NYT Defense Group] Request notes that the reference was not considered by the examiner during the prosecution of the '716 patent.  The Request did not provide any explicit statement of the substantial new question raised with respect to Bjorndahl.  In addition, the examiner notes that Bjorndahl was relied upon during reexamination control number 90/009,880.*  The examiner, however, acknowledges that Bjorndahl is being used in a new light since it is used in conjunction with different primary references; however, as noted above, the Request has not established a substantial new question over those primary references."

*See* Order Denying *Inter partes* Reexamination, Control No. 95/001,738 at 25 (emphasis added).  The Examiner caught the NYT Defense Group's effort to mislead him into believing that Bjorndahl was new, and expressly admonished that Bjorndahl was in fact considered in relation to the '716 patent—at least because Bjorndahl was relied upon during the prior *ex parte* reexamination (Control No. 90/009,880).  Thus, regardless of whether Requesters intended their unqualified reference to "prosecution" to be limited to "original" prosecution or "all" prosecution including reexamination, the Examiner, in effect, said that Requesters'

statement was misleading —Bjorndahl was relied upon during the *ex parte*

reexamination of the '716 patent.  Therefore, Bjorndahl was not "new."

(b)  Second, with respect to the '757 patent, Requesters stated that Bjorndahl was not

considered "during prosecution," and in addition incorrectly averred that Bjorndahl

was not considered "in the co-pending ex parte reexamination proceeding."  In

response, Examiner Escalante stated on the record that this NYT Defense Group's

statement was "not factual."  Examiner Escalante stated:

> "As per the Bjorndahl, the Request Notes, that the reference was not
> considered by the examiner during the prosecution of the '757 patent
> nor in the co-pending ex parte reexamination proceeding. ***The
> examiner first notes that Bjorndahl was previously cited and relied
> upon by the examiner during the co-pending ex parte
> reexamination proceeding***. Thus, the Request's statement is ***not
> factual*** and thus does not raise a substantial new question of
> patentability."

*See* Order Denying *Inter Partes* Reexamination, Control No. 95/001,739 at 24-25

(emphasis added).

(c) Thus, in the '716 and '757 denied second round reexamination orders, the PTO

twice told the NYT Defense Group that Bjorndahl had been "considered" at least

during the prior ex parte reexaminations.  Moreover, in the '757 order denying inter

partes reexamination, the Examiner said that the NYT Defense Group's statement to

the contrary was "not factual."

27.     Notwithstanding these two prior corrections, and knowing that new

Examiners were requested and would be assigned to the newly filed *inter partes*

reexamination requests, the NYT Defense Group continued to make false or misleading

statements to the Patent Office in an effort to convince the new Examiners that references had not been cited or considered in prior Patent Office proceedings, when in fact they had earlier been cited or considered, including specifically with respect to Bjorndahl.  For example, *after* being told by the Patent Office that Bjorndahl was relied on in the prior *ex parte* reexamination, and *after* being told by the Patent Office that statements to the contrary are "not factual," the NYT Defense Group newest reexamination *again* falsely averred that "[t]he '616 [Bjorndahl] patent was not considered by the Examiner during … the co-pending *ex parte* reexamination proceeding."  *See infra* ¶ 29(e).  Repeating this false statement was intentional, as it was done after the Patent Office had told the NYT Defense Group that such statement was "not factual."

28.     In addition to the above, the NYT Defense Group (of which the Arizona Republic is believed to be a member) and Arizona Republic's counsel made the following false or misleading statements to the PTO in the first round of reexaminations filed on February 25, 2011, with the correct facts and supporting documentation set forth in Exhibit B to this Amended Complaint:

(a) False Statement 1: "The Tso patent was not previously and expressly considered on the record nor discussed on the record during prosecution of the '757 patent."  *See* Request for *Ex Parte* Reexamination of U.S. Patent No. 7,835,757, Control No. 90/009,882 ("'882 Reexam Request") at 16.

- Fact 1: The Tso patent was cited during prosecution of the '757 patent in an IDS dated June 22, 2010, was expressly considered on the record by the Examiner of the '757 patent as shown by his initials on a "List of References

Cited and Considered by Examiner" dated September 17, 2010, and appears of the face of the '757 patent as a "Reference Cited."  *See* Exhibit B ¶ 1.

(a) False Statement 2: "The Applicant initially cited the Tso patent in an IDS dated June 22, 2010, along with a large volume of other prior art….  Nor did the Applicant draw any particular attention to the Tso patent to highlight its materiality from among the large number of references initially cited in the June 22, 2010 IDS."  *See* '882 Reexam Request at 15.

- Fact 2: The Tso patent was the only U.S. patent listed on Applicant's June 22, 2010 IDS, one of only 4 total references cited therein (i.e., not a "large volume"), and the remarks accompanying the June 22, 2010 IDS drew particular attention to the Tso patent by expressly highlighting that it had been received from a "prospective licensee."  *See* Exhibit B ¶ 2.

(b) False Statement 3: "The Applicant did not file any such petition, and the '757 patent issued on October 27, 2010 without any consideration of the Tso patent by the Examiner."  *See* '882 Reexam Request at 12.

- Fact 3: The '757 patent issued on November 16, 2010 *after* consideration of the Tso patent by the Examiner who indicated that "All references considered except where lined through," on the September 17, 2010 "List of References Cited and Considered by Examiner" (and did *not* line through Tso).  *See* Exhibit B ¶ 3.

(c)  False Statement 4: "The '449 [Metroka] patent was cited during prosecution but was not considered by the Examiner during prosecution of the '838 patent." *See* Request for *Ex parte* Reexamination, 90/009,883 ("'883 Reexam Request") at 26.

- Fact 4: The '449 Metroka patent was considered three times by the Examiner during the original prosecution of the '838 patent as shown by the Examiner's signature on three separate "Lists of References Cited and Considered by Examiner" dated June 30, 2006, May 18, 2007, and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited." *See* Exhibit B ¶ 4.

(d) False Statement 5: "The Jasinski '446 patent was not considered by the Examiner during prosecution of the '838 patent."  *See* '883 Reexam Request at 29-30.

- Fact 5: The Jasinski '446 patent was cited on an IDS submitted on February 15, 2007, during the original prosecution of the '838 patent, and that IDS informed the Examiner that Jasinski was applied to reject claims in a parent case, stating: "the Examiner may wish to review the decisions of the prior Examiners in the parent cases, includ[ing] the references applied in rejecting earlier-submitted claims."  Thereafter, the Jasinski '446 patent was considered by the Examiner during prosecution of the '838 patent on three separate occasions as shown by his signature on three separate "Lists of References Cited and Considered by Examiner" dated June 30, 2006, May 18, 2007, and August 23, 2007, and the Jasinski '446 patent appears on the face of the '838 patent as a "Reference Cited."  *See* Exhibit B ¶ 5.

29.     The NYT Defense Group made the following false or misleading statements to the PTO in the second round of reexaminations filed on September 6, 2011, with the correct facts and supporting documentation set forth in Exhibit B to this Amended Complaint:

(a) False Statement 6:  "the '757 patent issued on October 27, 2010 without any consideration of the Tso patent by the Examiner."  *See* Request for *Inter partes* Reexamination, 95/001,739 ("'739 Reexam Request") at 17.

- Fact 6: The Tso patent was cited during prosecution of the '757 patent in an IDS dated June 22, 2010, was expressly considered on the record by the Examiner of the '757 patent as shown by his initials on a "List of References Cited and Considered by Examiner" dated September 17, 2010, and appears of the face of the '757 patent as a "Reference Cited."  *See supra* ¶ 27(a) and Exhibit B ¶ 6.

(b) False Statement 7:  "the '415 [Rossmann] patent and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent."  *See* '739 Reexam Request at 26 (emphasis in original).

- Fact 7: The '415 Rossmann patent was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010 and its technological teachings were considered on the record during the original prosecution of the '757 patent as shown by the Examiner's initials on the "List of References Cited and

31

Considered" by Examiner dated September 17, 2010, and appears on the face

of the '757 patent as a "Reference Cited." *See* Exhibit B ¶ 7.

(c) False Statements 8 and 9:  "the '167 [Boyle] patent and its technological teachings

were not at all considered and were not at all discussed on the record during

prosecution of the application that led to the '757 patent." *See* '739 Reexam Request

at 29 and repeated at 32 (emphasis original in both instances).

- Facts 8 and 9: The '167 Boyle patent was cited during the original prosecution

    of the '757 patent in an IDS dated May 3, 2010 and its technological teachings

    considered on the record during the original prosecution of the '757 patent as

    shown by the Examiner's initials on the "List of References Cited and

    Considered by Examiner" dated September 17, 2010, and appears on the face

    of the '757 patent as a "Reference Cited." *See* Exhibit B ¶¶ 8 and 9.

(d) False Statements 10 and 11:

    (i)   "The NAIS article was not considered by the Examiner during prosecution

of the application that gave rise to the '757 patent, nor in the co-pending *ex parte*

reexamination proceeding." *See* '739 Reexam Request at 33.

    (ii)  "the NAIS article and its technological teachings were not at all considered

and were not at all discussed on the record during prosecution of the application that

led to the '757 patent." *See* '739 Reexam Request at 36 (emphasis in original).

- Facts 10 and 11: The NAIS article was cited during the original prosecution of

    the '757 patent in an IDS dated May 3, 2010, and its technological teachings

    considered on the record during the prosecution of the '757 patent as shown by

the Examiner's initials on the "List of References Cited and Considered by

Examiner" dated October 4, 2010 and appears on the face of the '757 patent as

a "Reference Cited."  The NAIS article was also cited during the *ex parte*

reexamination of the '757 patent in an IDS dated April 28, 2011 and its

technological teaches considered on the record during the *ex parte*

reexamination of the '757 patent as shown by the Examiner's signature on the

"List of References Cited and Considered by the Examiner" dated June 8,

2011.  *See* Exhibit B ¶¶ 10 and 11.

(e) False Statements 12 and 13:  "The '616 [Bjorndahl] patent was not considered by

the Examiner during the prosecution of the '757 patent, nor in the co-pending *ex parte*

reexamination proceeding."  *See* '739 Reexam Request at 61 and repeated at 64.

- Fact 12 and 13: The '616 Bjorndahl patent was cited during prosecution of the

  co-pending *ex parte* reexamination for the '757 patent (by HPL in its April 28,

  2011 IDS and by NYT at page 15 of its reexamination request) and was

  considered by the Examiner in the co-pending *ex parte* reexamination as

  shown by the Examiner's signature on the "List of References Cited and

  Considered by Examiner" dated June 8, 2011.  Still further, the Examiner

  discussed the '616 Bjorndahl patent on the record during the co-pending *ex*

  *parte* reexamination.  *See* Exhibit B ¶¶ 12 and 13.

(f)  False Statement 14:  "the '415 [Rossmann] patent and its technological teachings

were not at all considered and were not at all discussed on the record during

prosecution of the application that led to the '716 patent."  *See* Request for *Inter*

33

*partes* Reexamination, 95/001,738 ("'738 Reexam Request") at 20 (emphasis in original).

- Fact 14: The '415 Rossmann patent was cited during the original prosecution of the '716 patent in IDSs dated March 30, 2007 and June 27, 2007, and its technological teachings were twice considered on the record during the original prosecution of the '716 patent as shown by the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated October 3, 2006 and December 7, 2017, and appears on the face of the '716 patent as a "Reference Cited."  *See* Exhibit B ¶ 14.

(g) False Statement 15:  "the '167 [Boyle] patent and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '716 patent."  *See* '738 Reexam Request at 25 (emphasis in original).

- Fact 15: The '167 Boyle patent was cited during original prosecution of the '716 patent in an IDS dated March 30, 2007 and its technological teachings considered on the record during the original prosecution of the '716 patent as shown by the Examiner's signature on the "List of References Cited and Considered by Examiner" dated December 7, 2007, and appears on the face of the '716 patent as a "Reference Cited."  *See* Exhibit B ¶ 15.

(h) False Statement 16:  "the '415 [Rossmann] patent and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '838 patent."  *See* Request for *Inter*

*partes* Reexamination, 95/001,740 ("'740 Reexam Request") at 20 (emphasis in original).

- Fact 16: The '415 Rossmann patent was cited during the original prosecution of the '838 patent in IDSs dated February 15, 2007 and June 27, 2007 (which highlighted the '415 Rossmann patent), and its technological teachings were twice considered on the record during the original prosecution of the '838 patent as shown by the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated May 18, 2007 and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited." *See* Exhibit B ¶ 16.

(i)  False Statement 17:  "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '838 patent." *See* Request for *Inter partes* Reexamination, 95/001,740 ("'740 Reexam Request") at 23 (emphasis in original).

- Fact 17: The '167 Boyle patent was cited during the original prosecution of the '838 patent in IDSs dated June 5, 2006, February 15, 2007, and June 27, 2007, and its technological teachings considered on the record by the Examiner three times during the original prosecution of the '838 patent as shown the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated June 30, 2005, May 18, 2007, and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited." *See* Exhibit B ¶ 17.

30.    The NYT Defense Group made the following false or misleading statements to the PTO in the third round of reexaminations filed on December 29, 2011 and January 6, 2012, with documented support for the correct facts set forth in Exhibit B to this Amended Complaint:

(a) False Statement 18:  "none of the documents cited in the November 2d IDS, including the '415 [Rossmann] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceeding."  *See* Request for *Inter partes* Reexamination, 95/001,867 ("'867 Reexam Request") at 31 (emphasis added).

- Fact 18: The '415 Rossmann patent was cited not only in the November 2, 2011 IDS, but also in an *earlier* IDS filed April 28, 2011, and was considered by the Examiner on the record during the '880 *ex parte* reexamination, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.  *See* Exhibit B ¶ 18.

(b) False Statement 19:  "none of the documents cited in the November 2d IDS, including the NAIS article and the patentee's comments regarding this article, was considered on the record during the *ex parte* reexamination proceedings."  *See* '867 Reexam Request at 35.

- Fact 19: The NAIS article was cited not only in the November 2, 2011 IDS, but also in an *earlier* IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination, as shown by his

signature and correction of the publication date on the "List of References

Cited and Considered by Examiner" dated June 8, 2011.  *See* Exhibit B ¶ 19.

(c) False Statement 20:  "The '973 [Smith] patent was not considered by the

Examiner during prosecution of the application that gave rise to the '716 patent, nor

by the Examiner during the *ex parte* reexamination proceeding or the denied *inter*

*partes* reexamination."  *See* '867 Reexam Request at 31.

- Fact 20: The '973 Smith patent was cited in an IDS dated April 28, 2011, and

  considered by the Examiner during prosecution of the *ex parte* reexamination

  of the '716 patent, as shown by his signature on the "List of References Cited

  and Considered by Examiner" dated June 17, 2011.  *See* Exhibit B ¶ 20.

(d) False Statement 21:  "The '100 [Kane] patent is cited on the face of the '716

patent, but was not considered by the Examiner or discussed on the record during

prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination

proceeding or the denied *inter partes* reexamination.  *See* '867 Reexam Request at 45.

- Fact 21: The '100 Kane patent was cited during original prosecution of the

  '716 patent in an IDS dated March 30, 2007 and was considered by the original

  Examiner '716 patent as shown by his signature on the "List of References

  Cited and Considered by Examiner" dated August 2, 2007, and the '100 patent

  appears on the face of the '716 patent as a "Reference Cited."  The '100 Kane

  patent was also cited in an IDS dated April 28, 2011 during prosecution of the

  *ex parte* reexamination of the '716 patent and was considered by the Examiner

  on the record during prosecution of the '880 *ex parte* reexamination of the '716

patent as shown by his signature on the "List of References Cited and

Considered by Examiner" dated December 7, 2011.  *See* Exhibit B ¶ 21.

(e) False Statement 22:  "none of the documents cited in the November 2d IDS,

including the '616 [Bjorndahl] patent and the patentee's comments regarding this

patent, was considered on the record during the *ex parte* reexamination proceedings."

*See* '867 Reexam Request at 56.

- Fact 22: The '616 Bjorndahl patent was cited not only in the November 2,

  2011 IDS, but also in an *earlier* IDS dated April 28, 2011, and was considered

  by the Examiner on the record during the '880 *ex parte* reexamination, as

  shown by his signature on the "List of References Cited and Considered by

  Examiner" on June 8, 2011.  *See* Exhibit B ¶ 22.

(f)  False Statement 23:  "the '973 patent [Smith], the '415 [Rossmann] patent, the

Enabling Network Managers Article, and the NAIS article, all of which thus provide a

new, non-cumulative technological teaching not considered by the Examiner in the *ex*

*parte* reexamination proceeding.  *See* '867 Reexam Request at 24, note 7.

- Fact 23: As established in Facts 20, 18, and 19 respectively, the '973 Smith

  patent, '415 Rossmann patent, and the NAIS article were all previously cited

  and considered during the prosecution of the '716 patent during the *ex parte*

  reexamination.  Accordingly, these references do not provide new teachings, or

  teachings that are non-cumulative to those that had already been considered.

  *See* Exhibit B ¶ 23.

(g) False Statement 24:  "Furthermore, neither the '100 [Kane] patent nor the '973 [Smith] patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880."  *See* '867 Reexam Request at 78.

- Fact 24: As established in Facts 20 and 21, the '973 Smith patent and '100 Kane patent were cited and considered by the Examiner during prosecution of the *ex parte* reexamination of the '716 patent and the '100 Kane patent was also cited and considered by the Examiner during the original prosecution of the '716 patent.  *See* Exhibit B ¶ 24.

(h) False Statements 25 and 26: "None of the '973 patent, the '351 patent, and '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  *See* Request for *Inter partes* Reexamination, 95/001,864 ("'864 Reexam Request") at 58 *and again* at 64.

- Facts 25 and 26: The '100 Kane patent was cited during original prosecution of the '241 patent in an IDS dated February 7, 2005, the Examiner considered the '100 Kane patent on the record as shown by his signature on the "List of References Cited and Considered by Examiner" dated May 2, 2006, and the '100 Kane patent appears on the face of the '241 patent as a "Reference Cited." *See* Exhibit B ¶¶ 25-26.

(i)  False Statement 27 and 28: "None of the NAIS article, the '351 patent, and the '100 patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  *See* '864 Reexam Request at 71 *and again* at 78.

- Fact 27 and 28: As established in Facts 25 and 26, the '100 Kane patent was cited during original prosecution of the '241 patent in an IDS dated February 7, 2005, the Examiner considered the '100 Kane patent on the record as shown by his signature on the "List of References Cited and Considered by Examiner" dated May 2, 2006, and the '100 patent appears on the face of the '241 patent as a "Reference Cited." *See* Exhibit B ¶¶ 27 and 28.

31.     The Arizona Republic, or its counsel Covington & Burling LLP, repeated in court filings in this action many of the same false or misleading statements that were made to the PTO in the first, second and third rounds of reexaminations. Moreover, after placing the Arizona Republic and its counsel Covington & Burling LLP on notice of those false or misleading statements, the Arizona Republic and its counsel refused to correct and instead yet again endorsed the false or misleading statements. At least the following false or misleading statements were made by the Arizona Republic, with the correct facts and supporting documentation set forth in Exhibit B to this Amended Complaint:

(a) False Statement 29: "None of the documents cited in the November 2d IDS, including the '415 [Rossmann] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceeding." *See* Answer, Defenses, First Counterclaim, Amended Second Counterclaim, and Jury Demand (Dkt. 49) (hereinafter "Counterclaim") ¶ 52.

- Fact 29: The '415 Rossmann patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered

by the Examiner on the record of the '880 *ex parte* reexamination proceedings

as shown by his signature on the "List of References Cited and Considered by

Examiner" dated June 8, 2011.  *See* Exhibit B ¶ 32.

(b) False Statement 30: "none of the documents cited in the November 2d IDS,

including the NAIS Article and the patentee's comments regarding this article, was

considered on the record during the *ex parte* reexamination proceedings."

Counterclaim ¶ 66.

- Fact 30: The NAIS article was cited not only in the November 2, 2011 IDS, but

  also in an earlier IDS filed April 28, 2011, and was considered by the

  Examiner on the record of the '880 *ex parte* reexamination proceedings as

  shown by his signature on the "List of References Cited and Considered by

  Examiner" dated June 8, 2011.  *See* Exhibit B ¶ 33.

(c) False Statement 31: "The '973 [Smith] patent was not considered by the Examiner

during prosecution of the application that gave rise to the '716 patent, nor by the

Examiner during the *ex parte* reexamination proceeding or the denied *inter partes*

reexamination."  Counterclaim ¶ 83.

- Fact 31: The '973 Smith patent was cited not only in the November 2, 2011

  IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the

  Examiner on the record of the '880 *ex parte* reexamination proceedings as

  shown by his signature on the "List of References Cited and Considered by

  Examiner" dated June 8, 2011.  *See* Exhibit B ¶ 34.

41

(d) False Statement 32: "The '100 [Kane] patent is cited on the face of the '716 patent, but was not considered by the Examiner or discussed on the record during prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination." Counterclaim ¶ 100.

- Fact 32: The '100 Kane patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011. *See* Exhibit B ¶ 35.

(e) False Statement 33: "none of the documents cited in the November 2d IDS, including the '616 [Bjorndahl] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceedings." Counterclaim ¶ 145.

- Fact 33: The '415 Bjorndahl patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 8, 2011. *See* Exhibit B ¶ 36.

(f) False Statements 34 and 35: "Neither the *Enabling Mobile Network Managers* nor the '100 [Kane] patent are of record in the original prosecution of the '716 patent,…" Counterclaim 192 and 227.

- Facts 34 and 35: The '100 Kane patent was in fact of record in the original prosecution of the '716 patent, was considered by the Examiner on the "List of References Cited and Considered by Examiner," and appears on the face of the '716 patent as a "Reference Cited." *See* Exhibit B ¶¶ 37 and 38.

(g) False Statement 36: "Neither the '100 [Kane] patent nor the '973 patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. Counterclaim ¶ 250.

- Fact 36: The '100 Kane patent was in fact of record in the original prosecution of the '716 patent, is shown as considered by the Examiner on the "List of References Cited and Considered by Examiner," and appears on the face of the '716 patent as a "Reference Cited." Furthermore, both the '100 Kane patent and '973 Smith patent are of record in the '880 *ex parte* reexamination, and each are shown as considered by the Examiner on a "List of References Cited and Considered by Examiner." *See* Exhibit B ¶ 39.

(h) False Statement 37: "The '327 patent teaches paging calls indicating the time during which media content is available." Counterclaim ¶ 320.

- Fact 37:  The Examiner of the '880 *ex parte* reexamination expressly found that the '327 Tso patent "fails to disclose wherein the notification that is sent to the client device indicates a time the content is available." *See* Exhibit B ¶ 40.

(i)  False Statement 38: "The '327 patent teaches causing content to change without sending a cell phone a notification and thereafter causing the changed content to be transmitted to a cell phone."  Counterclaim ¶ 321.

- Fact 38: The Examiner of the '882 *ex parte* reexamination expressly found that "Tso does not disclose that the content that is already stored … would be updated."  *See* Exhibit B ¶ 41.

(j)  False Statements 39 through 51: The Arizona Republic repeatedly states with respect to the '838 patent that references were "not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution" including the following (with all references to the PNI Counterclaim): *Rover Toolkit* (¶ 324); *Rover Mosaic* (¶ 337); the *Always On* article (¶ 343); RFC 1911 (¶ 349); RFC 1487 (¶ 354); '449 Metroka patent (¶ 359); '305 Sattar patent (¶ 363); '845 Buhrmann patent (¶ 368); '067 Nguyen patent (¶ '373); '382 Nikas patent (¶ 378); '616 Bjorndahl patent (¶ 383); '824 Lu patent (¶ 392); '446 Jasinski patent (¶ 397).

- Facts 39 through 51: As shown on Exhibit B ¶¶ 42-54, each Counterclaim statement noted above is false or misleading at least because the identified references were in fact cited by both the Arizona Republic's counsel and Patentee during the prosecution of the '838 patent during the *ex parte* reexamination thereof.  Each such reference was considered by the Examiner during the prosecution of the *ex parte* reexamination of the '838 patent.

<u>COUNT I</u>
<u>(Infringement of United States Patent No. 7,835,757)</u>

32~~21~~.  HPL incorporates by reference Paragraphs 1 through 31~~20~~ of this

Complaint and realleges them as though fully set forth herein.

33~~22~~.  HPL is informed and believes, and thereon alleges, that Defendant has been

and is currently infringing the '757 patent in violation of 35 U.S.C. § 271(a) by, among

other things, using and practicing methods that embody one or more of claims 1-13, and

15-20 of the '757 patent (and likely others as determined through discovery)~~.~~

Additionally, upon the Patent Office's issuance of the forthcoming reexamination

certificate regarding the '757 patent, Defendant will likewise be infringing one or more of

new claims presently numbered 21-39, 41-62, and 64-69.  As mentioned previously, all

of these claims have been confirmed patentable after~~by~~ the Patent Office's consideration

of NYT's first round~~Office in connection with New York Times Company's~~ *ex parte*

reexaminations~~reexamination request~~ and the NYT Defense Group's second round *inter*

*partes* reexamination requests~~request~~.

34~~23~~.  HPL is informed and believes, and thereon alleges, that Defendant infringes

the '757 patent because it causes SMS notifications including those such as described in

Paragraph 11~~6~~ to be sent to its subscribers' mobile devices.  HPL is informed and

believes, and thereon alleges that Defendant infringes the '757 patent in connection with

at least the product offerings and services described in Paragraph 20~~18~~, above.

35~~24~~.  In the alternative, HPL is informed and believes, and thereon alleges, that

Defendant has actively induced and is currently inducing the infringement of the '757

patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '757 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20~~23~~ have been, and continue to be, sent to its subscribers' mobile devices.

36~~25~~.  More specifically, Defendant has been on notice of its infringement of the '757 patent since March of 2011, and since that time has sent and continues to send numerous infringing SMS messages as described in Paragraph 20~~22~~ to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20~~23~~, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '757 patent~~Patent~~.

37~~26~~.  In addition, with Defendant being on notice of infringement of the '757 patent since March of 2011, and in view of the conduct set forth above including in Paragraphs 22-31, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '757 patent has been and continues to be willful.

38~~27~~.  As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT II

## (Infringement of United States Patent No. 7,499,716)

39~~28~~.  HPL incorporates by reference Paragraphs 1 through 31~~20~~ of this Complaint and realleges them as though fully set forth herein.

40~~29~~.  HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among other things, ~~using~~ and practicing methods that embody one or more of at least claims 15, 17, 18, 21, 22, 23, 24, 25, 26, 27, 30, 32, 33, 36, 37, 38, 39, 40, ~~and~~ 41, ~~of the '716 patent.  Additionally, upon the Patent Office's issuance of the forthcoming reexamination certificate regarding the '716 patent, Defendant will likewise be infringing one or more of claims~~ 83, 85, 86, 89, 90, 91, 92, 93, 94, 97, 99, 100, 103, 104, 105, 106, and 107 of the '716 patent.~~, 110, 112, 113, 114, and 115.~~  As mentioned previously, the Patent Office has issued a Reexamination Certificate confirming all of these claims after consideration of the ~~have been confirmed by the Patent Office in connection with~~ New York Times Company's first round *ex parte* reexamination requests and the NYT Defense Group's second round~~request and~~ *inter partes* reexamination requests~~request~~.

41~~30~~.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent because it causes SMS notifications including those such as described in Paragraph 11~~8~~ to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges, that Defendant infringes the '716 patent in connection with at least the product offerings and services described in Paragraph 20~~18~~, above.

42~~31~~.  In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '716

patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '716 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20~~30~~ have been, and continue to be, sent to its subscribers' mobile devices.

43~~32~~.  More specifically, Defendant has been on notice of its infringement of the '716 patent since November of 2010, and since that time has sent and continues to send numerous infringing messages as described in Paragraph 20~~30~~ to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20~~30~~, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '716 patent~~Patent~~.

44~~33~~.  In addition, with Defendant being on notice of infringement of the '716 patent since November of 2010, and in view of the conduct set forth above including in Paragraphs 22-31, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '716 patent has been and continues to be willful.

45~~34~~.  As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**COUNT III**
**(Infringement of United States Patent No. 7,280,838)**

46~~35~~.  HPL incorporates by reference Paragraphs 1 through 31~~20~~ of this

Complaint and realleges them as though fully set forth herein.

47~~36~~.  HPL is informed and believes, and thereon alleges, that Defendant has been

and is currently infringing the '838 patent in violation of 35 U.S.C. § 271(a) by, among

other things, using and practicing methods that embody one or more of at least claims 9,

10, 12, 13, 15, 16, 18, 19, 20, and 97-101 and 105-110~~20~~ of the '838 patent (and likely

others) within the United States without authority or license from HPL.  As mentioned

previously, the Patent Office has issued a Reexamination Certificate confirming all of

these claims after consideration of the New York Times Company's first round *ex parte*

reexamination requests, the NYT Defense Group's second and third round *inter partes*

reexamination requests.  ~~HPL expects that additional claims will be asserted upon~~

~~completion of the pending *ex parte* reexamination.~~

48~~37~~.  HPL is informed and believes, and thereon alleges, that Defendant infringes

the '838 patent because it causes SMS notifications including those such as described in

Paragraph 11~~10~~ to be sent to its subscribers' mobile devices.  HPL is informed and

believes, and thereon alleges, that Defendant infringes the '838 patent in connection with

at least the product offerings and services described in Paragraph 20~~18~~, above.

49~~38~~.  In the alternative, HPL is informed and believes, and thereon alleges, that

Defendant has actively induced and is currently inducing the infringement of the '838

patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently

contributing to the infringement of the '838 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20~~37~~ have been, and continue to be, sent to its subscribers' mobile devices.

50~~39~~.  More specifically, Defendant has been on notice of its infringement of the '838 patent since November of 2010, and since that time has sent and continues to send numerous infringing messages as described in Paragraph 20~~37~~ to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20~~36~~, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '838 patent~~Patent~~.

51~~40~~.  In addition, with Defendant being on notice of infringement of the '838 patent since March of 2011, and in view of the conduct set forth above including in Paragraphs 22-31, HPL is informed and believes, and thereon alleges that Defendant's infringement of the '838 patent has been and continues to be willful.

52~~41~~.  As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT IV
### (Infringement of United States Patent No. 8,107,601)

53.     HPL incorporates by reference Paragraphs 1 through 31 of this Complaint and realleges them as though fully set forth herein.

54.     HPL is informed and believes, and thereon alleges, that the Defendant has been and is currently infringing the '601 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3, 4, 9-11, 16, and 17 of the '601 patent.  As mentioned previously, the Patent Office issued the '601 patent after consideration of the New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

55.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '601 patent because it causes SMS notifications of the type described in Paragraph 11 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '601 patent in connection with at least the product offerings and services described in Paragraph 20, above.

56.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and are currently inducing the infringement of the '601 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '601 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20 have been, and continue to be, sent to its subscribers' mobile devices.

57.     More specifically, Defendant has been on notice of its infringement of the '601 patent since at least January 31, 2012, the issue date of the '601 patent, and since that time numerous infringing SMS messages as described in Paragraph 20 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '601 patent.

58.     In addition, with Defendant being on notice of infringement of the '601 patent since at least January 31, 2012, and in view of the conduct set forth above including in Paragraphs 22-31, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '601 patent has been and continues to be willful.

59.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

**COUNT V**
**(Infringement of United States Patent No. 8,116,741)**

60.     HPL incorporates by reference Paragraphs 1 through 31 of this Complaint and realleges them as though fully set forth herein.

61.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '741 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1-9, 11-18, 20, 21, 23, 24, 26,  and 27 of the '741 patent.  As mentioned previously, the Patent Office issued the '601 patent after consideration of the New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

62.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '741 patent because it causes SMS notifications of the type described in Paragraph 11 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '741 patent in connection with at least the product offerings and services described in Paragraph 20, above.

63.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and are currently inducing the infringement of the '741 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '741 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 51 have been, and continue to be, sent to its subscribers' mobile devices.

64.     More specifically, the Defendant has been on notice of its infringement of the '741 patent since at least February 14, 2012, the issue date of the '741 patent, and since that time numerous infringing SMS messages as described in Paragraph 51 have been, and continue to be, sent to the Defendant's subscribers along with links to the

Defendant's content.  HPL is informed and believes, and thereon alleges, that if it is not the Defendant causing the infringing messages to be sent as alleged in Paragraph 20, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and knew or should have known that its actions would cause actual infringement of the '741 patent.

65.     In addition, with Defendant being on notice of infringement of the '741 patent since at least February 14, 2012, and in view of the conduct set forth above including in Paragraphs 22-31, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '741 patent has been and continues to be willful.

66.     As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

## COUNT VI
### (Infringement of United States Patent No. 8,134,450)

67.     HPL incorporates by reference Paragraphs 1 through 31 of this Complaint and realleges them as though fully set forth herein.

68.     HPL is informed and believes, and thereon alleges, that Defendant has been and is currently infringing the '450 patent in violation of 35 U.S.C. § 271(a) by, among other things, using and practicing methods that embody one or more of claims 1, 3-8, 10, 13-15, 17-23, and 27-28 of the '450 patent.  As mentioned previously, the Patent Office

issued the '601 patent after consideration of the New York Times Company's (and its Defense Group's) first and second round *ex parte* and *inter partes* reexamination requests.

69.     HPL is informed and believes, and thereon alleges, that Defendant infringes the '450 patent because it causes SMS notifications of the type described in Paragraph 11 to be sent to its subscribers' mobile devices.  HPL is informed and believes, and thereon alleges that Defendant infringes the '450 patent in connection with at least the product offerings and services described in Paragraph 20, above.

70.     In the alternative, HPL is informed and believes, and thereon alleges, that Defendant has actively induced and is currently inducing the infringement of the '450 patent in violation of 35 U.S.C. § 271(b) or has contributed to and is currently contributing to the infringement of the '450 patent in violation of 35 U.S.C. § 271(c) because numerous SMS notifications of the type described in Paragraph 20 have been, and continue to be, sent to its subscribers' mobile devices.

71.     More specifically, Defendant has been on notice of its infringement of the '450 patent since at least March 13, 2012, the issue date of the '450 patent, and since that time numerous infringing SMS messages as described in Paragraph 20 have been, and continue to be, sent to Defendant's subscribers along with links to Defendant's content. HPL is informed and believes, and thereon alleges, that if it is not Defendant causing the infringing messages to be sent as alleged in Paragraph 20, then Defendant has actively induced or contributed to, and is currently actively inducing or contributing to, the actions of third parties to cause such infringing messages to be sent on its behalf, and

knew or should have known that its actions would cause actual infringement of the '450 patent.

72.     In addition, with Defendant being on notice of infringement of the '450 patent since at least March 13, 2012, and in view of the conduct set forth above including in Paragraphs 22-31, HPL is informed and believes, and thereon alleges, that Defendant's infringement of the '450 patent has been and continues to be willful.

73.    As a direct and proximate result of Defendant's conduct, HPL has suffered and will continue to suffer irreparable injury, for which it has no adequate remedy at law. HPL has also been damaged and, until an injunction issues, will continue to be damaged in an amount yet to be determined.

WHEREFORE, for the foregoing reasons, Helferich Patent Licensing, LLC, prays for:

(a)    Judgment that Defendant has infringed, actively induced others to infringe, or contributed to the infringement by others of one or more of the claims of the '757 patent, '716 patent,  '838 patent, the '601 patent, the '741 patent, and the '450and '838 patent;

(b)    A permanent injunction to be issued enjoining and restraining Defendant and its respective officers, directors, agents, servants, employees, attorneys, licensees, successors, assigns, and those in active concert and participation with them, and each of them, from making, using, selling, offering for sale, or importing any products, systems or methods which fall within the scope of one or more of the claims of the '757 patent,

the '716 patent, and the '838 patent, the '601 patent, the '741 patent, and the '450 patent, and from inducing or contributing to infringement of anya

ny such claims by others;

(c)     An award of damages against Defendant adequate to compensate HPL for past infringement of one or more of the claims of the '757 patent, '716 patent, '838 patent, '601 patent, '741 patent and '450and '838 patent, together with interest and costs as fixed by the Court, such damages to be trebled because of the willful and deliberate character of the infringement;

(d)     Judgment that this case is "exceptional" under 35 U.S.C. § 285, and that HPL is entitled to an award of its reasonable attorneys' fees in the prosecution of this action; and

(e)     Such other and further relief as the Court may deem just and proper.

/ / /
/ / /

**DEMAND FOR JURY TRIAL**

Plaintiff hereby makes a demand for a trial by jury pursuant to Rule 38 of the Federal Rules of Civil Procedure as to all issues in this lawsuit.

Dated:  April 18thDecember 814, 2011

VICTORIA GRUVER CURTIN, P.L.C.

By:/By:_____:/s/ *Victoria Curtin*_____
                    Victoria Gruver Curtin
                    14555 North Scottsdale Rd., Ste. 160
                    Scottsdale, Arizona 85254

Tel.:  (480) 948-3295
Fax:  (480) 948-3387
Attorney for Plaintiff

**Exhibit A**

1.   U.S. Patent No. 8,134,450, titled "Content Provision to Subscribers via Wireless Transmission," issued March 13, 2012.

2.   U.S. Patent No. 8,116,743, titled "Systems and Methods for Downloading Information to a Mobile Device," issued February 14, 2012.

3.   U.S. Patent No. 8,116,741, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued February 14, 2012.

4.   U.S. Patent No. 8,107,601, titled "Wireless Messaging System," issued January 31, 2012.

5.   U.S. Patent No. 8,099,046, titled "Method for Integrating Audio and Visual Messaging," issued January 17, 2012.

~~1.~~6.   U.S. Patent No. 7,957,695, entitled "Method for Integrating Audio And Visual Messaging;" issued June 7, 2011.

~~2.~~7.   U.S. Patent No. 7,843,314, entitled "Paging Transceivers and Methods for Selectively Retrieving Messages;" issued November 30, 2010;

~~3.~~8.   U.S. Patent No. 7,835,757 entitled "System and Method for Delivering Information to a Transmitting and Receiving Device,"  issued November 16, 2010;

~~4.~~9.   U.S. Patent No. 7,627,305, titled "Systems and Methods for Adding Information to a Directory Stored in a Mobile Device" issued December 1, 2009.

~~5.~~10.   U.S. Patent No. 7,499,716, titled "System and Method for Delivering Information to a Transmitting and Receiving Device" issued March 3, 2009.

~~6.~~11.   U.S. Patent No. 7,403,787, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued July 22, 2008.

~~7.~~12.   U.S. Patent No. 7,376,432, titled "Paging Transceivers and Methods for Selectively Retrieving Messages" issued May 20, 2008.

~~8.~~13.   U.S. Patent No. 7,280,838, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued October 9, 2007.

~~9.~~14.   U.S. Patent No. 7,277,716, titled "Systems and Methods for Delivering Information to a Communication Device," issued October 2, 2007.

~~10.~~15. U.S. Patent No. 7,242,951, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued July 10, 2007.

~~11.~~16. U.S. Patent No. 7,155,241, titled "Systems and Methods for Enabling a User of a Communication Device to Manage Remote Information," issued December 26, 2006.

~~12.~~17. U.S. Patent No. 7,146,157, titled "Systems and Methods for Downloading Audio Information to a Mobile Device," issued December 5, 2006.

13.18. U.S. Patent No. 7,039,428, titled "System and Method for Delivering Information to a Transmitting and Receiving Device," issued May 2, 2006.

14.19. U.S. Patent No. 7,003,304, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued February 21, 2006.

15.20. U.S. Patent No. 6,983,138, titled "User Interface for Message Access," issued January 3, 2006.

16.21. U.S. Patent No. 6,826,407, titled "System and Method for Integrating Audio and Visual Messaging," issued November 30, 2004.

17.22. U.S. Patent No. 6,696,921, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communications System," issued February 24, 2004.

18.23. U.S. Patent No. 6,636,733, titled "Wireless Messaging Method," issued October 21, 2003.

19.24. U.S. Patent No. 6,462,646, titled "Transmitting and Receiving Devices and Methods for Transmitting Data to and Receiving Data from a Communication System," issued October 8, 2002.

20.25. U.S. Patent No. 6,459,360, titled "Networks, Communication Systems, Transmitting and Receiving Devices and Methods for Transmitting, Receiving, and Erasing Stored Information," issued October 1, 2002.

21.26. U.S. Patent No. 6,259,892, titled "Pager Transceivers and Methods for Performing Action on Information at Desired Times," issued July 10, 2001.

22.27. U.S. Patent No. 6,253,061, titled "Systems and Methods for Delivering Information to a Transmitting and Receiving Device," issued June 26, 2001.

23.28. U.S. Patent No. 6,233,430, titled "Paging Transceivers and Methods for Selectively Retrieving Messages," issued May 15, 2001.

24.29. U.S. Patent No. 6,097,941, titled "User Interface for Voice Message Access," issued August 1, 2000.

25.30. U.S. Patent No. 6,087,956, titled "Paging Transceivers and Methods for Selectively Erasing Information," issued July 11, 2000.

26.31. U.S. Patent Application No. 13/210, 223, titled "Wireless Messaging Systems and Methods."

27.32. U.S. Patent Application No. 13/109,437, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

28.33. U.S. Patent Application No. 13/109,389, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

29.34. U.S. Patent Application No. 12/973,722, titled "Wireless Messaging Systems and Methods."

30.35. U.S. Patent Application No. 12/580,189, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."

31.36. U.S. Patent Application No. 12/267,436367,358, titled "Wireless Messaging SystemContent provision to subscribers via wireless transmission."

**EXHIBIT B**

**CORRECTIONS TO FALSE OR MISLEADING STATEMENTS**

1. False Statement 1: "The Tso patent was not previously and expressly considered on the record nor discussed on the record during prosecution of the '757 patent." *See* '882 Reexam Request at 16.

➢ Fact 1: As shown below, the Tso patent was cited during prosecution of the '757 patent in an IDS dated June 22, 2010, was expressly considered on the record by the Examiner of the '757 patent as shown by his initials on a "List of References Cited and Considered by Examiner" dated September 17, 2010, and appears of the face of the '757 patent as a "Reference Cited."



*See* Information Disclosure Statement, Appl. No. 12/764,025 (June 22, 2010).

2. False Statement 2: "The Applicant initially cited the Tso patent in an IDS dated June 22, 2010, along with a large volume of other prior art…. Nor did the Applicant draw any particular attention to the Tso patent to highlight its materiality from among the large number of references initially cited in the June 22, 2010 IDS."  *See* Request for *Ex parte* Reexamination, 90/009,882, page 15.

➢ Fact 2: As shown above in Fact 1, the Tso patent was the only U.S. patent listed on Applicant's June 22, 2010 IDS and one of only 4 total references cited therein.  *See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Sept. 17, 2010) shown above.  In addition, the remarks accompanying the June 22, 2010 IDS drew particular attention to the Tso patent by expressly highlighting that it had been received from a "prospective licensee" as shown below.

> With regard to the cited U.S. patent reference, Applicant notes that the reference was recently provided to Applicant by a prospective licensee of the family of patents to which this application belongs.

*See* Information Disclosure Statement, Appl. No. 12/764,025 (June 22, 2010).

3. False Statement 3: "The Applicant did not file any such petition, and the '757 patent issued on October 27, 2010 without any consideration of the Tso patent by the Examiner."  *See* Request for *Ex parte* Reexamination, 90/009,882, page 12.

➢ Fact 3: As shown above in Fact 1, the '757 patent issued *after* consideration of the Tso patent by the Examiner who indicated that "All references considered except where lined through," and then did *not* line through Tso on the "List of References Cited and Considered by Examiner" shown above.  *See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Sept. 17, 2010).

4. False Statement 4: "The '449 [Metroka] patent was cited during prosecution but was not considered by the Examiner during prosecution of the '838 patent." *See* Request for *Ex parte* Reexamination, 90/009,883 ("'883 Reexam Request") at 26.

➢ Fact 4: As shown below, the '449 Metroka patent was considered three times by the Examiner during the original prosecution of the '838 patent, is expressly shown as considered by the Examiner's signature on three separate "Lists of References Cited and Considered by Examiner" dated June 30, 2006, May 18, 2007, and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited."

*See* List of References Cited by Applicant and Considered by Examiner, Appl.
No. 11/082,913 (June 30, 2006).

| | | | |
|---|---|---|---|
| | 5,117,449 | May 1992 | Metroka et al. |

Examiner:

*[signature]*

Date:
04/27/07

8

*See* List of References Cited by Applicant and Considered by Examiner, Appl.
No. 11/082,913 (May 18, 2007).

| | |
|---|---|
| US Patent No. 5117449 - Metroka | Prior |

*[signature]*        8/3/07        6

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No.
11/082,913 (August 23, 2007).

5. False Statement 5: "The Jasinski '446 patent was not considered by the Examiner during
prosecution of the '838 patent;"  *See* '883 Reexam Request at 29-30.

➢ Fact 5: As shown below, the Jasinski '446 patent was cited on an IDS submitted on
February 15, 2007, during the original prosecution of the '838 patent that informed
the Examiner that Jasinski was applied to reject claims in a parent case, stating: "the
Examiner may wish to review the decisions of the prior Examiners in the parent cases,
includ[ing] the references applied in rejecting earlier-submitted claims."  Thereafter,
the Jasinski '446 patent was considered by the Examiner during prosecution of the
'838 patent on three separate occasions as evidenced by his signature on three
separate "Lists of References Cited and Considered by Examiner" dated June 30,
2006, May 18, 2007, and August 23, 2007, and the Jasinski '446 patent appears on the
face of the '838 patent as one of the "References Cited."

TABLE 2

| Reference | Date of Reference | Application(s) Containing Rejection(s) | Examiner(s) Issuing Rejection(s) |
|---|---|---|---|
| US 5,815,800 - Su | | | |
| US 5,555,446 - Jasinski | Sept. 10, 1996 | 08/934,132 | A. Asongwed |
| | Dec. 29, 1992 | 08/933,344 | T. Nguyen |

*See* Information Disclosure Statement (IDS) Form (SB08), Appl. No. 11/082,913 (February 15, 2007) at 6.

| Examiner Initials | US Patent Document | Issue Date/ Publication Date | Inventor |
|---|---|---|---|
| | 5,530,930 | June 1996 | Hahn |
| | 5,550,535 | August 1996 | Park |
| | 5,555,446 | September 1996 | Jasinski |
| | 5,557,659 | September 1996 | Hyde-Thomson |
| | 5,561,702 | October 1996 | Lipp et al. |

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (June 30, 2006) at 3.

| | | 5,555,376 | September 1996 | Thelmer et al. |
| | | 5,555,446 | September 1996 | Jasinski |
| | | 5,557,659 | September 1996 | Hyde-Thomson |

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (May 18, 2007) at 3.

| US Patent No. 5555376 - Thelmer | Prior |
| US Patent No. 5555446 - Jasinski | Prior |
| US Patent No. 5557659 - Hyde-Thomson | Prior |

*See* List of References Cited by Applicant and Considered by Examiner, Appl. No. 11/082,913 (August 23, 2007) at 8.

6. False Statement 6: "the '757 patent issued on October 27, 2010 without any consideration of the Tso patent by the Examiner." *See* Request for *Inter partes* Reexamination, 95/001,739 ("'739 Reexam Request") at 17.

   ➢ Fact 6: The '757 patent issued after the Tso patent was considered by the Examiner. *See* Fact 1, above.

7. False Statement 7: "the '415 patent [Rossmann] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the

application that led to the '757 patent." *See* '739 Reexam Request at 26 (emphasis in original).

➢ Fact 7: As shown below, the '415 Rossmann patent was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010, and its technological teachings were considered on the record during the original prosecution of the '757 patent as shown by the Examiner's initials on the "List of References Cited and Considered by Examiner" dated September 17, 2010 and appears on the face of the '757 patent as one of the "References Cited."

| | | 5,809,415 | September 1998 | Rossman |
|---|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /T.N./

*See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Sept. 17, 2010) at 12.

8. False Statement 8: "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent." *See* '739 Reexam Request at 29 (emphasis in original).

➢ Fact 8: As shown below, the '167 Boyle patent was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010, and its technological teachings considered on the record during the original prosecution of the '757 patent as shown by the Examiner's initials on the "List of References Cited and Considered by Examiner" dated September 17, 2010, and appears on the face of the '757 patent as one of the "References Cited."

| | | 6,119,167 | September 2000 | Boyle et al. |
|---|---|---|---|---|

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /T.N./

*See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Sept. 17, 2010) at 14.

9. False Statement 9: "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent." *See* '739 Reexam Request at 32 (emphasis in original).

➢ Fact 9: The '167 Boyle patent was cited and considered during the original prosecution of the '757 patent. *See* Fact 8, above.

10. False Statement 10: "The NAIS article was not considered by the Examiner during prosecution of the application that gave rise to the '757 patent, nor in the co-pending *ex parte* reexamination proceeding." *See* '739 Reexam Request at 33.

➢ **Fact 10(a):** As shown below, the NAIS article was cited during the original prosecution of the '757 patent in an IDS dated May 3, 2010, and its technological teachings considered on the record during the prosecution of the '757 patent as expressly shown by the Examiner's initials on the "List of References Cited and Considered by Examiner" dated October 4, 2010 and appears on the face of the '757 patent as a "Reference Cited."



*See* "List of References Cited and Considered by Examiner", Appl. No. 12/764,025 (Oct. 4, 2010) at 3.

➢ **Fact 10(b):** As shown below, the NAIS article was also cited during the *ex parte* reexamination of the '757 patent in an IDS dated April 28, 2011 and its technological teaches considered on the record during the *ex parte* reexamination of the '757 patent as shown by the Examiner's signature, and confirmed by the Examiner's correction of the publication date, on the "List of References Cited and Considered by the Examiner" dated June 8, 2011.  *See* Exhibit B ¶¶ 10 and 11.



*See* "List of References Cited and Considered by Examiner", Control No. 90/009,882 (June 8, 2011) at 30.

11. **False Statement 11:** "the NAIS article and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '757 patent."  *See* '739 Reexam Request at 36 (emphasis in original).

➢ **Fact 11:** The NAIS article was considered during original prosecution of the '757 patent.  *See* Fact 10(a), above.

12. **False Statement 12:** "The '616 patent [Bjorndahl] was not considered by the Examiner during the prosecution of the '757 patent, nor in the co-pending *ex parte* reexamination proceeding."  *See* '739 Reexam Request at 61 (emphasis added).

➢ **Fact 12(a):** As shown below, the '616 Bjorndahl patent was cited during prosecution of the co-pending *ex parte* reexamination for the '757 patent (by HPL in its April 28, 2011 IDS and by NYT at page 15 of its reexamination request) and was considered by the Examiner in the co-pending *ex parte* reexamination as expressly shown by the Examiner's signature on the "List of References Cited and Considered by Examiner"

dated June 8, 2011.   Still further, the Examiner discussed the '616 Bjorndahl patent on the record during the co-pending *ex parte* reexamination proceeding.

| | | 5,406,616 | Apr-95 | Bjorndahl |
|---|---|---|---|---|

*Ovidio Escalonte*                6/8/11

*See* "List of References Cited and Considered by Examiner", Control No. 90/009,882 (June 8, 2011) at 30.

V.   THE PRIOR ART PATENTS AND PRINTED PUBLICATIONS THAT RAISE
     SUBSTANTIAL NEW QUESTIONS OF PATENTABILITY.................................................12

     2.    U.S. Patent No. 5,406,616 to Bjorndahl ("Bjorndahl" or "the Bjorndahl" patent)
           15

*See, e.g.,* '739 Reexam Request at 3.

➢ Fact 12(b): Still further, as shown below, the Examiner discussed the '616 Bjorndahl patent on the record during the co-pending *ex parte* reexamination proceeding.

Thus, the Bjorndahl reference is relied upon for support that Tso's system comprises a HLR.

*See, e.g.,* Non-Final Office Action, Control No. 90/009,882 (June 17, 2011) at 34.

13. False Statement 13: "The '616 patent [Bjorndahl] was not considered by the Examiner during the prosecution of the '757 patent, nor in the co-pending *ex parte* reexamination proceeding." *See* Request for *Inter partes* Reexamination, 95/001,739 at 64.

➢ Fact 13: The '616 Bjorndahl patent was cited and considered by the Examiner during the *ex parte* reexamination proceeding. *See* Facts 12(a)-(b), above.

14. False Statement 14: "the '415 patent [Rossmann] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '716 patent." *See* Request for *Inter partes* Reexamination, 95/001,738 at 20 (emphasis in original).

➢ Fact 14: As shown below, the '415 Rossmann patent was cited during the original prosecution of the '716 patent in an IDSs dated March 30, 2007 and June 27, 2007, and its technological teachings were twice considered on the record during the original prosecution of the '716 patent as shown by the Examiner's signatures on the "List of References Cited and Considered by Examiner" dated October 3, 2006 and December 7, 2017, and appears on the face of the '716 patent as a "Reference Cited."

| | | 5,809,415 | 09-1998 | Rossman | |
|---|---|---|---|---|---|

*9/20/06*

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/399,513 (Oct. 3, 2006) at 4.

| | | 5,809,196 | September 1998 | Ayala |
|---|---|---|---|---|
| | | 5,809,415 | September 1998 | Rossman |
| | | 5,813,671 | September 1998 | Doss, Jr. |

*Examiner*

*8/02/07*

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/399,513 (Dec. 7, 2007) at 8.

15. False Statement 15: "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '716 patent." *See* Request for *Inter partes* Reexamination, 95/001,738 at 25 (emphasis in original).

➢ Fact 15: As shown below, the '167 Boyle patent was cited during original prosecution of the '716 patent in an IDS dated March 30, 2007 and its technological teachings considered on the record during the original prosecution of the '716 patent as expressly shown by the Examiner's signature on the "List of References Cited and Considered by Examiner" dated December 7, 2007, and appears on the face of the '716 patent as a "Reference Cited."

| | | 6,097,911 | August 2000 | Hetterich |
|---|---|---|---|---|
| | | 6,119,167 | September 2000 | Boyle et al. |
| | | 6,123,434 | September 2000 | | |

*Examiner*

*8/02/07*

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/399,513 (Dec. 7, 2007) at 10.

16. False Statement 16: "the '415 patent [Rossmann] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '838 patent." *See* Request for *Inter partes* Reexamination, 95/001,740 at 20 (emphasis in original).

69

➢ Fact 16: As shown below, the '415 Rossmann patent was cited during the original prosecution of the '838 patent in an IDSs dated February 15, 2007 and June 27, 2007, and its technological teachings were twice considered on the record during the original prosecution of the '838 patent as expressly shown by the Examiner's on the "List of References Cited and Considered by Examiner" dated May 18, 2007 and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited."

> Applicant also requests the Examiner to review U.S. Patent Nos. 5,809,415 to Rossmann and 6,119,167 to Boyle et al. as they relate to the present claims, both of which have been previously cited by Applicant in this application.

*See* Information Disclosure Statements & Remarks, Appl. No. 11/082,913 (April 11, 2007) at 2.

| | | 5,809,415 | September 1998 | Rossman |
|---|---|---|---|---|

Examiner:

Date: 04/27/07

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (May 18, 2007).

| US Patent No. 5809415 - Rossman | Prior |
|---|---|

8/3/07

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (August 23, 2007).

17. False Statement 17: "the '167 patent [Boyle] and its technological teachings were not at all considered and were not at all discussed on the record during prosecution of the application that led to the '838 patent." *See* Request for *Inter partes* Reexamination, 95/001,740 at 23 (emphasis in original).

➢ Fact 17: As shown below, the '167 Boyle patent was cited during the original prosecution of the '838 patent in IDSs dated June 5, 2006, February 15, 2007, and June 27, 2007, and its technological teachings considered on the record by the Examiner three times during the original prosecution of the '838 patent as shown the

Examiner's signatures on the "List of References Cited and Considered by Examiner" dated June 30, 2005, May 18, 2007, and August 23, 2007, and appears on the face of the '838 patent as a "Reference Cited."



| | | 6,060,997 | 05-2000 | Taubenheim et al. |
| | | 6,119,167 | 09-2000 | Boyle et al. |
| | | 6,128,158 | 10-2000 | Boyle et al. |

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (June 30, 2005).



Applicant also requests the Examiner to review U.S. Patent Nos. 5,809,415 to Rossmann and 6,119,167 to Boyle et al. as they relate to the present claims, both of which have been previously cited by Applicant in this application.

*See* Information Disclosure Statements & Remarks, Appl. No. 11/082,913 (April 11, 2007) at 2.

| | | 6,097,941 | August 2000 | Helfrich |
| | | 6,119,167 | September 2000 | Boyle et al. |
| | | 6,122,184 | September 2000 | Goldberg et al. |

Examiner:

Date: 04/27/07

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (May 18, 2007).

| US Patent No. 6091957 - Larkins | Provisional |
| US Patent No. 6119167 - Boyle | Provisional |
| US Patent No. 6125281 - Wells | Provisional |
| US Patent No. 6636522 - Perinpanathan | Provisional |

8/3/07

*See* "List of References Cited and Considered by Examiner", Appl. No. 11/082,913 (August 23, 2007) at 5.

71

18. False Statement 18: "none of the documents cited in the November 2d IDS, including the '415 [Rossmann] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceeding." *See* Request for *Inter partes* Reexamination, 95/001,867 at 31 (emphasis added).

➤ Fact 18(a): As shown below, the '415 Rossmann patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was shown as considered by the Examiner on the record during the '880 *ex parte* reexamination, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.



*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (June 17, 2011) at 7.

➤ Fact 18(b): The same Examiner that handled *ex parte* Reexam 2 also discussed Rossmann on the record when he denied the NYT Defense Group's prior *inter partes* reexam request on its merits, stating for example:

"In addition, Rossmann was ... also disclosed to show the feature recited in claim 22. The request notes that the claim was met by Figure 4G. However, the examiner notes that Figure 4G is not a specification of 'a time that the content is available', but instead is the current time. ... [The] mere citation of 'Date/Time' does not entail the time the content is available. Thus, the examiner does not find that the Request presents a substantial new question of patentability ...."

*See* Order Denying *Inter partes* Reexamination, Control No. 95/001,738 at 12-13.

19. False Statement 19: "none of the documents cited in the November 2d IDS, including the NAIS article and the patentee's comments regarding this article, was considered on the record during the *ex parte* reexamination proceedings." *See* '867 Reexam Request at 35 (emphasis added).

➤ Fact 19(a): As shown below, the NAIS article was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was shown as considered by the Examiner on the record of the '880 *ex parte* reexamination, as proven by his signature and correction of the publication date on the "List of References Cited and Considered by Examiner" dated June 8, 2011.

> *See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (June 17, 2011) at 28.

➢ Fact 19(b): The *ex parte* reexamination Examiner also discussed NAIS on the record (during the pendency of the *ex parte* reexamination) when he denied outright Requesters' prior *inter partes* reexamination on its merits, stating for example:

> "Thus, the examiner does not find that the Request presents a substantial new question of patentability that was not previously asserted and thus the examiner does not find that a reasonable examiner would have found that NAIS Article presents a substantial new question of patentability."

> *See* Order Denying *Inter partes* Reexamination, Control No. 95/001,738 at 19.

20. False Statement 20: "The '973 patent [Smith] was not considered by the Examiner during prosecution of the application that gave rise to the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination." *See* '867 Reexam Request at 31 (emphasis added).

➢ Fact 20: As shown below, the '973 Smith patent was cited in an IDS dated April 28, 2011, and considered by the Examiner during prosecution of the *ex parte* reexamination of the '716 patent, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.

| | | 6,333,973 | Dec-01 | Smith et al. |
|---|---|---|---|---|

*Ovidio Escalante*  06/08/2011

> *See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (June 17, 2011) at 11. Patentee's April 28, 2011 IDS (shown above, on which the Examiner's signature appears) also stated that the '973 Smith patent was "affirmatively cited or relied upon by an Examiner in making a rejection in related applications" and that "the Examiner should review the decisions of the prior Examiners in the parent cases, including the references applied in rejecting earlier-submitted claims. *See* Patentee Information Disclosure Statement Remarks, Control No. 90/009,880 (Apr. 28, 2011).

21. False Statement 21: "The '100 patent is cited on the face of the '716 patent, but was not considered by the Examiner or discussed on the record during prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination. *See* '867 Reexam Request at 56.

➢ Fact 21(a): As shown below, the '100 Kane patent was cited during original prosecution of the '716 patent in an IDS dated March 30, 2007 and was considered by the original Examiner '716 patent as shown by his signature on the "List of References Cited and Considered by Examiner" dated August 2, 2007, and the '100 patent appears on the face of the '716 patent as a "Reference Cited."

| | 5,487,100 | January 1996 | Kane | |

*See* List of References Cited by Applicant and Considered by Examiner, Application No. 11/399,513 (Aug. 2, 2007) at 7.

➤ Fact 21(b): As shown below, the '100 Kane patent was also cited in an IDS dated April 28, 2011 during prosecution of the *ex parte* reexamination of the '716 patent and was considered by the Examiner on the record during prosecution of the '880 *ex parte* reexamination of the '716 patent as shown by his signature on the "List of References Cited and Considered by Examiner" dated December 7, 2011.

| | 5,487,100 | Jan-96 | Kane | |

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (Dec. 7, 2011) at 4.

22. False Statement 22: "none of the documents cited in the November 2d IDS, including the '616 patent [Bjorndahl] and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceedings." *See* '867 Reexam Request at 56 (emphasis added).

➤ Fact 22(a): As shown below, the '616 Bjorndahl patent was cited not only in the November 2, 2011 IDS, but also in an *earlier* IDS dated April 28, 2011, and was considered by the Examiner on the record during the '880 *ex parte* reexamination, as shown by his signature on the "List of References Cited and Considered by Examiner" on June 8, 2011.

| | 5,406,616 | Apr-95 | Bjorndahl | |

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,880 (Dec. 7, 2011) at 4.

➤ Fact 22(b): As noted above, during consideration of the denied *inter partes* reexamination request of the '716 patent, the Examiner specifically corrected NYT's False Statement that Bjorndahl had not been considered during prosecution of the

74

prior *ex parte* reexamination of the '716 patent (which the same Examiner was handling).  Notwithstanding that correction, NYT and the NYT Defense Group repeats that same False Statement again in the '867 Reexam Request.

23. False Statement 23: "the '973 [Smith] patent, the '415 [Rossmann] patent, the *Enabling Network Managers Article*, and the NAIS article, all of which thus provide a new, non-cumulative technological teaching not considered by the Examiner in the *ex parte* reexamination proceeding.  *Id*. at 24, note 7.

➢ Fact 23:  As established in Facts 20, 18, and 19 above, the '973 Smith patent, '415 Rossmann patent, and the NAIS article were all previously cited and considered during the prosecution of the '716 patent during the *ex parte* reexamination.  Accordingly, these references do not provide new teachings, or teachings that are non-cumulative to those that had already been considered.

24. False Statement 24: "Furthermore, neither the '100 [Kane] patent nor the '973 [Smith] patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880."  *See* '867 Reexam Request at 78.

➢ Fact 24: As established in Facts 20, 21(a)-(b) above, the '973 Smith patent and '100 Kane patent were cited and considered by the Examiner during prosecution *ex parte* reexamination of the '716 patent and the '100 Kane patent was also cited and considered by the Examiner during the original prosecution of the '716 patent.

25. False Statement 25: "None of the '973 patent, the '351 patent, and '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  See Request for *Inter partes* Reexamination, 95/001,864 ("'864 Reexam Request") at 58.

➢ Fact 25: As shown below, the '100 Kane patent was cited during the original prosecution of the '241 patent in an IDS dated February 7, 2005, the Examiner considered the '100 Kane patent on the record as shown by his signature on the "List of References Cited and Considered by Examiner" dated May 2, 2006, and the '100 Kane patent appears on the face of the '241 patent as a "Reference Cited."



*See* List of References Cited by Applicant and Considered by Examiner, Control No. 11/050,775 (May 2, 2006) at 2.

26. False Statement 26: "None of the '973 patent, the '351 patent, and '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  See Request for *Inter partes* Reexamination, 95/001,864 ("'864 Reexam Request") at 64.

> ➢ Fact 26: Kane was cited during the original prosecution of the '241 patent.  *See* Fact 25, above.

27. False Statement 27: "None of the NAIS article, the '351 patent, and the '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  *See* '864 Reexam Request at 71.

> ➢ Fact 27: Kane was cited during the original prosecution of the '241 patent.  *See* Fact 25, above.

28. False Statement 28: "None of the NAIS article, the '351 patent, and the '100 [Kane] patent was cited or discussed on the record during prosecution of the application that gave rise to the '241 patent."  *See* '864 Reexam Request at 78.

> ➢ Fact 28: Kane was cited during the original prosecution of the '241 patent.  *See* Fact 25, above.

29. False Statement 29: "[T]he PTO did not consider Defendants' earlier *inter partes* reexamination requests of the '716, '757, and '838 patents on the merits. . . . Rather, the PTO simply declined to consider [the NYT Group's denied *inter partes*] requests on the merits at all."  Def.s' Mot. Stay, Dkt. No. 38 (BonTon), 31 (Bravo), 30 (CBS), and 36 (G4) at 11 (hereinafter "Def.s' Mot.").

> ➢ Fact 29: In 87 pages of discussion, the *inter partes* Reexamination Examiners analyzed each reference cited in the *inter partes* requests, finding:
>
> > "The references set forth in the request have been considered both alone and in combination.  They fail to raise a [substantial new question] of patentability as to 9-20 of the '838 patent claims.  Accordingly, the request for reexamination is denied."
>
> Order Denying Reexamination of U.S. Patent No. 7,280,838 (Oct. 28, 2011) at 37.
>
> > "None of the above cited art provides any new technological teachings that were not present in the art cited in the previous reexamination (90/009883)."
>
> *Id.* at 16, 21, 27, 32, and 36.
>
> > "In comparing the pending reexamination and the current Request, the examiner notes that the teachings or elements that are 'new' with respect to the original reexamination are substantially the same."
>
> Order Denying Reexamination of U.S. Patent No. 7,835,757 (Nov. 4, 2011) at 14, 17, and 18; and Order Denying Reexamination of U.S. Patent No. 7,499,716 (Nov. 4, 2011) at 10, 15, and 19.
>
> > "Thus, the examiner does not find that the Request's statement presents a new substantial question of patentability."
>
> *See* '757 Order at 9 and '716 Order at 13, 16, 19, 21, 23, and 25.

30. False Statement 30: "Defendants disagree with a number of HPL's characterizations of the pending *inter partes* reexamination requests in HPL's 'status report.' For example, HPL represents that the PTO has already considered all the primary references cited in the *inter partes* request for the '716 patent. The '971 (Smith) patent, however, was not previously considered."  Def.s' Mot. at 7, note 3.

   ➢ Fact 30: As shown above in Fact 20, the '973 Smith patent was cited in an IDS dated April 28, 2011, and considered by the Examiner during prosecution of the *ex parte* reexamination of the '716 patent, as shown by his signature on the "List of References Cited and Considered by Examiner" dated June 17, 2011.

31. False Statement 31: "Absent the stay, the Court would have presided over litigation involving 28 invalid claims."  Def.s' Mot's at 3.

   ➢ Fact 31:  HPL preliminarily asserted 32 claims of the '838, 716, and '757 patents against NYT prior to the stay and 38 claims of the '838, 716, and '757 claims against members of the NYT Defense Group.  Of the 32 claims asserted against NYT, all were confirmed patentable by the PTO including 13 claims in original substantive form and 19 claims following clarifying amendments.  Of the 38 claims asserted against members of the NYT Defense Group, all were confirmed patentable by the PTO including 18 claims in original substantive form and 20 claims following clarifying amendments.  Absent the stay, the Court would have presided over litigation involving at least the original confirmed claims.  *See, e.g.,* Second Amended Compl. in *Helferich Patent Licensing, LLC v. New York Times Co.*, Case No. 1:10-cv-04387 ¶¶ 14, 20, and 26; Amended Compl. in *Helferich Patent Licensing, LLC v. Bravo Media, LLC*, Case No. 1:11-cv-07647 ¶¶ 22, 29, and 36; and Notice of Intent to Issue Reexamination Certificates in the '757, '716, and '838 patents.  In addition, proper claim construction by the Court may have rendered unnecessary any clarifying amendments and all original asserted claims may have been held valid.

32. False Statement 32: "None of the documents cited in the November 2d IDS, including the '415 [Rossmann] patent and the patentee's comments regarding this patent, was considered on the record during the ['880] *ex parte* reexamination proceeding [relating to the '716 patent]." *See* Def's Second Amended Counterclaim ¶ 52, *Helferich Patent Licensing LLC v. Phoenix Newspapers, Inc.*, No. 2:11-cv-02476 (Ariz.) (hereinafter "Counterclaim").

   ➢ Fact 32: *See* Fact 18(a), above.  The '415 Rossmann patent was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was considered by the Examiner on the record of the '880 *ex parte* reexamination proceedings as his signature as shown on the "List of References Cited and Considered by Examiner" dated June 8, 2011.

33. False Statement 33: "none of the documents cited in the November 2d IDS, including the NAIS Article and the patentee's comments regarding this article, was considered on the record during the *ex parte* reexamination proceedings."  Counterclaim ¶ 66.

> ➢ Fact 33:  As shown above in Facts 19(a)-(b), the NAIS article was cited not only in the November 2, 2011 IDS, but also in an earlier IDS filed April 28, 2011, and was shown as considered by the Examiner on the record of the '880 *ex parte* reexamination, as proven by his signature and correction of the publication date on the "List of References Cited and Considered by Examiner" dated June 8, 2011.  The *ex parte* reexamination Examiner also discussed NAIS on the record (during the pendency of the *ex parte* reexamination) when the he denied outright Requesters' prior *inter partes* reexamination on its merits.

34. False Statement 34: "The '973 [Smith] patent was not considered by the Examiner during prosecution of the application that gave rise to the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination." Counterclaim ¶ 83.

> ➢ Fact 34: The '973 Smith patent was considered during the ex parte reexamination proceeding of the '716 patent.  *See* Fact 20, above.

35. False Statement 35: "The '100 [Kane] patent is cited on the face of the '716 patent, but was not considered by the Examiner or discussed on the record during prosecution of the '716 patent, nor by the Examiner during the *ex parte* reexamination proceeding or the denied *inter partes* reexamination."  Counterclaim ¶ 100.

> ➢ Fact 35: The '100 Kane patent was considered during original prosecution of the '716 patent and during *ex parte* reexamination of the '716 patent.  *See* Fact 21, above.

36. False Statement 36: "As with the '415 [Rossmann] patent discussed above, the '616 [Bjorndahl] patent was submitted in the *ex parte* reexamination proceedings in the November 2d IDS. As the petition to consider the November 2d IDS was denied, none of the documents cited in the November 2d IDS, including the '616 [Bjorndahl] patent and the patentee's comments regarding this patent, was considered on the record during the *ex parte* reexamination proceedings."  Counterclaim ¶ 145.

> ➢ Fact 36: The '616 Bjorndahl patent was considered, relied on, and discussed on the record during the ex parte reexamination proceedings.  *See* Fact 22, above.

37. False Statement 37: "Neither the *Enabling Mobile Network Managers* nor the '100 [Kane] patent are of record in the original prosecution of the '716 patent,…" Counterclaim 192.

> ➢ Fact 37: The '100 Kane patent was of record and considered during the original prosecution of the '716 patent.  *See* Fact 21, above.

38. False Statement 38: "Neither the *Enabling Mobile Network Managers* nor the '100 [Kane] patent are of record in the original prosecution of the '716 patent,…" Counterclaim 227.

> ➢ Fact 38: The '100 Kane patent was of record and considered during the original prosecution of the '716 patent.  *See* Fact 21, above.

39. False Statement 39: "Neither the '100 [Kane] patent nor the '973 [Smith] patent are of record, and were not relied on by the Examiner during prosecution of the application that gave rise to the '716 patent, or during Reexamination Control No. 90/009,880. With regard to Reexamination Control No. 95/001,738, claim 16 was not requested for reexamination."  Counterclaim ¶ 250.

➤ Fact 39: The '100 Kane patent was of record and considered during the original prosecution of the '716 patent and during *ex parte* reexamination of the '716 patent. The '973 Smith patent was of record and considered during the *ex parte* reexamination of the '716 patent.  *See* Fact 21, above.

40. False Statement 40: "The '327 patent teaches paging calls indicating the time during which media content is available."  Counterclaim ¶ 320.

➤ Fact 40:  As shown below, the '880 *ex parte* reexamination Examiner expressly found that: "Tso fails to disclose wherein the notification that is sent to the client device indicates a time the content is available."

The claim is directed to specifying a time that the content is available.

The examiner concedes that the InfoBite of Tso does not indicate a time that the content is available. Instead, as Tso clearly indicates, the "Time-To-Live" value is a time value for the InfoBite in the client device. That is, how long the InfoBite will remain in the client device.

Thus, the examiner now maintains that Tso fails to disclose wherein the notification that is sent to the client device indicates a time the content is available.

*See* Notice of Intent to Issue Reexamination Certificate, Control No. 90/009,880 (Oct. 25, 2011) at 7.

41. False Statement 41: "The '327 patent teaches causing content to change without sending a cell phone a notification and thereafter causing the changed content to be transmitted to a cell phone."  Counterclaim ¶ 321.

➤ Fact 41: The '882 reexamination Examiner expressly found that "Tso does not disclose that the content …would be updated."

identifier. <u>Tso does not disclose that the content that is already stored and given a resource identifier would be updated.</u>

Thus, the examiner now maintains that Tso does not specifically disclose of updating the content (that is, the original content that was originally received and from which an InfoBite was created) after the message has been sent but prior to receiving the request for the content and sending the updated content to the client device of the user.

The examiner finds that while Tso can update the databases with new information at any time, Tso does not disclose that the content, that was already previously received, is updated itself. Thus, once an InfoBite is created and sent, there is no disclosure that the information content of the InfoBite can be updated after it's been created.

*See* Notice of Intent to Issue Reexamination Certificate, Control No. 90/009,882 (Dec. 9, 2011) at 8-9.

42. False Statement 42: With respect to the '838 patent, "*Rover Toolkit* was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution."  Counterclaim ¶ 324.

➢ Fact 42: *Rover Toolkit* was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '880, '882, and '883 *ex parte* reexaminations, and the Examiners expressly considered *Rover Toolkit* during the prosecution of the *ex parte* reexamination of the '838 patent as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 28, 2011, respectively.

| | CB | A.D. Joseph *et al.*, "Rover: A Toolkit for Mobile Information Access," Proceedings of the Fifteenth ACM Symposium on Operating Systems Principles, Copper Mountain Resort, Colorado, pp. 156-171 (December 3-6, 1995). | | |
|---|---|---|---|---|
| Examiner Signature | | /Matthew Heneghan/ | Date Considered | 04/13/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

A.D. Joseph et al., "Rover: A Toolkit for Mobile Information Access," Proceedings of the Fifteenth ACM Symposium on Operating Systems and Principles, Copper Mountain Resort, Colorado, pp. 156-171 (December 3-6, 1995) (hereinafter Rover Toolkit");

28

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | CB | A.D. Joseph *et al.*, "Rover: A Toolkit for Mobile Information Access," Proceedings of the Fifteenth ACM Symposium on Operating Systems Principles, Copper Mountain Resort, Colorado, pp. 156-171 (December 3-6, 1995). |
|---|---|---|
| Examiner Signature | /Salman Ahmed/ | Date Considered    09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

43. False Statement 43: With respect to the '838 patent, "[t]he *Rover Mosaic* reference was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution."  Counterclaim ¶ 337.

➢ Fact 43: *Rover Mosaic* was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '883 *ex parte* reexamination, and two different Examiner of the '883 *ex parte* reexamination expressly considered *Rover Mosaic* during the prosecution of the *ex parte* reexamination as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 7, 2011, respectively.



| | CA | Thesis of A.F. deLespinasse, "Rover Mosaic: E-mail Communication for a Full-Function Web Browser," Massachusetts Institute of Technology (archived August 10, 1995, in MIT Library). |
|---|---|---|
| Examiner Signature | /Matthew Heneghan/ | Date Considered    04/13/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | Thesis of A.F. deLespinasse, "Rover Mosaic: E-mail Communication for a Full-Function Web Browser," Massachusetts Institute of Technology (archived August 10, 1995, in MIT Library) (hereinafter "Rover Mosaic"); |
|---|---|

29

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | CA | Thesis of A.F. deLespinasse, "Rover Mosaic: E-mail Communication for a Full-Function Web Browser," Massachusetts Institute of Technology (archived August 10, 1995, in MIT Library). |
|---|---|---|
| Examiner Signature | /Salman Ahmed/ | Date Considered    09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

44. False Statement 44: With respect to the '838 patent, "[t]he *Always On* article not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 343.

➢ Fact 44: The *Always On* article was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '880, '882, and '883 *ex parte* reexaminations, and the Examiners expressly considered the *Always On* article during the prosecution of the *ex parte* reexaminations as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 7, 2011, respectively.

| | CC | M.M. Tso, *et al.*, "Always On, Always Connected Mobile Computing," 1996 5th IEEE International Conference on Universal Personal Communications Record, Volume 1 of 2, Sessions 1-6, Cambridge Marriott Hotel, Cambridge, Massachusetts, pp. 918-924 (September 29 - October 2, 1996). | | |
|---|---|---|---|---|
| Examiner Signature | /Matthew Heneghan/ | | Date Considered | 04/13/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

M.M. Tso, et al. "Always On, Always Connected Mobile Computing," 1996 5th IEEE International Conference on Universal Personal Communications Record, Volume 1 of 2, Sessions 1-6, Cambridge Marriott Hotel, Cambridge, Massachusetts, pp. 918-924 (September 29 – October 2, 1996) (hereinafter "Always On, Always Connected");

26

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | CC | M.M. Tso, *et al.*, "Always On, Always Connected Mobile Computing," 1996 5th IEEE International Conference on Universal Personal Communications Record, Volume 1 of 2, Sessions 1-6, Cambridge Marriott Hotel, Cambridge, Massachusetts, pp. 918-924 (September 29 - October 2, 1996). | | |
|---|---|---|---|---|
| Examiner Signature | /Salman Ahmed/ | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 9.   Claim 14 and 17 are rejected under 35 U.S.C. 103(a) as being unpatentable over
>
> Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824,
>
> hereinafter Lu) and *Always On, Always Connected/Mobile Computing article* (The
>
> Always On article was published on September 29, 1996, hereinafter "Always On",).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 127.

45. False Statement 45: With respect to the '838 patent, "RFC 1911 was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 349.

➢ Fact 45: RFC 1911 was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '883 *ex parte* reexamination, and the Examiner expressly considered RFC 1911 during the prosecution of the *ex parte* reexamination as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 7, 2011, respectively.



*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).



*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 10.    Claim 54 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Internet Engineering Task Force (IETF) Request for Comment 1911: Voice Profile For Internet Mail (February, 1996) (hereinafter RFC 1911)).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 131.

> 11.    Claim 58 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Internet Engineering Task Force (IETF) Request for Comment 1911: Voice Profile For Internet Mail (February, 1996) (hereinafter RFC 1911)).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 134.

46. False Statement 46: With respect to the '838 patent, "RFC 1487 was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 354.

➤ Fact 46: RFC 1487 was cited in IDSs filed by both PNI's counsel (on February 25, 2011) and Patentee (on April 28, 2011) during the prosecution of the '883 *ex parte* reexamination, and the Examiner expressly considered RFC 1487 during the prosecution of the *ex parte* reexamination as shown by the Examiner's signature on the "List of References Cited by Applicant and Considered by Examiner" on April 13, 2011, and September 7, 2011, respectively.

| | CE | Yeong, *et al.*, Internet Engineering Task Force Request for Comments 1487: "X.500 Lightweight Directory Access Protocol," pp. 1-21 (July 1993). | | |
|---|---|---|---|---|
| Examiner Signature | | /Matthew Heneghan/ | Date Considered | 04/13/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

> Yeong, et al., Internet Engineering Task Force Request for Comments 1487: "X.500 Lightweight Directory Access Protocol," pp 1-21 (July 1993) (hereinafter "RFC 1487").

30 ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



| | CE | Yeong, *et al.*, Internet Engineering Task Force Request for Comments 1487: "X.500 Lightweight Directory Access Protocol," pp. 1-21 (July 1993). | | |

| Examiner Signature | /Salman Ahmed/ | | | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> Tso does not explicitly teach address is determined from a lightweight directory access protocol.
>
> The Lightweight Directory Access Protocol (LDAP) is an Internet Engineering Task Force standard defined at least as early as July 1993. See IETF RFC 1487:X.500 Lightweight Directory Access Protocol (July 1993).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 135.

47. False Statement 47: "The '449 [Metroka] patent was cited during prosecution but was not considered by the Examiner during prosecution of the '838 patent."  Counterclaim ¶ 359.

➢ Fact 47: The '449 Metroka patent was cited by Patentee in three separate Information Disclosure Statements filed during the original prosecution of the '838 patent, and was considered by the Examiner on three separate occasions. *See* Exhibit B, ¶ 4, above.

In addition, during the prosecution of the *ex parte* reexamination of the '838 patent, the '449 Metroka patent was considered by the Examiner on two separate occasions and was used by the Examiner in making a non-final rejection that was subsequently withdrawn.

| | | **U.S. PATENT DOCUMENTS** | | | |
|---|---|---|---|---|---|
| Examiner Initials* | Cite No.[1] | Document Number Number-Kind Code[2] (if known) | Publication Date MM-DD-YYYY | Name of Patentee or Applicant of Cited Document | Pages, Columns, Lines, Where Relevant Passages or Relevant Figures Appear |
| | AA | US-5,117,449 | 05-26-1992 | Metroka et al. | |

| Examiner Signature | /Matthew Heneghan/ | | | Date Considered | 04/19/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | 5,117,449 | May-92 | Metroka et al. |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 136.

48. False Statement 48: With respect to the '838 patent, "[t]he '305 [Sattar] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution."  Counterclaim ¶ 363.

➢ Fact 48: The '305 Sattar patent was cited by Patentee during the prosecution of the '838 patent *ex parte* reexaminations in Patentee's April 28, 2011 IDS, and the '305 Sattar patent was used by the Examiner in making a non-final rejection in the '838 *ex parte* reexamination that was subsequently withdrawn.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 13.   Claims 67 and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable
>
> over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT
>
> 5818824, hereinafter Lu) and Sattar et al. (US PAT 5255305).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 139.

49. False Statement 49: With respect to the '838 patent, "[t]he '845 [Buhrmann] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution."  Counterclaim ¶ 368.

➢ Fact 49: The '845 Buhrmann patent was cited by Patentee during the prosecution of the '838 patent *ex parte* reexamination in Patentee's April 28, 2011 IDS, and the '845 Buhrmann patent was used by the Examiner in making a non-final rejection in the '838 patent reexamination that was subsequently withdrawn.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 14.   Claim 64 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Buhrmann et al. (US PAT 5903845, hereinafter Buhrmann)

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 142.

50. False Statement 50: With respect to the '838 patent, "[t]he '067 [Nguyen] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 373.

➢ Fact 50: The '067 Nguyen patent was cited by Patentee during the prosecution of the '838 *ex parte* reexamination in Patentee's April 28, 2011 IDS, and the '067 Nguyen patent was used by the Examiner in making a non-final rejection during prosecution of the '838 patent reexamination that was subsequently withdrawn.



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).



ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | | | |
|---|---|---|---|
| AH | US-6,070,067 | 05-30-2000 | Nguyen et al. |

| Examiner Signature | /Salman Ahmed/ | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 16. Claim 66 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Nguyen et al. (US PAT 6070067, hereinafter Nguyen).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 152.

51. False Statement 51: With respect to the '838 patent, "[t]he '382 [Nikas] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 378.

➢ Fact 51: The '382 Nikas patent was cited by Patentee during the prosecution of the '883 *ex parte* reexamination in the April 28, 2011, IDS, and the '824 Nikas patent was used by the Examiner in making a rejection during prosecution of the '883 *ex parte* reexamination.

| | AD | US-5,463,382 | 10-31-1995 | Nikas et al. | |
|---|---|---|---|---|---|
| Examiner Signature | /Matthew Heneghan/ | | Date Considered | | 04/19/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| 5,457,712 | Oct-95 | Goldberg |
|---|---|---|
| 5,463,382 | Oct-95 | Nikas et al. |

4

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | AD | US-5,463,382 | 10-31-1995 | Nikas et al. | |
|---|---|---|---|---|---|
| Examiner Signature | /Salman Ahmed/ | | Date Considered | | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



> 15. Claim 65 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Nikas et al. (US PAT 5463382, hereinafter Nikas).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 147.

52. False Statement 52: With respect to the '838 patent, "[t]he '616 [Bjorndahl] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 383.

➤ Fact 52: The '616 Bjorndahl patent was cited by Patentee during the prosecution of the '883 *ex parte* reexamination in the April 28, 2011, IDS, and the '824 Bjorndahl patent was used by the Examiner in making a rejection during prosecution of the '883 *ex parte* reexamination.

| | AC | US-5,406,616 | 04-11-1995 | Bjorndahl | |

| Examiner Signature | /Matthew Heneghan/ | Date Considered | 04/19/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | 5,406,616 | Apr-95 | Bjorndahl |

3

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | AC | US-5,406,616 | 04-11-1995 | Bjorndahl | |

| Examiner Signature | /Salman Ahmed/ | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH. /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).



vibration alert as disclosed in the Metroka patent. This would be readily apparent to a person of ordinary skill in the art, particularly since each of the Tso patent and the '616 patent pertain to cellular mobile devices in GSM systems, and the mobile cellular

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 138.

53. False Statement 53: With respect to the '838 patent, "[t]he '824 [Lu] patent was not cited by the Applicant during prosecution or used by the Examiner in making any rejections during prosecution." Counterclaim ¶ 392.

➤ Fact 53: The '824 Lu patent was cited by Patentee during the prosecution of the '883 *ex parte* reexamination in the April 28, 2011, IDS, and the '824 Lu patent was used

by the Examiner in making at least seven different rejection during prosecution of the '883 *ex parte* reexamination.

| | AE | US-5,818,824 | 10-06-1998 | Lu et al. | |

| Examiner Signature | /Matthew Heneghan/ | Date Considered | 04/19/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /MH/

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (April 13, 2011).

| | 5,815,800 | Sep-98 | Su et al. | |
| | 5,818,824 | Oct-98 | Lu et al. | |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

| | AE | US-5,818,824 | 10-06-1998 | Lu et al. | |

| Examiner Signature | /Salman Ahmed/ | Date Considered | 09/07/2011 |

ALL REFERENCES CONSIDERED EXCEPT WHERE LINED THROUGH.  /S.A./

*See* List of References Cited by Applicant and Considered by Examiner, Control No. 90/009,883 (September 28, 2011).

> 9.    Claim 14 and 17 are rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and *Always On, Always Connected/Mobile Computing article* (The Always On article was published on September 29, 1996, hereinafter "Always On",).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 127.

> 10.    Claim 54 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Internet Engineering Task Force (IETF) Request for Comment 1911: Voice Profile For Internet Mail (February, 1996) (hereinafter RFC 1911)).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 131.

11.   Claim 58 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Internet Engineering Task Force (IETF) Request for Comment 1911: Voice Profile For Internet Mail (February, 1996) (hereinafter RFC 1911)).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 134.

13.   Claims 67 and 68 are rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Sattar et al. (US PAT 5255305).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 139.

14.   Claim 64 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Buhrmann et al. (US PAT 5903845, hereinafter Buhrmann).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 142.

15.   Claim 65 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Nikas et al. (US PAT 5463382, hereinafter Nikas).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 147.

16.   Claim 66 is rejected under 35 U.S.C. 103(a) as being unpatentable over Tso et al. (US PAT 6047327, hereinafter Tso) in view of Lu et al. (US PAT 5818824, hereinafter Lu) and Nguyen et al. (US PAT 6070067, hereinafter Nguyen).

Non-Final Office Action, Control No. 90/009,883 (Sept. 28, 2011) at 152.

54. False Statement 54: "The Jasinski '446 patent was not considered by the Examiner during prosecution of the '838 patent; the '446 patent was disclosed by the Applicant along with a large volume of other art during prosecution of the '838 patent's parent."  Counterclaim ¶ 397.

➢ Fact 54:  Patentee cited the '446 patent in an IDS submitted during the original prosecution of the '838 patent and specifically informed the Examiner that the '446

patent had been relied upon to reject claims in a parent case.  On three separate occasions the Examiner confirmed with his handwritten initials that he "considered" the '446 patent during the original prosecution of the application that issued as the '838 patent.  The '446 patent is listed on the face of the '838 patent.  *See* Fact 5, above.

55. False Statements 55 and 56:

   i.   "With over 95% of its original patent claims changed, its 'surviving' patents are essentially new patents."

        *See* Combined Reply of the New York Times Company to Plaintiff's Motion to Lift Stay and Reply of CBS Corporation, the Bon-Ton Stores, Inc., Bravo Media, LLC, G4 Media, LLC and Best Buy Co., Inc. in Support of their Motion to Stay Litigation Pending Reexamination of All Asserted Patents (Dkt. # 134), Case No. 1:10-cv-04387 (N.D.Ill.) (DATE) (hereinafter "Reply") at 2.

   ii.   "Of the three patents that the PTO reexamined in the more limited ex parte reexamination process, only a very small number of the original claims of those patents actually survived."  *See* Reply at 2.

➢ Facts 55 and 56: The asserted '757, 716, and '838 patents issued with 185 claims. The PTO's *ex parte* reexamination claim confirmations are shown below.  The PTO confirmed 96 of the 185 original patent claims (52%) in their original form (or simply rewritten in independent form) including 18 infringed claims originally asserted against NYT or the NYT Defense Group.  Only 89 of the original patent claims (48%) were changed.

AS A RESULT OF REEXAMINATION, IT HAS BEEN DETERMINED THAT:

The patentability of claims **1-6**, **9-44** and **48-84** is confirmed.

Claims **7**, **8**, **45-47**, **85** and **92** are determined to be patentable as amended.

Claims **86-91** and **93-96**, dependent on an amended claim, are determined to be patentable.

New claims **97-110** are added and determined to be patentable.

*See* Reexamination Certificate No. 8,930 for U.S. Patent No. 7,280,838, Control No. 90/009,883 (Mar. 27, 2012).

AS A RESULT OF REEXAMINATION, IT HAS BEEN
DETERMINED THAT:

Claims **1**, **2**, **15**, **16**, **19**, **20**, **22**, **30**, **31**, **34**, **35**, **38**, **43**, **44**,
**48**, **51**, **52** and **58** are determined to be patentable as
amended.

Claims **3-14**, **17**, **18**, **21**, **23-29**, **32**, **33**, **36**, **37**, **39-42**,
**45-47**, **49**, **50**, **53-57** and **59-69**, dependent on an amended
claim, are determined to be patentable.

New claims **70-134** are added and determined to be pat-
entable.

*See* Reexamination Certificate No. 8,758 for U.S. Patent No. 7,499,716, Control No.
90/009,880 (Dec. 13, 2011)

Original claim 1 is confirmed.

Original claims 2-20 are patentable.

New claims 21-69 are allowed.

*See* Notice of Intent to Issue Reexamination Certification for U.S. Patent No.
7,835,737, Control No. 90/009,882 (Dec. 9, 2011).

57. False Statement 57: "In December 2011, the PTO rejected all of the asserted claims of the
'716 patent, but confirmed 14 unasserted claims and permitted HPL to amend and add 65
new claims." *See* Reply at 6.

➢ Fact 57: The PTO did not reject all of the asserted claims of the '716 patent. The
PTO confirmed in original form 4 out of the 10 '716 claims asserted against NYT or
the NYT Defense Group (and the remaining 6 asserted '716 claims with only
clarifying amendments).

As shown below, Helferich asserted claims 15, 17, 18, 21, 22, 23, 27, 30, 38, and 39
of the '716 patent against the Defense Group.

29.   HPL is informed and believes, and thereon alleges, that Defendant has been

and is currently infringing the '716 patent in violation of 35 U.S.C. § 271(a) by, among

other things, using and practicing methods that embody one or more of at least claims 15,

17, 18, 21, 22, 23, 27, 30, 38, and 39 of the '716 patent (and likely others) within the

United States without authority or license from HPL..

*See, e.g.,* Complaint, Dkt # 1, Helferich Patent Licensing, LLC v. Bravo Media, LLC,
Case No. 1:11-cv-07647 (Oct. 26, 2011).

As shown below, the PTO confirmed claims 22, 23, 38, and 39 of the '716 patent in
original form (simply rewritten in independent form).

> *As per claims 2 22, 38, 48 and 52:*
>
> The examiner notes that as set forth in the Final Rejection, the claims are directed to *inter alia* "wherein the notification system specifies a time that the content is available".
>
> The examiner previously maintained that Tso discloses that an InfoBite message sent from the InfoCast server to the user's client device includes a "Time To Live" value that indicates how long the InfoBite will remain in the client system, (col. 8, lines 1-46).
>
> The claim is directed to specifying a time that the content is available.
>
> The examiner concedes that the InfoBite of Tso does not indicate a time that the content is available. Instead, as Tso clearly indicates, the "Time-To-Live" value is a time value for the InfoBite in the client device. That is, how long the InfoBite will remain in the client device.
>
> Thus, the examiner now maintains that Tso fails to disclose wherein the notification that is sent to the client device indicates a time the content is available.

*See* Notice of Intent to Issue Reexamination Certificate of U.S. Patent No. 7,499,716, Control No. 90/009,880 (Oct. 25, 2011) at 7. *See also* Reexamination Certificate No. 8,758 for U.S. Patent No. 7,499,716, Control No. 90/009,880 (Dec. 13, 2011) below.

> Claims 3-14, 17, 18, 21, 23-29, 32, 33, 36, 37, 39-42, 45-47, 49, 50, 53-57 and 59-69, dependent on an amended claim, are determined to be patentable.

58. False Statement 58: "The PTO rejected the majority of the original patent claims in HPL's '716 and '757 patents. Of the six claims of the '716 patent and 17 claims of the '757 patent asserted by HPL against NYT (Case No. 1:10-cv-04387, Dkt. No. 43), 19 *(over 82%) were found invalid*." *See* Reply at 5 (emphasis added).

➤ Fact 58:  No claims (i.e., 0%) of the '716 or '757 patents were "found invalid." Rather, 100% of the asserted '716 claims were found patentable, including 4 original '716 claims and 6 original '757 claims asserted against NYT or the NYT Defense Group, as shown in the PTO record above.  NYT misleads the Court by relying on the PTO's preliminary non-final office actions and ignores the PTO's final decisions in which it reversed the interim rejections.

59. False Statements 59 and 60: The following misstatements relate to whether the PTO considered on the merits the September 2011 "second round" of reexamination requests:

   i.    "the PTO declined to consider the September 2011 requests on the merits, finding them cumulative of rejections of HPL's patents."  See Reply at 11.

   ii.   "Defendants' September 2011 *inter partes* requests were considered premature and cumulative in light of where the then-still-pending *ex parte* requests were in the stage of examination."  *See* Reply at 3.

➢ Facts 59 and 60: The PTO considered the September 2011 requests on the merits and never characterized them as "premature."  The PTO denied the requests in 87 pages of opinion stating that: (1) each reference was considered both alone and in combination with respect to the patent claims (i.e., touching on the merits of the patent claims); (2) for some references, the PTO found that the teachings were cumulative (e.g., did not provide any new technological teachings); and (3) for other references, the PTO found that the references were not sufficient to meet the claim requirements (i.e., found that the claims distinguished the references on their merit).  Examples of the above from the Examiners' Orders are shown below.

  • "The references set forth in the request have been considered both alone and in combination. They fail to raise a [substantial new question] of patentability as to 9-20 of the '838 patent claims. Accordingly, the request for reexamination is denied." *See* Order Denying Reexamination of U.S. Patent No. 7,280,838 (10/28/2011) at 37.

  • "None of the above cited art provides any new technological teachings that were not present in the art cited in the previous reexamination (90/009883)." *Id*. at 16, 21, 27, 32, and 36.

  • "In comparing the pending reexamination and the current Request, the examiner notes that the teachings or elements that are 'new' with respect to the original reexamination are substantially the same." *See* Order Denying Reexamination of U.S. Patent No. 7,835,757 (11/4/2011) at 14, 17, and 18. *See also* Order Denying Reexamination of U.S. Patent No. 7,499,716 (11/4/2011) at 10, 15, and 19.

  • "Thus, the examiner does not find that the Request's statement presents a new substantial question of patentability." *See* Order Denying Reexamination of U.S. Patent No. 7,835,757 (11/4/2011) at 9 and Order Denying Reexamination of U.S. Patent No. 7,499,716 (11/4/2011) at 13, 16, 19, 21, 23, and 25.

  • "In addition, the examiner notes that Hunt was asserted to disclose of sending an alert which includes among other things 'a time stamp' which indicates when the alert was sent out. The examiner notes that this teaching is not sufficient to meet the claim since it does not provide any availability time information with respect to the content and thus does not show a substantial new question of patentability."  *See* Order Denying Reexamination of U.S. Patent No. 7,499,716 (11/4/2011) at 24

  • "In addition, the examiner notes that the Request asserts that Ozaki discloses of a message being transferred to the terminal device which includes inter alia a header including 'time'. The examiner notes that this is not a time for availability as claimed, but instead represents the time that the fax transmission is received. The examiner notes that the claim is clear that the time must related to the availability of the content (i.e. availability of the content for

which the notification was sent). A current time of receipt does not provide any information on a time period on availability of the content." *See id*. at 22.

61. False Statements 61-70: The Reply incorrectly states no fewer than eight (8) times that reexamination was sought on all of the claims of the asserted '716 and '241 patents and that the PTO rejected all of the claims of the '716 and '241 patents, as shown below.

   i.    "the PTO (1) found that Defendants have shown a reasonable likelihood of success of prevailing in challenging ***all of the claims of two of HPL's asserted patents*** — U.S. Patent No. 7,499,716 (the "'716 patent") and U.S. Patent No. 7,155,241 (the "'241 patent") and (2) rejected *all* of the challenged claims in a first official action." *See* Reply at 1 (emphasis added).

   ii.   "And, in just the past few days, the PTO agreed with Defendants by rejecting all claims of the '716 and '241 patents and finding that Defendants are reasonably likely to succeed in their invalidity challenge." *See* Reply at 12.

   iii.  "The claims in this case will continue to be invalidated or substantially narrowed given that all claims of the '716 and '241 patents have already been rejected in *inter partes* reexamination." *See* Reply at 14.

   iv.   "Shortly after the ex parte reexamination certificate issued for the '716 patent, NYT and the New Defendants filed an inter partes reexamination request attacking all of the claims of the '716 patent…." *See* Reply at 6.

   v.    "Third, in the time since the parties last appeared before the Court, the PTO has rejected ***every*** original, amended, and new claim of the '716 patent." *See* Reply at 5 (emphasis original).

   vi.   "The PTO granted [the most recent reexamination request of the '716 patent] and initially rejected all claims of the '716 patent." *See* Reply at 6 (emphasis original).

   vii.  "That [most recent reexamination request of the '241 patent] was granted on March 12, 2012 … and the PTO rejected all claims." *See* Reply at 6-7.

   viii. "In the last month, the PTO determined that there is a reasonable likelihood that Defendants will succeed in challenging all the claims of the '241 patent and rejected all of the challenged claims in a first official action." *See* Reply at 3.

   ix.   "the two patents asserted that have been subject to both types of reexamination have seen all their claims rejected in *inter partes* reexamination as invalid, even after prior confirmation and amendment of some claims in *ex parte* reexamination." *See* Reply at 7.

   x.    "The claims in this case will continue to be invalidated or substantially narrowed given that all claims of the '716 and '241 patents have already been rejected in *inter partes* reexamination." *See* Reply at 14.

   ➢ Facts 61-70: The NYT Defense Group did not seek reexamination of "all claims" of the '716 and '241 patents. Rather, the NYT Group sought reexamination of only 53

of the 134 claims of the '716 patent, and only 21 of the 94 claims of the '241 patent.
The PTO did not examine and did not reject 154 claims of the '716 and '241 patents,
as shown below.

**_Less Than All Claims Are Subject to Reexamination_**

3.    Since requestor did not request reexamination of claims 3-6, 8, 9, 11, 12, 15-37, 43-46,

48, 49, 51, 52, 55-70, 73-76, 78, 79, 81-83, and 86-94 and did not assert the existence of a

reasonable likelihood of prevailing (RLP) for such claims, these claims will not be reexamined.

This matter was squarely addressed in _Sony Computer Entertainment America Inc., et al. v. Jon_

_W. Dudas_, Civil Action No. 1:05CV1447 (E.D.Va. May 22, 2006), Slip Copy, 2006 WL

1472462.

_See_ Order Granting _Inter Partes_ Reexamination of Patent No. 7,155,241, Control No.
95/001,864 (Mar. 12, 2012) at 4-5.  _See also, e.g.,_ Order Granting _Inter Partes_
Reexamination of Patent No. 7,499,716, Control No. 95/001,867 (Feb. 27, 2012) at 2
(stating that only "claims 15-18, 21-33, 37-43, 83-86, 89-100, and 103-155 are subject
to reexamination.").

**B.    IDENTIFICATION PURSUANT TO 37 C.F.R. § 1.915(b)(1)**

_Inter partes_ Reexamination of claims 15-18, 21-33, 37-43, 83-86, 89-100, and 103-115 of
the '716 patent is respectfully requested.

_See_ Request for Inter Partes Reexamination of U.S. Patent No. 7,499,716, Control No.
95/001,867 (Jan. 6, 2012) at 9.  Defendants did not contest the validity of claims 1-14,
19-20, 34-36, 44-82, 87-88, 101-102, and 116-134.

**B.    IDENTIFICATION PURSUANT TO 37 C.F.R. § 1.915(b)(1)**

_Inter partes_ Reexamination of claims 1, 2, 7, 10, 13, 14, 38, 39, 40, 41, 42, 47, 50, 53, 54,
71, 72, 77, 80, 84, and 85 of the '241 patent is respectfully requested.

_See_ Request for _Inter Partes_ Reexamination of U.S. Patent No. 7,499,716, Control
No. 95/001,867 (Jan. 6, 2012) at 9.

71. NYT Defense Group Statement 71: "the two patents asserted that have been subject to
both types of reexamination have seen all their claims rejected in _inter partes_
reexamination as invalid, even after prior confirmation and amendment of some claims in
_ex parte_ reexamination."  _See_ Reply at 7.

32. Fact 71: As noted above, the PTO's recent _inter partes_ office actions did not reject all
claims of the asserted '716 and '241 patents.  More importantly, NYT omits that one
of the asserted patents, the '838 Patent has been confirmed not only in _ex parte_
reexamination, but also confirmed over _both rounds_ of NYT Group's _inter partes_
reexaminations (i.e., over the reexamination art and argument recently filed against

the '716 and '241 patents), as shown below. ~~U.S. Patent Application No. 12/267,436, titled "Wireless Messaging System."~~

~~33. U.S. Patent Application No. 12/167,971, titled "System and Method for Delivering Information to a Transmitting and Receiving Device."~~

~~34. U.S. Patent Application No. 11/598,832, titled "Systems and Methods for Downloading Information to a Mobile Device."~~

~~35. U.S. Patent Application No. 11/598,202, titled "Wireless Messaging System."~~

~~36. U.S. Patent Application No. 10/958,731, titled "System and Method for Integrating Audio and Visual Messaging."~~

➢