**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helferich Patent Licensing, LLC, an Illinois limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Suns Legacy Partners, LLC, dba Phoenix Suns, a Delaware Limited Liability Company,<br><br>Defendant. | Lead No. CV-11-02304-PHX-NVW<br><br>**CONSOLIDATED WITH** |
| Helferich Patent Licensing, LLC, an Illinois limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>Phoenix Newspapers, Inc., dba the Arizona Republic, an Arizona Corporation,<br><br>Defendant. | No. CV-11-02476-PHX-NVW |

| | |
|---|---|
| Helferich Patent Licensing, LLC, an Illinois limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>Nissan Motor Co., Ltd., a Japanese Corporation; Nissan North America, Inc., a California Corporation; and Midway Holdings, Inc., dba Midway Nissan, an Arizona Corporation,<br><br>                    Defendants. | No. CV-12-00060-PHX-NVW |
| Helferich Patent Licensing, LLC, an Illinois limited liability company,<br><br>                    Plaintiff,<br><br>vs.<br><br>NBA Properties, Inc., a New York Corporation; and National Basketball Association, Inc, a New York Corporation,<br><br>                    Defendants. | No. CV-12-00100-PHX-NVW<br><br>**ORDER** |

Before the Court is Defendants' Motion for a Protective Order (Doc. 122), Plaintiff's Response, and the Reply. For the following reasons, the Motion will be denied.

This is a consolidated case consisting of four actions which collectively assert that Defendants have infringed a number of claims of Helferich's patents. Counsel for Helferich in each of these actions also represents Helferich before the United States Patent and Trademark Office ("PTO"). All of the actions before this Court and the proceedings before the PTO at issue here arise from seven of Helferich's patents, which have been pending since 1997. From those original patents, Helferich has pursued a large number of patent claims before the PTO, and is currently pursuing additional claims there. In addition, Helferich is participating in seven patent reexamination proceedings

before the PTO, in each instance represented by counsel that also represents Helferich in this lawsuit. All of the parties have agreed to a proposed protective order (Doc. 122-2) that would govern the discovery process with the exception of one provision that would establish a patent prosecution bar. Defendants seek, and Helfreich objects to, such a prosecution bar.

**I.    Legal standard**

Despite protective orders that limit the use of confidential information only for purposes of current litigation, courts recognize that in patent litigation "there may be circumstances in which even the most rigorous efforts of the recipient of such information to preserve confidentiality in compliance with the provisions of such a protective order may not prevent inadvertent compromise." *In re Deutsche Bank Trust Co.*, 605 F.3d 1373, 1378 (Fed. Cir. 2010). In order to protect against such inadvertent compromise, a court may issue a patent prosecution bar as part of a protective order. Such a prosecution bar can operate to prevent any individual who has access to highly confidential information as part of patent litigation from also participating in the patent proceedings before the PTO.

The determination of whether a protective order should include a patent prosecution bar is governed by Federal Circuit law. *Deutsche Bank*, 605 F.3d at 1378. The party seeking a protective order has the burden of showing good cause for its issuance. *See* Fed. R. Civ. P. 26(c). The same is true for a party seeking to include a patent prosecution bar in a protective order. *Deutsche Bank*, 605 F.3d at 1378.

**A.    Unacceptable Risk of Inadvertent Disclosure**

In 2010, the Federal Circuit clarified the standards for imposing a prosecution bar in *Deutsche Bank*. The party seeking a patent prosecution bar bears the burden to first show that there is an "unacceptable" risk of inadvertent disclosure of confidential information. *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984). To determine whether there is such an unacceptable risk, courts examine the extent to which counsel is involved in "competitive decisionmaking" with its client. *Id*. The

Federal Circuit has defined competitive decisionmaking as "a counsel's activities, association, and relationship with a client that are such as to involve counsel's advice and participation in any or all of the client's decisions (pricing, product design, etc.) made in light of similar or corresponding information about a competitor." *Id.* at 1468, n. 3.

Not every patent prosecution attorney is necessarily involved in competitive decisionmaking. *Deutsche Bank,* 605 F.3d at 1379. The *Deutsche Bank* court distinguished administrative and oversight duties, which pose a less significant risk of inadvertent disclosure, from activities in which counsel play a "significant role in crafting the content of patent applications or advising clients on the direction to take their portfolios," which poses a more significant risk. *Id.* at 1379–80. In order to determine the risk, courts must "examine all relevant facts surrounding counsel's actual preparation and prosecution activities, on a counsel-by-counsel basis." *Deutsche Bank,* 605 F.3d at 1380.

### B.     Balancing Risks

If a party seeking a prosecution bar meets its burden to show there is unacceptable risk of inadvertent disclosure, courts must then balance that risk against the potential harm to the opposing party from being denied its choice of counsel. *Id.* (citing *U.S. Steel*, 730 F.2d at 1468). To evaluate this potential harm, a court must consider factors such as the extent and duration of counsel's past history in representing the client before the PTO, the degree of client's reliance on that past history, and the potential difficulty the client might face if forced to rely on other counsel for the pending litigation or engage other counsel to represent it before the PTO. *Id.* at 1381.

In that balancing, a court must "be satisfied that the kind of information that will trigger the bar is relevant to the preparation and prosecution of patent applications before the PTO." *Id*. at 1381. As a result, a party seeking a prosecution bar also has the burden to show that the proposed bar "reasonably reflect[s] the risk presented by the disclosure of proprietary competitive information." *Id*. at 1381. Such a showing requires that the information said to trigger the bar, the scope of activities prohibited by the bar, the

- 4 -

duration of the bar, and the subject matter covered by the bar all reasonably reflect the risk presented by disclosure. *Id*. A district court has broad discretion to determine the degree of protection that is required in balancing these conflicting interests. *Id*. at 1380.

## II.  Analysis

Defendants contend that Helferich's counsel participates in competitive decisionmaking by prosecuting new patent claims and patent reexaminations, and adding new claims to existing patents. Because of that participation, Defendants argue that a prosecution bar is necessary to ensure that confidential information is not misused by Helferich's counsel to craft new patent claims. Helferich does not contend that its counsel is not involved in competitive decisionmaking, and there is ample evidence that Helferich's counsel does play a significant role in crafting patent applications. Helferich is prosecuting new patent applications arising from its original disclosures with the assistance of Mr. Kappes and Mr. Lisa, both of whom are counsel that also represent Helferich in this case. Further, Mr. Lisa is involved in pricing decisions regarding Helferich's licenses and negotiates the terms of those licenses. As a result, under the *Deutsche Bank* standard, there is an unacceptable risk that counsel for Helferich might misuse Defendants' confidential information to file new patent claims based on that information.

But the unacceptable risk of disclosure is itself not enough to justify the issuance of a patent prosecution bar: Defendants also bear the burden of demonstrating that risk outweighs the potential harm to the opposing party in denying it the counsel of its choice. To weigh the risk of inadvertent disclosure of proprietary competitive information, a court must evaluate whether the kind of information to be protected is relevant to the patent prosecution proceedings. In this case, Defendants do not identify any specific confidential information that could be misused, apart from broad allegations of potential harms. As a result, Defendants have not met their burden of showing good cause for the issuance of a prosecution bar.

In order for a court to evaluate whether the information is related, a party seeking a prosecution bar "must present a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements." *AmTab Mfg. Corp. v. SICO Inc.*, No. 11 C 2692, 2012 WL 195027, at *2 (N.D. Ill. January 19, 2012) (citation and internal quotation marks omitted). In order to justify a prosecution bar, in other words, the moving party must identify "specific information that would cause it injury if disclosed." *Id*.

The confidential information allegedly at risk in this case is vague and speculative. Defendants contend that information to be produced in discovery "could be reviewed by a good patent lawyer to inspire him or her to draft new patent claims targeted on Defendants' systems and plans for future systems (if any)." (Doc. 131 at 5.) But the information Defendants identify is merely broad "categories of information [that] are non-public and confidential." (Id.) These broad allegations of speculative harm are not sufficient to establish good cause: nothing in the Defendants' Motion identifies a "clearly defined and serious injury." *AmTab*, 2012 WL 195027 at *2. Defendants argue that Helferich's counsel could add new patent claims based on services currently in use, but do not identify any specific information that would cause injury if disclosed. All of the examples of the alleged risk to Defendants are highly speculative. (Doc. 131 at 9-10.) These examples are not enough to warrant the unnecessary hardship that would result from the issuance of a patent prosecution bar.

Against that speculative risk, the Court must weigh the potential injury to Helferich from restricting its choice of litigation and patent prosecution counsel. Helferich "clearly has a strong interest in choosing its own counsel—particularly in the complex and technical realm of patent litigation." *Xerox Corp. v. Google, Inc.*, 270 F.R.D. 182, 185 (D. Del. 2010). Counsel for Helferich, including Mr. Kappes and Mr. Lisa, have represented Helferich both in litigation and before the PTO for many years and are deeply familiar with the patents at issue here. Depriving Helferich of the specialized

representation that its counsel can provide in this case would force them to rely on less knowledgeable counsel, either in this litigation or before the PTO, and "thus increase costs and duplicate effort." *Xerox*, 270 F.R.D. at 185.  Because that harm outweighs the speculative risk of inadvertent disclosure, Defendants have not met their burden of establishing good cause for a patent prosecution bar.

Further, the prosecution bar that Defendants seek in this case is unnecessarily broad in scope given the narrow risk of inadvertent misuse.  The risk that any confidential information could be used in future patent claims or reexamination can be mitigated without the harm of a prosecution bar by adding specific protection against such use in the protection bar in this case.  To that end, the protective order will be modified to include a specific requirement that Helferich not rely on highly confidential information disclosed by Defendants in this litigation in any proceeding before the PTO.  As a result, if Plaintiff misuses any confidential information to pursue claims before the PTO, inadvertently or otherwise, the Court can remedy such misuse as it arises without depriving Plaintiff of its choice of counsel.  Counsel shall confer about language to effect such modification.  If they cannot agree, Defendants may file a motion requesting a specific modification.

IT IS THEREFORE ORDERED that Defendants' Motion for Protective Order (Doc. 122) is DENIED without prejudice to Defendants' opportunity to move for a prosecution bar as appropriate in the future.

IT IS FURTHER ORDERED that the parties submit a revised joint proposed protective order or, lacking agreement on a proposed order, that Defendants file a motion requesting specific modification by December 14, 2012.

Dated this 5th day of December, 2012.

_____
Neil V. Wake
United States District Judge