**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Helferich Patent Licensing, LLC, | Lead No. CV-11-2304-PHX-NVW |
| Plaintiff, | |
| vs. | **CONSOLIDATED WITH** |
| Suns Legacy Partners, LLC, | |
| Defendant. | |
| Helferich Patent Licensing, LLC, | No. CV-11-2476-PHX-NVW |
| Plaintiff, | |
| vs. | |
| Phoenix Newspapers, Inc., | |
| Defendant. | |
| Helferich Patent Licensing, LLC, | No. CV-12-0060-PHX-NVW |
| Plaintiff, | |
| vs. | |
| Nissan Motor Company, Ltd., et al., | |
| Defendants. | |
| Helferich Patent Licensing, LLC, | No. CV-12-0100-PHX-NVW |
| Plaintiff, | |
| vs. | **ORDER** |
| NBA Properties, Inc., et al., | |
| Defendants. | |

Before the Court is the Nissan Defendants'—Nissan North America, Inc., Nissan Motor Co., LTD, and Midway Holdings, Inc. (collectively, "Nissan")—Motion to File a Complaint to Add Third-Party Defendants (Doc. 129), the Memorandum in Support of the Motion (Doc. 130), Plaintiff Helferich Patent Licensing's ("Helferich") Response, and the Reply. For the following reasons, Nissan's Motion will be denied.

**I.   Background**

This is a consolidated case consisting of four actions which collectively assert that Defendants have infringed a number of claims of Helferich's patents. Through those claims, Helferich has patented a method for content providers to deliver content to mobile communication devices. Helferich alleges that Nissan and the other Defendants have infringed these claims in a variety of ways, including using patented methods for: creating mobile content; storing the content; identifying the content so that it can be delivered to customers who request it; causing notifications of the content to be sent to subscribers; and delivering the content to subscribers that request it in response to the subscribers' requests. The infringement occurs, according to Helferich, when Defendants create and store mobile content that they then cause to be delivered to their customers' mobile devices using specific identifiers that are protected by Helferich's claims.

In its Motion, Nissan argues that the principle act that constitutes the alleged infringement is the posting of content to social media pages—websites that are hosted by Google+, Facebook, and Twitter ("the social media companies"). All content providers who operate a Google+, Facebook, or Twitter webpage would be liable under Helferich's theory of infringement, Nissan contends, only because content they post to those webpages can be accessed by customers via their cellular phones. According to Nissan, then, its alleged infringement would not be possible without the actions of the social media companies. Nissan contends that the social media companies therefore would have secondary liability to Nissan for any infringement of Helferich's claims. Because of that alleged secondary liability, Nissan argues that it should be allowed, as a third-party

plaintiff, to bring Google+, Facebook, and Twitter into this case as third-party defendants.

## II. Legal Standard

Under Federal Rule of Civil Procedure 14, a defendant may bring a third-party complaint against "a nonparty who is or may be liable to it for all or part of the claim against it" as a matter of right. Fed. R. Civ. P. 14(a)(1). Thus, a party can assert a third-party claim where a third-party defendant's liability to the third-party plaintiff is dependent on the outcome of the main claim and is secondary or derivative thereto. *Stewart v. Am. Int'l Oil & Gas Co.*, 845 F.2d 196, 199 (9th Cir. 1988). If a defendant, and would-be third-party plaintiff, files the third-party complaint more than 14 days after serving its original answer, however, "the third-party plaintiff must, by motion, obtain the court's leave." Fed. R. Civ. P. 14(a)(1). Here, Nissan has sought the Court's leave to bring a third-party complaint nearly ten months after it served its original answer. Whether to grant leave is thus within the "sound discretion of the trial court." *United States v. One 1977 Mercedes Benz*, 708 F.2d 444, 452 (9th Cir. 1983).

The court's central purpose in granting leave to implead a third party is "to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third individual who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim." *Sw. Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 777 (9th Cir. 1986). In its discretion, the trial court should consider the timeliness of the motion, whether the impleader is likely to delay the trial, and whether the impleader will cause prejudice to the original plaintiff. *Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1056 (N.D. Cal. 2000). The court should also consider whether the impleader will "disadvantage the existing action" by, among other things, complicating and lengthening the trial, or introducing extraneous questions. *Sw. Adm'rs*, 791 F.2d at 777. Finally, the trial court must also consider whether the proposed third-party complaint alleges a cause of action for which relief may be granted. *Irwin*, 94 F. Supp. 2d at 1057. This factor is important because "[i]t makes no sense to permit such a

potentially prejudicial expansion of the case at the expense of Plaintiffs, if the third-party plaintiffs do not have a valid theory of relief against the third-party defendants." *Id*. at 1057-58.

**III.   Analysis**

Nissan moves for leave to add Google+, Facebook, and Twitter as third-party defendants in this action on the theory that those social media companies have secondary liability to Nissan for any alleged infringement. Each of the factors that the Court must consider forms an independently sufficient basis for denying leave to implead the social media defendants. As a result, within its sound discretion, the Court will deny leave to implead third-party defendants.

    **A.   The Motion was Untimely and Impleader is Likely to Cause Undue Delay**

Rule 14(a) contemplates adding a third-party defendant within 14 days after serving the original answer. Fed. R. Civ. P. 14(a)(1). Nissan's Motion to add third-party defendants was filed on November 8, 2012, nearly ten months after it filed its original answer, on February 16, 2012. Further, Nissan did not file its Motion to implead until more than five months after Helferich filed its amended complaint, which should have erased any doubt that the activities of the social media companies were central to Helferich's allegations. Because Nissan has had notice of the nature of these claims—and of the role that the social media companies play in them—for many months and delayed in filing its Motion, the Motion is untimely. *See Zero Tolerance Entm't, Inc. v. Ferguson*, 254 F.R.D. 123, 127 (C.D. Cal. 2008).

In addition, the untimely Motion will prejudice the existing action by delaying trial. Because a date for trial has not yet been set, Nissan argues that any risk of delay to the trial is mere speculation. The Scheduling Order set a number of deadlines with which it will become impossible for the parties to comply if third-party defendants are added at this stage, which will necessarily delay the trial. This Court does not set a final trial date in the Scheduling Order, but only later when a trial becomes likely. That does not entitle

dilatory litigants to disregard the case-processing deadlines in the Scheduling Order. Those deadlines are themselves this Court's case management requirements. The November 1, 2012, deadline in the Scheduling Order for adding parties was an outside deadline for seeking leave to add parties, not an authorization in advance to add any party on any claim. Because the Motion was untimely, and because of the delay of the trial that would necessarily result from bringing in third-party defendants at this stage, leave to implead third-party defendants would be prejudicial and will be denied.

**B.     Impleader will Complicate the Trial by Introducing Extraneous Issues**

The likelihood that the trial would be delayed by impleader is further underscored by the complexity of the issues raised by Nissan's third-party claims. Nissan contends that adding the social media companies as third-party defendants would not disadvantage the existing action because the new issues the impleader would create relate only to the allocation of responsibility between Nissan and the social media companies. But as the briefing on this Motion demonstrates, the question of that allocation of responsibility would significantly complicate and lengthen the trial, and introduce questions that are extraneous to the central infringement claims. Most central is the question of whether the social media companies' terms of use would require Nissan and the other Defendants to indemnify the social media companies for any liability stemming from Defendants use of social media services. That question has already, before the social media companies have even weighed in, raised issues of contract interpretation, public policy, and unconscionability, all extraneous to the infringement claims. Indeed, the social media companies' terms of use, in which all users must agree that the companies will not be liable for any damages that arise from the use of social media services, may explain why no other Defendant has moved to implead the social media companies. The introduction of extraneous issues relating to the social media companies' contractual relationship with Nissan weighs heavily against granting leave to add those companies as third-party defendants, since these issues would unnecessarily complicate the trial. The substantial

complexity of these issues, which have no relationship to the claims of the existing Plaintiff, would cause prejudice to the existing action.

### C. Nissan does not State a Claim Against the Social Media Defendants

For the reasons described above, the Court would deny leave to add third-party defendants to this case even if Nissan had stated a claim upon which relief could be granted. But the expansion of this case is particularly inappropriate because Nissan has not presented a valid theory of relief against the social media companies, a third and independent ground for denying leave to add third party defendants.

Nissan's proposed complaint against the social media companies is for contribution and indemnity on a theory of induced infringement. (Doc. 143 at 7.) In this case, Helferich has alleged that there are two forms of infringement for which Nissan may be liable: direct and induced. The core of Nissan's argument is that the social media companies must take independent action to deliver content to customers' mobile devices Because either form of alleged infringement depends on the actions of the social media companies, Nissan contends, those companies should be liable to Nissan for any damages assessed if Helferich's claims against Nissan are successful.

In order to be liable for direct patent infringement, a defendant "must commit all the acts necessary to infringe the patent, either personally or vicariously." *Akamai Techs., Inc. v. Limelight Networks, Inc.*, 692 F.3d 1301, 1307 (Fed. Cir. 2012) (en banc) (citing *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1311 (Fed. Cir. 2005)). Because neither Helferich nor Nissan alleges that the social media companies have committed all the acts necessary to complete the alleged infringement, the social media companies could not be liable on a theory of direct infringement. Thus, Nissan's argument that the alleged infringement requires action by the social media companies, and that Nissan does not control the acts of those companies, is best understood as Nissan's defense against Helferich's allegation of direct infringement rather than as an argument for impleader on those claims. The social media companies simply could not be liable to Nissan for direct infringement of Helferich's patents.

Helferich has also alleged that Nissan may be liable for inducing infringement based on the collective activities of Nissan and the social media providers. Under this allegation, Nissan's theory of relief against the social media companies is that those companies would be liable to Nissan as joint tortfeasors for any induced infringement of Helferich's patent claims. A defendant "held liable under a federal statute has a right to indemnification or contribution from another only if such right arises: (1) through the affirmative creation of a right of action by Congress, either expressly or implicitly, or (2) under the federal common law." *Zero Tolerance*, 254 F.R.D. at 126 (quoting *Doherty v. Wireless Broad. Sys. of Sacramento, Inc.*, 151 F.3d 1129, 1130-31 (9th Cir. 1998)). And the well-settled rule has been that, apart from a statutory cause of action for induced infringement under the Patent Act, 35 U.S.C. § 271(b), there is no right of contribution for joint infringers under the Patent Act or the federal common law. *Motorola, Inc. v. Varo, Inc.*, 656 F. Supp. 716, 717 (N.D. Tex. 1986).

Nissan argues that this rule was abrogated by *Akamai*, a recent case in which the Federal Circuit, sitting en banc, clarified the standard by which a defendant may be held liable for induced infringement of a method patent under § 271(b). 692 F.3d at 1313. According to Nissan, the *Akamai* court held that joint tortfeasor liability exists where many parties are responsible for the collective infringement of method claims. Nissan contends that this joint liability creates a cause of action for both contribution and indemnity between parties that jointly infringe a patent. In framing the terms of potential joint liability so broadly, Nissan has significantly overstated the reach of the *Akamai* holding.

In *Akamai*, the Federal Circuit held, for the first time, that a defendant can be liable for inducing infringement in a case in which several parties have collectively committed the acts necessary to constitute direct infringement, but no single party has committed all of the required acts. *Id*. at 1313. *Akamai* did not, however, create a theory of joint liability in which any party who commits an act necessary for direct infringement is jointly liable. Rather, to be liable for induced infringement, a defendant must

- 7 -

knowingly induce infringement with specific intent to cause infringement; "[u]nlike direct infringement, induced infringement is not a strict liability tort." *Id*. at 1308 (citation omitted). The inducer must act with knowledge that the induced acts constitute patent infringement and cause, urge, encourage, or aid the infringing conduct. *Id*. As a result, when a defendant knowingly induces infringement, that defendant may be liable in the context of divided infringement even if the infringing acts are not performed by a single entity that would be liable for direct infringement. *Id*. at 1313. The *Akamai* court referred to common law principles of joint tortfeasance to support its conclusion that a defendant may be liable for inducing infringement "even if the person being induced is unaware that his act is injurious and is not liable for that reason." *Id*.

Thus, language in *Akamai* with respect to common law tort principles directly contradicts Nissan's argument that the social media companies are joint tortfeasors merely because Helferich could have no claim for infringement without their actions. The court's reliance on the principles of common law torts does not, as Nissan argues, create a cause of action for contribution and indemnity liability for patent infringement in every case in which infringement depends on the actions of a third party. Simply claiming that a third party is "essential to required steps of the claims" or is "integrally intertwined" with the alleged infringement, (Doc. 143 at 4), does not create contributory liability in the third party under *Akamai*.

Rather, liability for induced infringement depends on the alleged inducer's specific intent to cause infringement. *Akamai*, 692 F.3d at 1308. In order for both Nissan and the social media companies to be liable for infringement, such that Nissan would have a claim for contribution, the social media companies would have to be independently liable for induced infringement under the standard set forth in *Akamai*. As a result, in order to state a claim against the social media companies for induced infringement, Nissan must allege that: (1) the social media companies knew of Helferich's patents; (2) the social media companies induced Nissan's performance of the steps of the method claimed in those patents other than the steps the social media

companies themselves performed; (3) Nissan in fact performed the remaining steps of the method patent. *Id*. at 1318. Nissan has not alleged facts sufficient to state a claim under that standard in its proposed complaint (Doc. 130-1).

Further, the fact that Helferich is pursuing a theory of induced infringement against Nissan for the collective actions of Nissan and the social media companies does not render the social media companies liable for indemnification. Even if Helferich is able to state successfully a claim for induced infringement against Nissan for the collective actions of Nissan and a third party, the result would not necessarily be that Nissan could state a claim for indemnification. The parties appear to agree that California law would govern any indemnity claim by Nissan against the social media companies. Under California law, there are two basic types of indemnity: "express indemnity, which relies on an express contract term providing for indemnification, and equitable indemnity, which embraces traditional equitable indemnity and implied contractual indemnity." *Jocer Enterprises, Inc. v. Price*, 183 Cal. App. 4th 559, 573 (Cal. Ct. App. 2010) (citation and internal quotation marks omitted).

Nissan has not stated a viable claim for either type of indemnity. Nissan has not alleged that the social media companies would have an express contractual obligation to indemnify Nissan for any damages; indeed, the language of the agreements discussed above suggests that Nissan may have a contractual obligation to indemnify the social media companies. And equitable indemnity is not available "from an entity that has no pertinent duty to the injured third party." *Id*. As a result, "there can be no indemnity without liability, that is, the indemnitee and the indemnitor must share liability for the injury." *Id*. (citation and internal quotation marks omitted). Therefore, in order to state a claim for equitable indemnity, Nissan would have to establish that the social media companies were liable for induced infringement. For the reasons stated above, Nissan has not stated a claim for induced infringement under the *Akamai*; therefor, without a viable claim that the social media companies are liable, there can be no claim for indemnity.

Because *Akamai* did not create a federal cause of action for contribution and indemnity against all parties that jointly perform the steps of a method patent, and because equitable indemnity is not available without liability, Nissan has not stated a cause of action under federal law. The fact that Nissan does not have a valid theory of relief against the social media companies is an independently adequate basis for the Court to deny leave to implead the social media companies as third-party defendants. Weighed alongside the untimeliness of the Motion, and the delay to the trial and the unnecessary complication of the issues that would result from impleader, this factor firmly convinces the Court that adding the social media defendants as third-party defendants is inappropriate at this stage.

IT IS THEREFORE ORDERED that Nissan's Motion for Leave to File a Complaint to Add Third-Party Defendants (Doc. 129) is DENIED.

Dated this 7th day of January, 2013.

_____
Neil V. Wake
United States District Judge